## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **HC&D, LLC,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| *vs.* ) | Case No. 1:22-cv-10224-DPW |
| ) | |
| **PRECISION NDT & CONSULTING, LLC** ) | |
| **and CASHMAN EQUIPMENT CORP.,** ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

### DEFENDANT CASHMAN EQUIPMENT CORP.'S
### MEMORANDUM OF LAW IN SUPPORT OF ITS
### MOTION TO DISMISS

Defendant Cashman Equipment Corp. ("Cashman" or "Defendant"), submits this Memorandum in Support of its Motion to Dismiss pursuant to Fed.R.Civ.Pro 12(b)(6), insofar as Plaintiff has failed to state a claim upon which relief can be granted.

### I.   Factual Background

On September 28, 2020, Plaintiff, HC&D, LLC ("Plaintiff" or HC&D") and Cashman executed a Purchase and Sale Agreement (the "Contract") for Plaintiff to purchase Cashman's barge, the JMC 254.[1] Plaintiff remitted the funds for purchase and removed it from Louisiana to California, where it claims it then suddenly discovered the barge's condition was different than represented. Plaintiff has specifically pled the barge was in bad condition, unseaworthy and unable to be classed with the American Bureau of Shipping ("ABS") without significant repairs.  As a result of these alleged deficiencies, Plaintiff has now sued Cashman, asserting claims for fraud, fraudulent inducement, negligent misrepresentation and unfair or deceptive trade practices.

---

[1]     Exhibit A (ECF Doc. 4-1) to Plaintiff's Amended Complaint (ECF Doc. 4).

Cashman allegedly made fraudulent representations as to three specific categories: that the barge was in a different **condition** than represented[2], that the barge was **unseaworthy**[3], and that the barge cannot be certified for ABS **classification**[4] without substantial repairs.

However, Plaintiff failed to mention that it explicitly disclaimed reliance upon any and all representations as to the barge's **condition**, **seaworthiness** or ability to be **classed**:

> The said Vessel is being sold and purchased, in its absolute current condition, AS IS-WHERE IS, without any warranties, or representations, express or implied, as to its **_condition_**, merchantability, fitness for any particular purpose, **_seaworthiness_**, or **_qualification for classifications or certification_** . . . . [A]ny warranties and/or representations (as the case may be) either express of (sic) implied are explicitly disclaimed by the Buyer and disavowed by the Seller.

*See* ECF Doc. 4-1, Contract at Section 4 (emphasis added). The Contract and its terms are appropriate for consideration in this Rule 12(b)(6) motion insofar as Plaintiff attached the Contract to its Amended Complaint.  *See Rossman v. Fleet Bank (RI) NA,* 280 F.3d 384 at fn. 4, (3d Cir. 2002) ("Exhibits attached to the complaint and upon which one or more claim is based are appropriately incorporated into the record for consideration of a 12(b)(6) motion.").  Because the Contract specifically disclaims any representations as to the barge's **condition**, **seaworthiness** or ability to be **classed,** the Plaintiff's very specific complaints were very specifically waived and/or barred by the Contract.

Notably, Plaintiff's Complaint failed to include a breach of contract claim. Instead, Plaintiff has sought to sidestep the contractual bar by asserting causes of action for fraud, fraudulent inducement, and negligent misrepresentation. This tactical maneuver does not enable avoidance

---

[2]    Plaintiff's Amended Complaint (ECF Doc. 4) at paragraphs 11, 22, 25, 28, 32, 64, 69, 72, 79, 103, 114, and 115.

[3]    Plaintiff's Amended Complaint (ECF Doc. 4) at paragraphs 17, 45, 69, and 132.

[4]    Plaintiff's Amended Complaint (ECF Doc. 4) at paragraphs 49, 50, 64, 65, 66, 69, 100, and 130.

of the Contract and its disclaimers regarding the barge's **condition**, **seaworthiness**, or **class eligibility**. As shown below, First Circuit jurisprudence unequivocally demonstrates that Plaintiff's claims fail, as a matter of law.

## II.    Law & Analysis

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. . . . Although for the purposes of a motion to dismiss [the Court] must take all of the factual allegations in the complaint as true, [it] "[is] not bound to accept as true a legal conclusion couched as a factual allegation"[5]

While Cashman denies Plaintiff's claims, it submits that even if all Plaintiff's well pled facts are accepted as true, it has still failed to state a claim upon which relief can be granted. Plaintiff cannot have reasonably or justifiably relied upon purported misstatements that it explicitly disclaimed and were disavowed in the Contract.  Therefore, Plaintiff is contractually barred from seeking or recovering its alleged damages.

### A.    Plaintiff cannot demonstrate reasonable and/or justified reliance upon Cashman's alleged statements or omissions.

To avoid dismissal, Plaintiff must prove its alleged reliance upon Cashman's misrepresentations must be reasonable. "Under Massachusetts law, claims for fraudulent inducement, intentional misrepresentation, negligent misrepresentation . . . all require that the plaintiff reasonably and justifiably rely on the defendant's statement or promise."[6]  Plaintiff's execution of the Contract is *prima facie* proof that it neither reasonably, nor justifiably, relied upon anything Cashman did or did not say.  The First Circuit has unequivocally held that reliance on

---

[5]    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

[6]    *Arabian Support & Services Co., Ltd. v. Textron Systems Corp.*, 368 F. Supp. 3d 211 at 227 (D.Mass. 2019).

pre-contractual representations contrary to contract terms is facially unreasonable. "A long-standing rule in Massachusetts declares that reliance upon supposed misrepresentations that contradict the terms of the parties' agreement is **unreasonable as a matter of law**."[7]

>    1.    **The First Circuit's holdings in *Turner*, *HSBC Realty*, and their progeny are fatal to Plaintiff's claims.**

In *Turner v. Johnson & Johnson*,[8] the plaintiffs sued Johnson & Johnson ("J&J") for fraudulently inducing them to sell their electronic thermometer business at less than market value in exchange for various promises, including that J&J allegedly would actively promote plaintiff's thermometer. The contract at issue stated, "J&J … makes no representations or warranty that it will market a thermometer hereunder [and] . . . J&J shall not be obliged to use its best efforts in marketing a thermometer hereunder."[9] Obviously J&J did not promote the plaintiff's thermometer, triggering litigation and an appeal, wherein J&J argued *inter alia*, that a jury may not find fraud when an alleged misrepresentation directly contradicts the specific terms of a written contract insofar as there can be no reasonable reliance under such circumstances.[10]

The First Circuit undertook a detailed analysis of the "balance . . . between two competing values: contractual certainty and protecting innocent parties from fraud."[11] When the Court viewed the facts of the case through this lens, it held the *Turner* plaintiffs could not avoid the contract:

---

[7]    *HSBC Realty Credit Corp. (USA) v. O'Neill*, 745 F.3d 564, 571 (1st Cir. 2014) (emphasis added) (citing *Starr v. Fordham*, 420 Mass. 178, 648 (1995)

[8]    809 F.2d 90 (1st Cir. 1986).

[9]    *Turner* at 93.

[10]    *Id*. at 95.

[11]    *Id*. at 95-96.

We have no doubt that the balance shifts when the party asserting fraud is not seeking to avoid an ambiguous or deceptive "contractual device [ ]," but is trying to *reverse* the precise terms of an agreement …. [A] contractual provision flatly contradictory to prior oral assurances should cause most people—and particularly experienced, knowledgeable businesspeople—to pause. Moreover, if a jury is allowed to ignore contract provisions directly at odds with oral representations allegedly made during negotiations, the language of a contract simply would not matter anymore …. Contracts would become no more than presumptive statements of the parties' intentions, instead of legally enforceable agreements.[12]

In the present matter, HC&D clearly attempts to reverse the explicit terms of the Contract. It specifically and unambiguously based its suit upon representations as to condition, seaworthiness, and ability to be ABS classed. Equally, Plaintiff specifically and unambiguously waived all claims as to condition, seaworthiness, and ability to be ABS classed.

The First Circuit more recently examined a similar claim in *HSBC Realty Credit Corp. (USA) v. O'Neill*.[13] The *HSBC* Court performed a thorough examination of *Turner* and reached the same conclusion. In the *HSBC* decision, HSBC provided a loan for a real estate development project.  Defendant, O'Neill, provided a personal and unconditional guaranty for $8.1 million. The named debtor defaulted, and HSBC pursued recovery from O'Neill. O'Neill counterclaimed for, *inter alia*, fraudulent inducement, specifically that the loan documents contained two false statements that he relied upon and induced him to execute the guaranty.

- ***First*** – the loan documents improperly inflated the value of the property to $26.5 million; that HSBC knew the property was worth much less than $26.5 million; if the $26.5 million had been accurate, HSBC would have been overcollateralized; and therefore, the chance of HSBC calling in the guaranty was "zero".[14]

---

[12]     *Id*. at 96 (quotes and emphasis in original).

[13]     745 F.3d 564 (1st. Cir. 2014).

[14]     *HSBC* at 570.

- ***Second*** - The loan documents stated that if the named debtor default[ed], HSBC "*can* recover the obligations" by selling the property; O'Neill claimed this "was an HSBC representation that it would move against the property before turning to his guaranty—a representation . . .made even though HSBC intended all along to collect only against the guaranty."[15]

However, O'Neill's unconditional guaranty contained noticeably different terms. Therein, O'Neill "specifically warranted . . . he was familiar with the collateral property's value, that the property did not operate as an inducement for him to make the guaranty, and that HSBC said nothing to induce him to execute the guaranty…."[16]  This undid his claim regarding an inflated property value.

Regarding the second alleged fraudulent inducement, O'Neill's guaranty also "tagg[ed] him as the primary obligor and . . . allow[ed] HSBC to go after him first to recoup the debt—provisions that put the kibosh on his other suggestion that HSBC must first seek recourse against the property."[17]

Plaintiff in this case has made remarkably similar arguments to O'Neill's, including allegations of misrepresentations as to the value of something. Additionally, certain factual similarities of the documents in *HSBC* and this matter are striking.  For example:

---

[15]     *Id*. Quotes and emphasis in original.

[16]     *Id*. at 571.

[17]     *Id*.

- O'Neill's guaranty stated he was familiar with the property and its value;

*vis á vis*

- The Contract here specified that HC&D had reviewed the barge's inspection and class records;[18]

O'Neill was held to have knowledge of the property value and similarly, HC&D should be held to have reviewed all inspection and class records.[19]

- O'Neill's guaranty stated that HSBC had said nothing to induce him to execute same;

*vis á vis*

- The Contract stated that HC&D disavowed any statements by Cashman (who disclaimed same).

O'Neill contractually stated that HSBC had done nothing to induce him to execute the guaranty. Similarly, HC&D contractually and explicitly disclaimed any representations by Cashman as to the barge's condition, seaworthiness, or ability to be classed. As detailed below, any reliance by HC&D under these circumstances was unreasonable and unjustified as a matter of law.

   **B.      Any reliance by Plaintiff was unreasonable as a matter of law.**

There is no dispute that Cashman's alleged "contract-inducing misrepresentations . . . are irreconcilably at odds with the [Contract's] express terms."[20]   In this scenario, there can be no reasonable reliance.   The *HSBC* Court explicitly held so, "[R]eliance on supposed

---

[18]      Contract at section 3.

[19]      Notably, HC&D has simultaneously claimed Cashman withheld certain ABS documents, but somehow managed to attach copies of the allegedly withheld documents to its Amended Complaint.

[20]      *HSBC* at 571.

misrepresentations that contradict the terms of the parties' agreement is unreasonable as a matter

of law and so cannot support a fraudulent-inducement claim."[21]

There is notable pragmatism and common sense underpinning these holdings:

> We also reject the notion that courts or juries should rewrite a fully negotiated
> contractual agreement that so precisely sets out the rights and obligations of two
> sophisticated parties. We do not believe this rule of law awards undue protection
> against fraud claims. It means only that a knowledgeable buyer should not sign a
> contract that conflicts with his or her understanding of the agreement.[22]

The Contract could not have been more clear. Plaintiff *disclaimed* and Cashman *disavowed*

all statements as to the barge's condition, seaworthiness and ability to be classed. Yet, despite the

explicit disclaimer and disavowal, Plaintiff now seeks to reverse the Contract terms and be relieved

of what it negotiated and signed. To allow this would render "the give-and-take of negotiations .

. . meaningless if, after making concessions in order to obtain contractual protections, a

knowledgeable party can later reclaim what it had given away[.]"[23]

The First Circuit has examined the issues before this Court on multiple occasions and

consistently held that the Plaintiff, in this case, under these facts, simply cannot have reasonably,

nor justifiably relied upon the alleged misstatements as to the barge's condition, seaworthiness or

ability to be ABS classed. Therefore, Plaintiff has made no claim upon which relief may be

granted. Dismissal is absolutely warranted and proper.

---

[21]   *HSBC* at 571, (quoting *Turner*, 809 F.2d at 97).

[22]   *Turner* at 97-98. *See also, HSBC* at 572 and *Elias Bros. Restaurants, Inc. v. Acorn Enterprises, Inc*., 831 F.Supp. 920 at 925, (D.Mass. 1993).

[23]   *HSBC* at 572, quoting *Turner* at 96.

C.    **Plaintiff's M.G.L. s. 93A claim fails for the same reasons.**

Plaintiff has also asserted a 93A claim, alleging Cashman engaged in unfair or deceptive

acts or practices.  So be it, but these claims rely on the same alleged misrepresentations by

Cashman.[24] Insofar as a lack of reasonable reliance causes Plaintiff's fraud and fraud-adjacent

claims to fail as a matter of law, so too does its 93A claim.  "[A] litigant cannot succeed on a

chapter 93A theory based on a fraud claim that is insufficient as a matter of law." *Macoviak v.*

*Chase Home Mortgage Corp.*, 40 Mass.App.Ct. 755, 667 N.E.2d 900, 903 (1996), cited by

*HSBC* at 575 ("But because-as we have explained-his fraud theory fails, so too does his chapter

93A claims.").

Plaintiff's 93A claim is derivative of its fraud, fraudulent inducement and negligent

misrepresentation claims.  They fail, and accordingly so does the 93A claim.

1.    **Plaintiff's 93A claim also fails the "center of gravity" test.[25]**

"To proceed on a 93A claim, the court must first determine whether the center of gravity

of the circumstances that give rise to the [93A] claim is primarily and substantially within the

Commonwealth."[26] To apply this test, the First Circuit utilizes a three step analysis: (1) where did

---

[24]    *See* Plaintiff's Amended Complaint (ECF Doc. 4) at para. 49-50.  Therein, Plaintiff specifically adopts its preceding claims as the bases for its 93A claim.

[25]    Cashman denies it made any deceptive statements or engaged in any similar activity. The references to same herein are for the sake of Rule 12(b) analysis that requires Plaintiff's allegations to be accepted as true.

[26]    *Arabian Support & Services Co., Ltd. V. Textron Systems Corp.*, 368 F.Supp.3d 211 at 229 (D.Mass. 2019), citing *Kuwaiti Danish Comput. Co. v. Dig. Equip. Corp.*, 438 Mass. 459, 781 N.E.2d 787, 799 (2003)

defendant commit the deception; (2) where plaintiff was deceived and acted upon the deception; and (3) the situs of plaintiff's losses.[27]

### a.    The location where the alleged deception was committed.

Plaintiff failed to specify where the allegedly deceptive statements were made. Cashman denies making any. But for the sake of argument, Plaintiff has complained of the gauging report done by Precision NDT & Consulting, a Louisiana company whose report was sent from Louisiana.

### b.    Plaintiff was allegedly deceived in Louisiana, California or Hawai'i.

The barge, in its allegedly decrepit condition, was in Louisiana when Plaintiff purchased it. As far as Cashman knows, Plaintiff may never have even physically inspected the barge. Even if it did, it did so in Louisiana, or when it arrived in California. An argument could be made that Plaintiff was also "deceived" at its headquarters in Hawai'i. Regardless, under no scenario was Plaintiff "deceived" in Massachusetts.

### c.    Plaintiff's loss was sustained in Hawai'i.

Plaintiff is located in Hawai'i. It apparently paid for the barge, its transport, inspections, repairs and dockage from its office in Hawai'i. Plaintiff did not sustain its alleged losses in Massachusetts.

None of the three elements of the center-of-gravity test occurred in Massachusetts. The center of gravity of the circumstances in this case are Louisiana, California or Hawai'i, not the Commonwealth. For these reasons, Plaintiff's 93A claim again fails the center-of-gravity test.

---

[27]    See *Roche v. Royal Bank of Canada*, 109 F.3d 820, 829 (1st Cir. 1997).

### III.     Summary and Conclusion

The law applicable to the facts of this case is well-settled in the First Circuit.  Massachusetts law does not permit Plaintiff to rewrite the contract it voluntarily signed when the alleged fraudulent misrepresentations are specifically disclaimed and disavowed by the Contract. As a matter of law, Plaintiff cannot reasonably or justifiably have relied upon Cashman's alleged misstatements as to the barge's condition, seaworthiness or fitness for ABS classification insofar as those very specific things were waived in the Contract.

Plaintiff's 93A claim was brought on the same grounds as its other claims.  In that they fail, so does the 93A claim.  Finally, even if the 93A claim is analyzed separately from Plaintiff's other claims, the center of gravity of those circumstances is found in Louisiana, California, or Hawai'i, but certainly not Massachusetts.

WHEREFORE, Cashman Equipment Corp. prays that this Motion be allowed and this honorable Court enter an Order dismissing all Plaintiff's claims against Cashman Equipment Corp., including an award of all costs and expenses incurred with the filing of this Motion.

DATED:  May 13, 2022.

<div style="margin-left: 50%;">

**CASHMAN EQUIPMENT CORP.**
Defendant,
By its attorney,

*/s/ Stephen W. Rider*

_____
Stephen W. Rider, Esq., BBO # 419820
350 Lincoln Street – Suite 2400
Hingham, MA 02043
Tel:  781-740-1289
Fax:  781-207-9160
Email: stephen.rider@swrpc.com

</div>

*Application for pro hac vice admission
pending:*

Scott D. Brownell, Esq. (Louisiana Bar #26223)
527 E. Boston St., Suite 201
Covington, LA  70433
Phone: (504) 390-1982
E-mail:  scott@sbrownell.com

*Attorney for Cashman Equipment Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen W. Rider, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be served upon all the non-registered Defendants together with the Summons and Complaint.


        */s/ Stephen W. Rider*     .
        Stephen W. Rider