**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **HC&D, LLC**<br><br>*Plaintiff*,<br><br>**v.**<br><br>**PRECISION NDT & CONSULTING, LLC, and CASHMAN EQUIPMENT CORP.**<br><br>*Defendants*. | Case No. 1:22-cv-10224-DPW |

**PLAINTIFF HC&D, LLC's OPPOSITION TO DEFENDANT CASHMAN EQUIPMENT CORP.'S MOTION TO DISMISS**

NOW COMES, the Plaintiff, HC&D, LLC, in the above-captioned matter by its undersigned counsel Eckland & Blando LLP, and respectfully submits its Opposition to Defendant Cashman Equipment Corp.'s ("Cashman") Motion to Dismiss at Docket No. 9.

## Introduction

HC&D is one of the main producers of concrete in Hawai'i and intended to purchase a barge to haul its product between the Hawaiian islands. Unlike Cashman, which is "a large, experienced company" that "owns more than 100 vessels that comprise, in its own words, 'one of the largest fleets in the industry'[.]", HC&D has not typically been in the business of owning vessels. *See Cashman Equipment Corp. v. American Marine Corporation*, 471 F.Supp.3d 351, 353-354 (D. Mass. 2020).

Cashman, through the use of falsified inspection and classification reports, and its representations regarding same, fraudulently induced HC&D to purchase the KAWIKA H f/k/a

JMC 254 (O.N. 1078866) (the "Barge") that Cashman knew or should have known was defective. Cashman now hopes that a narrow reading of the purchase and sale agreement between the parties (the "Contract"), ignoring the full text of that agreement, will allow it to escape the consequences of this deceptive and harmful behavior. It is mistaken. Relying upon the truth of the falsified inspection and classification reports, representations on the same, and Cashman's implied duty to act in good faith and with fair dealing, HC&D agreed that "[t]he sale [of the Barge] [was] not subject to *any other inspection* of the Vessel or its records." (Am. Compl., Ex. A. at 1-2.) (emphasis added). Therefore, the only plausible reading of the purchase and sale agreement is that HC&D *did rely* on the "inspection and classification records of the Vessel" in purchasing the Barge, and that the enforceability of this purchase and sale agreement was "subject" to the truthfulness of those documents. HC&D's allegations regarding Cashman's fraudulent behavior, spawning from and occurring in Massachusetts, state a claim for which relief can be granted. Therefore, pursuant to Fed. R. Civ. P. 12(b)(6), Cashman's Motion to Dismiss should be properly denied.[1]

**Factual Background**

Most of the relevant facts are well-established in HC&D's Amended Complaint. Therefore, only a brief recitation of facts will follow.

On September 28, 2020, HC&D purchased the Barge from Cashman following an extensive and exhaustive negotiating process. (Pl.'s Am. Compl. ¶¶ 7, 12.) Prior to executing the Contract, Cashman, operating out of Braintree, Massachusetts, provided HC&D with Precision NDT & Consulting LLC's April 2019 Hull Diminution Survey Prepared for ABS ("Precision

---

[1] Cashman failed to comply with District of Massachusetts Local Rule 7.1(a)(2) as it did not confer with undersigned counsel regarding this Motion. Failure to comply with Local Rule 7.1(a)(2) mandates denial of Cashman's claim. D. Mass. L.R. 7.1(a)(2) ("No motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue."). Cashman cannot be permitted to thumb its nose at this Court's local rules.

Gauging Report"). This Precision Gauging Report was published on Cashman's letterhead. (*Id.* ¶ 64.) Cashman's agent made specific representations from Braintree, Massachusetts, regarding the Barge and the Precision Gauging Report that were false. (*Id.* ¶¶ 24, 68-70.) For example, Cashman's agent, from Massachusetts, lied to HC&D about water in the Barge, claiming it was just rainwater from a tank inspection. (*Id.* ¶ 24.) The agent lied further, stating "[y]ou will have a barge with a fresh 5-year load line and very minimal associated costs for the next 20 years with regular maintenance" and that "[a]ll recommendations were cropped and replaced as of May 2020 on 5 year renewal." (*Id.* ¶¶ 68-69.) This fraudulent Precision Gauging Report induced the American Bureau of Shipping to recommend the Barge "be retained as classed" in its Classification Survey. (*Id.* ¶ 64.) This Classification Survey, along with the Precision Gauging Report itself and the misrepresentations regarding the same, induced HC&D to purchase this lemon Barge. (*Id.* ¶ 25.)

The Contract itself has several key clauses that will be determinative to this Court's ruling on Cashman's motion to dismiss. First, Section 3 of the Contract (which Cashman neglected to identify in its memorandum) provides:

> The Buyer represents it has reviewed the inspection and classification records of the Vessel. The sale is not subject to any other inspection of the Vessel or its records.

(Pl.'s Am. Compl., Ex. A at 1.) This Section is then followed by Section 4, which provides:

> The said Vessel is being sold and purchased, in its absolute current condition, AS IS-WHERE IS, without any warranties, or representations, express or implied, as to its condition, merchantability, fitness for any particular purpose, seaworthiness, or qualification for classifications or certification. Other than the warranty of title contained in Paragraph 5 below, any warranties and/or representations (as the case may be) either express of [sic] implied are explicitly disclaimed by the Buyer and disavowed by the Seller.

(Pl.'s Am. Compl., Ex. A. at 1-2.) Of final importance to the present Motion, Sections 13, 14, and

16 provide as follows:

> [13] The validity and interpretation of this Agreement and the rights and obligations of the parties hereto shall be governed in all respects by the laws of the Commonwealth of Massachusetts without giving effect to the conflicts of law provisions thereof.
> [14] All disputes arising hereunder shall be submitted for resolution at Boston, Massachusetts before a court of competent jurisdiction.
> [16] This Agreement constitutes the entire agreement between Seller and Buyer, Seller and Buyer agree that this Agreement shall not be amended, altered or changed except by a written agreement signed by the parties hereto.

(Pl.'s Am. Compl., Ex. A. at 4.) After execution of the Contract and delivery of the Barge to HC&D, HC&D discovered that the Precision Gauging Report and corresponding ABS Classification Survey were fraudulent, as were Cashman's representations regarding the Barge.[2] I

**Standard of Review**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Sverdlov v. Eydinov*, No. 20-CV-11744-RWZ, 2021 WL 2224153, at *1 (D. Mass. June 2, 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Barring narrow exceptions, unless a motion to dismiss is converted into one for summary judgement under Rule 56 of the Federal Rules of Civil Procedure, a court must only consider the complaint, attached documents, and documents expressly incorporated into

---

[2] Cashman seems to imply nefarious motive or duplicitous pleadings by HC&D in its memorandum, claiming "HC&D has simultaneously claimed Cashman withheld certain ABS documents, but somehow managed to attach copies of the allegedly withheld documents to its Amended Complaint." (Def.'s Mem. in Supp. of Mot. to Dis. at 7, fn. 19.) HC&D was able to attach the ABS documents to its Amended Complaint because it obtained said documents from ABS after the inspection in California determined that Cashman had lied about the condition of the Barge in oral representations and written documents. Cashman did withhold ABS documents and, had it not done so, Cashman's deception would have been revealed months earlier and HC&D would not have purchased the Barge.

it. *Smith v. City of Boston*, 2021 WL 3742478 at *1 (D. Mass. (Aug. 24, 2021)) (citing *Foley v. Wells Fargo Bank N.A.*, 772 F.3d 63, 72-74 (1st Cir. 2014)).

In evaluating a motion to dismiss, this Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Divris v. Dookhan*, --- F.Supp.3d ---, 2022 WL 743999 at *2 (D. Mass. Mar. 11, 2022) (citing *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 68 (1st Cir. 2000)). It is a "context-specific task" to determine "whether a complaint states a plausible claim for relief," one that "requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal citations omitted). A court may not disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008).

## Argument

### a. The Contract's "As Is" Provision Is Superseded by the Specific Provision of The Contract Regarding HC&D's Reliance on the Written Classification and Inspection Reports.

HC&D is not barred from pursuing its claims against Cashman because the specific language of the Contract identifying HC&D's reliance on the Precision Gauging Report and ABS Classification Survey supersedes the general "as is" disclaimer. Cashman claims that the "as is" provision definitively bars HC&D from pursuing its fraud claims because HC&D cannot be said to have reasonably relied on its fraudulent claims under the precedent established by *HSBC Realty Credit Corp. (USA) v. O'Neill*, 745 F.3d 564, 571 (1st Cir. 2014). Unfortunately for Cashman, *HSBC Realty Credit Corp. (USA)* is distinguishable by the actual contract at issue here, and thus does not grant it the relief it seeks.

First, and most importantly, HC&D's allegations of fraud are not solely based on oral

assertions. Rather, HC&D has alleged that Cashman knowingly and intentionally provided fraudulent, *written reports* that induced HC&D to execute the Contract. This is crucial, as *HSBC Realty Credit Corp. (USA)* provides that "if the contract was fully negotiated and voluntarily signed, then plaintiffs may not raise as fraudulent any prior *oral assertion* inconsistent with a contract provision that specifically addressed the particular point at issue." 745 F.3d at 573 (citing *Starr v. Fordham*, 420 Mass. 178, 648 N.E.2d 1261, 1267 (Mass. 1995)). While HC&D did allege oral lies told by Cashman's agent, the bulk of HC&D's claims arise from the fraudulent, written Precision Gauging Report and ABS Classification Survey provided by Cashman to HC&D. *See Turner v. Johnsons & Johnson*, 809 F.2d 90, 96 (1st Cir. 1986) ("if a jury is allowed to ignore contract provisions directly at odds with *oral representations* allegedly made during negotiations, the language of a contract simply would not matter anymore.") (emphasis added); *In re: Vioxx Prod. Liab. Litig.*, 661 F. App'x 831, 834–35 (5th Cir. 2016) ("[I]n Massachusetts . . . . if the contract was fully negotiated and voluntarily signed, then plaintiffs may not raise as fraudulent any prior *oral assertion* inconsistent with a contract provision that specifically addresses the particular point at issue.") (alterations and emphasis added); *A.J. Amer Agency, Inc. v. Astonish Results, LLC*, No. CA 12-351 S, 2014 WL 3496964, at *15 (D.R.I. July 11, 2014) (Thus, when the agreement has an unambiguous integration clause, with *disclaimer language abjuring oral promises*, and the written agreement also directly addresses the very matter concerning which plaintiff claims he was defrauded, a claim for fraud cannot be sustained.") (emphasis added). Because these were written reports, not oral representations, the Precision Gauging Report and ABS Classification Report may be properly challenged as fraudulent by HC&D.

Second, the partial waiver that forms the sole basis of Cashman's argument must be read with the Contract as a whole, which, once done, clearly shows the Precision Gauging Report and

ABS Class Certification are excepted. As the *HSBC Realty Credit Corp. (USA)* court noted, this Court "must enforce the guaranty according to its terms, with the parties rights ascertained from the written text." 745 F.3d at 571 (internal quotations omitted). This is exactly what HC&D is requesting this Court to do. Cashman hopes this Court will read the "as is" provision in isolation, ignoring the preceding Section 3 it omitted in its memorandum which clearly excepts the "as is" provision. *See Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 785 (1st Cir. 2011) ("In interpreting contractual language, we consider the contract as a whole. Its meaning cannot be delineated by isolating words and interpreting them as though they stood alone.") (internal quotations omitted).

Section 3 provides that "[t]he Buyer represents it has reviewed the *inspection and classification records of the Vessel*. The sale is *not subject to any other* inspection of the Vessel or its records." (*Id.*) (emphasis added). By stating that the sale is not subject to "any other" inspection of the Vessel or its records, the Contract clearly provides that the sale *is subject* to the inspection and records, *i.e.*, the Precision Gauging Report and the ABS classification report. To read the Contract otherwise would be to impermissibly construe Section 3 as superfluous. *See Nault v. U.S.*, 517 F.3d 2, 4 (1st Cir.2008) ("federal common law requires us to be guided by common-sense canons of contract interpretation") (internal quotations omitted); *In re Olympic Mills Corp.*, 477 F.3d 1, 16 (1st Cir. 2007) ("We are unwilling to endorse, as Rivera would have us do, an interpretation of "has loaned" that would render the above language meaningless or superfluous[.]"); *Noonan v. Wonderland Greyhound Park Realty LLC*, 723 F. Supp. 2d 298, 330 (D. Mass. 2010) ("Construing the principal sum as limited to the $8,820,000 does not render the same amount or otherwise language superfluous.") (internal quotations omitted); *Acadia Ins. Co. v. Cunningham*, 771 F. Supp. 2d 172, 183 (D. Mass. 2011) ("To avoid a construction that renders language superfluous . . ."). HC&D negotiated aggressively to ensure Section 3 was

contained in the Contract; Cashman's endeavor to pretend Section 3 does not exist must fail.[3]

The Massachusetts Uniform Commercial Code, applicable here as the Contract was a sale of goods, provides that "[w]ords or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty *shall be construed wherever reasonable as consistent with each other*; but subject to the provisions of this Section on parol or extrinsic evidence (section 2-202) negation or limitation is inoperative to the extent that such construction is unreasonable." M.G.L. Ch. 106, § 2-316. Section 3 and Section 4, as sections that purport to limit a warranty, must therefore be construed to be consistent with one another.

With these considerations in mind, the Sections 3 and 4 of the Contract must be understood to read:

> HC&D did not rely on any representations regarding the condition, merchantability, fitness for any particular purpose, seaworthiness, or qualification for classifications or certifications beyond the inspection and classification records of the Vessel.

Equipped with this understanding, if Section 3 and Section 4 are read to both have effect, it becomes clear that *HSBC Realty Credit Corp. (USA)* does not bar HC&D's claims.[4] *See Oliver*

---

3 It is also important to highlight how *HSBC Realty Credit Corp. (USA)* is factually distinguishable from this matter. In the agreement at issue in *HSBC Realty Credit Corp. (USA)*, the plaintiff specifically "confirmed that neither [the property's] condition nor the pledge of collateral induced him to sign the guaranty," and "he declared that HSBC said nothing to induce him to execute [the guaranty.]" 745 F.3d at 568. Conversely, in this matter, the Contract confirms that the sale of the Barge was subject to "the inspection and classification records of the Vessel," and HC&D did not disclaim that anything that Cashman said or wrote did not induce HC&D to execute the Contract. [Dkt. 4-1.] Clearly, the facts are entirely distinguishable from *HSBC Realty Credit Corp. (USA)*. HC&D did not by contract specifically state that it did not rely upon "the inspection and classification records of the Vessel" or Cashman's oral representations; rather, HC&D specifically stated that the sale was subject to the "the inspection and classification records of the Vessel" and never stated or disclaimed that Cashman did nothing to induce them to execute the Contract.

4 To the extent that Section 3 and Section 4 work to create an ambiguity in the Contract, said ambiguity must be construed against Cashman's position under the doctrine of *contra proferentum*, as Cashman drafted the Contract. *Fraga v. Premium Retail Servs., Inc.*, No. CV 21-10751-WGY,

*Wyman, Inc. v. Eielson,* 282 F. Supp. 3d 684, 701 (S.D.N.Y. 2017) ("while it is true that Massachusetts law precludes fraud claims where alleged misstatements are explicitly contradicted by subsequently adopted written agreements . . . courts have been careful to limit this rule to situations where the alleged falsehood was squarely contradicted by the written agreement). HC&D did not rely on "misrepresentations that contradict the terms of the parties' agreement," rather, it relied on misrepresentations *directly referenced in the Contract* and excepted from the "as is" provision, which, thereby, cannot be squarely contradicted by the Contract. *Id.*; *HSBC Realty Credit Corp. (USA)*, 745 F.3d at 574. Therefore, to use Cashman's words, the Contract is *prima facie proof* that HC&D relied on Cashman's written representations contained within the Precision Gauging Report and the ABS Class Survey. *See* (Def.'s Mem. in Supp. of Mot. to Dis. at 3.) Thus, this case is clearly distinguishable from *HSBC Realty Credit Corp. (USA)* because, unlike in that case where false written representations were not incorporated into the contract, the Precision Gauging Report and ABS Classification Survey were. Correspondingly, HC&D's reliance on the Precision Gauging Report and ABS Classification Survey was not unreasonable as a matter of law.[5] Accordingly, Cashman's motion to dismiss must be denied.

Further, in *HSBC Realty Credit Corp. (USA)*, the "as is" provision listed specific warranties made by the defendant to the plaintiff that were disclaimed; the Contract's "as is" provision is not specific, but rather is generic and boilerplate. *See* 745 F.3d at 567-68 ("he affirmed both that he was familiar with, and had independently reviewed books and records regarding, Brandywine's

---

2022 WL 279847, at *14 (D. Mass. Jan. 31, 2022) ("[A]mbiguity in a contract should be construed against the drafter, a doctrine known as contra proferentem.").

[5] Additionally, the "as is" provision disclaims the Barge's "qualification for classifications or certification", it does not disclaim the actual certification survey produced by the ABS and provided by Cashman. (Pl.'s Am. Compl., Ex. A. at 1-2.)

financial condition and also that he was familiar with the value of the property offered as collateral. He confirmed that neither Brandywine's condition nor the pledge of collateral induced him to sign the guaranty.") (internal quotations and alterations omitted); (Pl.'s Am. Compl., Ex. A. at 1.) The Contract's "as is" provision in Section 4 does not refer to any specific facts or representations pertaining to the HC&D/Cashman transactions or Cashman's (mis)representations, nor is it tailored to reflect the specifics of the Barge at issue here. (*Id.*) Further, while the Contract states that it is the entire agreement between HC&D and Cashman, (Am. Comp., Ex. A at 1-4), it does not state that it supersedes all prior understandings nor that there are no oral understandings between the parties, further distinguishing this case from *HSBC Realty Credit Corp. (USA)*. *See* 745 F.3d at 570 ("And do not forget that his guaranty specifically proclaims that it is the 'entire agreement' between the parties, superseding all prior 'understandings[.]'"). Indeed, the lack of a provision stating there are no oral understandings obliterates Cashman's assertion that HC&D cannot rely on Cashman's fraudulent misrepresentations, as those representations as to the quality of the Barge formed an understanding between the parties as to what HC&D was purchasing.

It must also be noted that Massachusetts courts have specifically rejected "the application of general or boilerplate disclaimers as an automatic defense to allegations of fraud or deceit." *DiMarco v. Guardian Life Ins. Co. of Am.*, 91 Mass. App. Ct. 1131, 87 N.E.3d 113 (2017) (citing *Sheehy v. Lipton Indus., Inc.*, 24 Mass. App. Ct. 188, 193 (1987); *Granlund v. Saraf*, 263 Mass. 76, 79 (1928); *Bates v. Southgate*, 308 Mass. 170, 180-183 (1941); *Starr v. Fordham*, 420 Mass. 178, 188 (1995); *Greenleaf Arms Realty Trust I, LLC v. New Boston Fund, Inc.*, 81 Mass. App. Ct. 282, 286-287 (2012)). Thus, *HSBC Realty Credit Corp (USA)* is readily distinguishable from the present case as HC&D did not disclaim Cashman's specific representations regarding the Precision Gauging Report and ABS certification, nor does the Contract supersede prior understandings or

oral understandings. Accordingly, under well-established, persuasive, Massachusetts law, the generic, boilerplate "as is" provision in Section 4 should not serve as a bar to HC&D's fraud claims.[6]

Nor is this a case where the misrepresentations were "broad, generalized marketing materials." *Gertz v. Vantel Int'l/Pearls in the Oyster Inc.*, No. CV 19-12036-FDS, 2020 WL 3977404, at *12 (D. Mass. July 14, 2020). Instead, Cashman produced detailed, multi-page inspections, on its letterhead, to HC&D detailing every aspect of the Barge's gauging status. (Pl.'s Am. Compl, Ex. B.) The fact that Cashman produced such detailed, yet fraudulent, reports must lend further strength to HC&D's arguments.

Cashman's specific written misrepresentations, the Precision Gauging Report and the ABS Class Survey, incorporated into the Contract by Section 3, are not excluded by Section 4's boilerplate "as is" provision, but rather were reasonably relied on by HC&D to induce it to purchase the Barge. Therefore, Massachusetts law, and First Circuit precedent interpreting the same, do not operate to bar HC&D's reliance on the written reports as a matter of law. Accordingly, Cashman's motion to dismiss must be denied.

**b. Even if the Contract's "As is" provision covers the written reports, Cashman is still not allowed to use contractual contrivances to escape the consequences of its fraud.**

Even if this Court were to find that Section 3's incorporation of the Precision Gauging Report and ABS Class Survey Report does not affect Section 4's "as is" clause, HC&D's fraud in the inducement claim can still proceed. *Arabian Support & Servs. Co. v. Textron Sys. Corp.*, 855

---

6 This is not the first time Cashman and/or its affiliates have tried to skirt obligations to provide a "seaworthy' vessel using boilerplate language despite written and oral representations to the contrary. *See, e.g., Jab Energy Solutions II, L.L.C. v. Servicio Marina Superior, L.L.C.*, 640 Fed.Appx.373, 377-78 (5th Cir. 2016) (holding that Cashman and its subsidiary Servicio Marina Superior, L.L.C, had failed to provide a seaworthy vessel).

F.3d 1, 8 (1st Cir. 2017) ("Moreover, such a [integration clause] provision does not always bar a misrepresentation claim."). An integration clause in a contract "does not insulate automatically a party from liability where he induced another person to enter into a contract by misrepresentation." *Hoffman v. Thras.io Inc.*, 538 F. Supp. 3d 196, 203–04 (D. Mass. 2021) (citing *Starr v. Fordham*, 420 Mass. 178, 648 N.E.2d 1261, 1268 (1995), *Shawmut-Canton LLC v. Great Spring Waters of Am., Inc.*, 62 Mass.App.Ct. 330, 816 N.E.2d 545, 549 (2004) ("[I]n cases of fraudulent inducement, relief is not barred by an integration clause, even where the parties are sophisticated and their bargaining powers are equal.")). Indeed, post-*HSBC Realty Credit Corp (USA)*, United States district courts within the First Circuit have steadfastly maintained that "a fraudulently induced contract cannot be used as a defense to fraud claim." *See Armstrong v. White Winston Select Asset Funds, LLC*, No. CV 16-10666-JGD, 2020 WL 10316643, at *10–11 (D. Mass. Mar. 23, 2020) (denying motion to dismiss fraud in the inducement claim stemming from an integrated contract); *Gertz v. Vantel Int'l/Pearls in the Oyster Inc.*, No. CV 19-12036-FDS, 2020 WL 3977404, at *12 (D. Mass. July 14, 2020) (dismissing a complaint alleging fraud where the contract had an integration clause but "the complaint d[id] not plead fraudulent inducement[.]"); *Joyal v. Daviduk*, No. 16-CV-230-AJ, 2017 WL 2838137, at *8 (D.N.H. June 30, 2017) (denying summary judgment on a fraudulent inducement claim alleging fraud in an integrated contract). These courts have ruled this way even when the contracts at issue were fully negotiated and signed, casting doubt on the continued viability of the exception that "where a contract is fully negotiated and signed, a plaintiff may not raise as fraudulent any prior oral assertion inconsistent with a contract provision that specifically addressed the particular point at issue." *Gertz*, No. CV 19-12036-FDS, 2020 WL 3977404, at *12 (providing exception). Regardless, this "exception to the exception" regarding fully negotiated contracts is inapplicable here because, as explained, HC&D is not

raising solely prior inconsistent oral assertions (which Section 16 does not exclude), but also prior and concurrent, fraudulent written documents.

Finally, this Court should not ignore the public policy implications of Cashman's argument. It is asserting in essence, that it should be able to lie and deceive its customers into signing a contract, then, once its lies and deceit is discovered, its victims should be barred from seeking justice against it because the contract was cleverly worded enough to say the inspections it relied on and are specifically identified in the contract cannot actually be relied on. This cannot be the rule. Thankfully, Massachusetts courts, and the federal courts interpreting Massachusetts law, have made clear that it is not. *Armstrong*, No. CV 16-10666-JGD, 2020 WL 10316643 at *10 ("one cannot induce a contract by fraud and then use contractual contrivances to duck liability.") (citing *HSBC Realty Credit Corp. (USA)*, 745 F.3d at 571). Under this clear law, Cashman's argument collapses and this Court must deny its motion to dismiss.[7]

**c. The Center of Gravity for the Chapter 93A Violations is Massachusetts.**

The purpose of Chapter 93A is "to encourage more equitable behavior in the marketplace and impose liability on persons seeking to profit from unfair practices." *Pine Polly, Inc. v. Integrated Packaging Films IPF, Inc.*, No. CIV.A. 13-11302-NMG, 2014 WL 1203106, at *7–9 (D. Mass. Mar. 19, 2014). To that end, the Massachusetts and federal courts have been clear that the "center of gravity" test focuses on the "purpose and scope of Chapter 93A" rather than a rigid, formulaic analysis. *Id.* (citing *In re Pharmaceutical Industry Average Wholesale Price Litigation,* 582 F.3d 156, 194 (1st Cir.2009)); *RGJ Assocs., Inc. v. Stainsafe, Inc.*, 338 F. Supp. 2d 215, 233–35 (D. Mass. 2004) ("the analysis thereby takes into account the purpose of chapter 93A

---

[7] If this Court denies Cashman's Motion to Dismiss regarding the fraud claims, it must also deny the Motion to Dismiss at it relates to Cashman's contention that HC&D's Chapter 93A claims fail for lack of reasonable reliance on Cashman's lies and deceit.

to a greater degree than a test that systematically identifies and applies a particular set of factors to every case."). This is because a "significant factor that exists in one case may not exist in another." *Pine Polly, Inc.*, No. CIV.A. 13-11302-NMG, 2014 WL 1203106, at *7 (citing *Kuwaiti Danish Comp. Co. v. Digital Equip. Co.*, 781 N.E.2d 787, 789-99 (Mass. 2003)). Thus, while the First Circuit has acknowledged the following three factors: "(1) where defendant committed the deception; (2) where plaintiff was deceived and acted upon the deception; and (3) the situs of plaintiff's losses due to the deception," not every factor will be relevant for each case and will be applied unevenly and with a different emphasis depending on each case. *Arabian Support & Servs. Co., Ltd. v. Textron Sys. Corp.*, 368 F. Supp. 3d 211, 229 (D. Mass. 2019), *aff'd*, 943 F.3d 42 (1st Cir. 2019) (confirming the three center of gravity factors). Given the facts of this case, the center of gravity of Cashman's fraudulent practices is Massachusetts.

As a preliminary matter, Cashman's motion is premature. The center of gravity test, as a fact intensive inquiry, is best reserved until after the court has made findings of fact, a process which is inappropriate at this procedural stage. *See Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 235 (1st Cir. 2003) ("Section 11 [of Chapter 93A] suggests an approach in which a judge should, *after making findings of fact*, *and after considering those findings in the context of the entire § 11 claim*, determined whether the center of gravity . . . is primarily and substantially within the Commonwealth.") (emphasis added); *Clinical Tech., Inc. v. Covidien Sales, LLC*, 192 F. Supp. 3d 223, 240–41 (D. Mass. 2016) (preserving a Chapter 93A claim through summary judgment because "[r]eliance is typically a question of fact for the jury."); *AECOM Tech. Servs. Inc. v. Mallinckrodt LLC*, 117 F. Supp. 3d 98, 106 (D. Mass. 2015) ("The determination cannot be reduced to any precise formula but rather requires a fact intensive and unique inquiry for each case."); *HipSaver Co. v. J.T. Posey Co.*, 490 F. Supp. 2d 55, 71–72 (D. Mass. 2007)

(plaintiff has "produced sufficient *evidence* that the center of gravity of the claim occurred primarily and substantially inside of the Commonwealth.") (emphasis added); *RGJ Assocs., Inc. v. Stainsafe, Inc.*, 338 F. Supp. 2d 215, 233–35 (D. Mass. 2004) ("it is *only* after a court makes findings of facts and considers those findings in the context of the entire section 11 claim, that a court can determine whether the center of gravity lies primarily and substantially in Massachusetts.") (emphasis added). Because a court "does not make such findings when ruling on a motion to dismiss, it would seem that a motion to dismiss is no longer appropriate vehicle for raising the [center of gravity] issue." *Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp. 2d 102, 118 (D. Mass. 2003). The *Workgroup Tech. Corp.* court's wisdom remains prescient. Because this Court cannot make findings of fact on a motion to dismiss, but instead must construe HC&D's allegations in the light most favorable to it, it should deny Cashman's motion to dismiss on this ground as untimely.[8] *Divris v. Dookhan*, --- F.Supp.3d ---, 2022 WL 743999 at *2.

Even if this Court does choose to undertake an analysis of the center of gravity test at this stage, HC&D has pled sufficient allegations to establish Massachusetts as the site where the primary and substantial majority of Cashman's fraudulent actions occurred. Here, HC&D has alleged that Cashman, a Massachusetts company, made fraudulent statements and provided the fraudulent Precision Gauging Report and ABS Classification Survey, from Massachusetts. (Pl.'s Am. Compl. ¶¶ 2, 12, 22, *et. seq.*). Cashman attempts to sanitize its involvement, deceptively

---

8 Additionally, the "defendant bears the underlying burden to show that the conduct *did not* occur primarily and substantially in Massachusetts." *Pine Polly, Inc. v. Integrated Packaging Films IPF, Inc.*, No. CIV.A. 13-11302-NMG, 2014 WL 1203106, at *7 (D. Mass. Mar. 19, 2014) (citing *Shimizu Corp. v. Dow Roofing Systems,* LLC, 2013 WL 5513035, *18 (D. Mass. Sept.27, 2013)). Clearly, Cashman cannot show that its fraudulent behavior did not primarily and substantially occur in Massachusetts without the introduction of evidence.

framing HC&D allegation as HC&D "complained of the gauging report done by Precision NDT & Consulting, a Louisiana company whose report was sent from Louisiana." (Cashman's Mem. in Supp. of Mot. to Dis. at 10.) This completely ignores that Cashman was responsible for commissioning the Precision Gauging Report and sent said report to HC&D *on Cashman letterhead*, from Braintree, Massachusetts. (Pl.'s Am. Compl. ¶ 21.) Additionally, Cashman sent the ABS Classification Survey from Massachusetts, and its agent made his representations from Massachusetts as well.[9] (Pl.'s Am. Compl. ¶¶ 24, 68-69.) Further, it should not be ignored that the Contract provides that Massachusetts' law would govern, and that all claims must be brought in courts having jurisdiction in Massachusetts. (Pl.'s Am. Compl. ¶ 9, Ex. A. at 4.) This bolsters the fact that Massachusetts is the site of the deception. *Cf. Plastic Surgery Assocs., S.C. v. Cynosure, Inc.*, 407 F. Supp. 3d 59, 77–80 (D. Mass. 2019) (choice of law provision did not aid analysis because it was limited to contractual disputes). Thus, Cashman committed its numerous deceptions in and from Massachusetts, meeting the first center of gravity factor. *See Citibank, N.A. v. Najda*, No. CV 14-13593-GAO, 2016 WL 158502, at *6 (D. Mass. Jan. 13, 2016) (finding plausible allegations for relief under Chapter 93A claim where Najda alleged that Citibank "promis[ed] one thing over the phone and d[id] another on paper" from Massachusetts.).

HC&D concedes that it was deceived and acted upon Cashman's deception from its

---

9 Cashman claims that HC&D "failed to specify where the allegedly deceptive statements were made." (Def.'s Mem. in Supp. of Mot. to Dis. at 10.) HC&D objects to this framing; it clearly stated that "at all times material hereto, Defendant, Cashman Equipment, was and is a domestic for-profit corporation organized under the laws of the Commonwealth of Massachusetts with a principal office at 60 Brooks Drive, Braintree, Massachusetts 02184." (Pl.'s Am. Compl. ¶ 2.) Thus, all of Cashman's misrepresentations occurred in Massachusetts unless specified otherwise. To the extent this is not clear, it should be considered a *di minimus* oversight that should not weigh on this Court's decision or, in the alternative, HC&D should be allowed to amend its Amended Complaint to address this alleged oversight.

headquarters in Hawai'i, and avoiding the COVID-19 pandemic. Yet this factor should not outweigh the great many instances of Cashman's fraud, which is the primary event of the fraudulent transaction. *Cf. Kenda Corp.*, 329 F.3d at 235 (focusing on the "primary events" of the misrepresentations and the signing of the contract in determining the center of gravity). Indeed, HC&D's acceptance of the Contract and subsequent purchase of the Barge were "a direct result of misrepresentations" made in Massachusetts. *Id.* Therefore, under clear case law, Cashman's misrepresentations in Massachusetts carry substantially more weight than HC&D's reception of such misrepresentations in Hawai'i. *Id.*; *Pine Polly, Inc.*, No. CIV.A. 13-11302-NMG, 2014 WL 1203106, at *7 ("The center of gravity inquire examines the actionable conduct as opposed to conduct that is neither unfair nor deceptive.").

HC&D purchased the Barge from Cashman, located in Massachusetts, while the Barge was in Louisiana. Thus, arguably, HC&D suffered its loss in Louisiana. However, the location of the Barge itself should not carry great weight because there was nothing fraudulent regarding the location of the Barge, but rather the condition of the Barge itself. *See Spring Investor Services, Inc. v. Carrington Capital Management, LLC,* 2013 WL 1703890, *12 (D. Mass. April 18, 2013) (inquiry focuses on "the actionable conduct said to give rise to the violation; other conduct, no matter where it takes place, may not be considered on the question"); *Pine Polly, Inc.*, No. CIV.A. 13-11302-NMG, 2014 WL 1203106, at *8 ("the complaint fails to identify or reasonably imply anything unfair or deceptive about the meetings that took place at undetermined times in the Commonwealth,"). Further, while the "situs of loss" *may* be a factor, it is not automatically germane to each case. *See id.* ("The place of conduct and the situs of loss may be germane to the center of gravity test.") (citing *Auto Shine Car Wash Systems, Inc. v. Nice 'N Clean Car Wash, Inc.,* 58 Mass.App.Ct. 685, 792 N.E.2d 682, 685 (Mass.App.Ct.2003)). Instead, "it may, or may

not, be appropriate to decide cases involving wrongful conduct in multiple jurisdictions based on which jurisdiction was the source of the *most instances of misconduct*." *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 438 Mass. 459, 472–73, 781 N.E.2d 787, 798–99 (Mass. 2003) (emphasis added). In this case, it is appropriate to look to Massachusetts, where the most instances of misconduct occurred.

Chapter 93A is designed to curb unethical, improper business practices in or affecting the Commonwealth of Massachusetts. The center of gravity test, while a practical tool, is to be deployed primarily in service of this goal. In that regard, assuming the center of gravity can even be determined at this stage given that it is a fact-intensive inquiry, the test clearly points to Massachusetts being the center of gravity. The most instances of improper conduct came from Cashman, a Massachusetts company, that made fraudulent representations and provided fraudulent documents to induce HC&D to purchase the Barge from Massachusetts. Keeping in mind the purpose of Chapter 93A, Cashman's misrepresentations stemming from the Commonwealth of Massachusetts carries the most weight of the three potential center of gravity factors. Accordingly, the center of gravity for Cashman's fraud is Massachusetts and Cashman's motion to dismiss HC&D's Chapter 93A claim must be denied.[10]

**Conclusion**

Cashman Equipment Corp. hopes to use contractual contrivances and an impermissibly narrow reading of the Contract to absolve it of liability for its multi-million-dollar fraudulent misrepresentations. The Contract specifically provides that HC&D relied upon the inspection and

---

[10] In the event this Court finds that the center of gravity is Hawaii, Louisiana, or California, HC&D respectfully requests permission to amend its Amended Complaint to allege a violation of the Unfair Practices Act of those states as it relates to Cashman Equipment's fraud. *See* Haw. Rev. Stat. § 480-2; La. Rev. Stat. § 51:1401; Ca. Civ. Code § 1770.

classification survey in reaching its decision to enter into the Contract. This specific clause cannot be nullified by a general "as is" provision and therefore, the Contract does not bar HC&D's fraud claims. Further, the center of gravity of HC&D Chapter 93A claim is Massachusetts and, regardless, this is not a question that should be reached at this procedural stage. Accordingly, this Court should deny Defendant Cashman Equipment Corp.'s motion to dismiss.

WHEREFORE, the Plaintiff, HC&D, LLC prays that this Court deny Defendant, Cashman Equipment Corp.'s, Motion to Dismiss at Docket No. 9, including an award of all costs and expenses incurred with the filing of this Motion.

**REQUEST FOR ORAL ARGUMENT.**

Respectfully Submitted,
HC&D, LLC

Date: May 27, 2022

By its attorneys,

*/s/ Samuel P. Blatchley*
Samuel P. Blatchley
(BBO No. 670232)
ECKLAND & BLANDO LLP
22 Boston Wharf Road
7th Floor
Boston, MA 02210
(612)-236-0160
sblatchley@ecklandblando.com

*Counsel for Plaintiff*

Robert T. Dube Jr. (MN# 401597)
800 Lumber Exchange Building
10 South Fifth Street
Minneapolis, Minnesota 55402
rdube@ecklandblando.com
(612)-236-0160

*Pro Hac Vice Application Pending*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 27, 2022, I electronically filed the within document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Samuel P. Blatchley*
Samuel P. Blatchley BBO# 670232