UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT OF CASHMAN EQUIPMENT CORPORATION, as owner of the DRAGLINE/SPUD BARGE JMC 5, in a Cause for Limitation of or Exoneration from Liability | * | CIVIL ACTION |
| | * | NUMBER: |
| | * | SECTION: |
| | * | MAGISTRATE: |

\*       \*       \*       \*       \*       \*       \*

## VERIFIED COMPLAINT FOR
## EXONERATION FROM OR LIMITATION OF LIABILITY

The Complaint for Exoneration From or Limitation of Liability ("*Complaint-in-Limitation*") of Cashman Equipment Corporation ("Cashman"), as the owner of the DRAGLINE/SPUD BARGE JMC 5, in a cause of limitation of liability, civil and maritime, pursuant to 46 U.S.C. § 30501, *et seq.* (formerly 46 U.S.C. § 181-96), and all laws supplementary thereto and amendatory thereof, within the purview of Rule 9(h) and Supplementary Admiralty Rule F of the Federal Rules of Civil Procedure, allege upon information and belief as follows:

EXHIBIT

B

1.

At all times relevant hereto, Cashman was a corporation with offices and its principal place of business in this state located in Covington, Louisiana.

2.

At all times relevant hereto, the DRAGLINE/SPUD BARGE JMC 5 was and is a 149 feet long, 45 feet wide, and 8 feet tall, Inland Dragline/Spud/Quarters Barge.

3.

At all times pertinent, the DRAGLINE/SPUD BARGE JMC 5 was owned by Cashman. Pursuant to a Bareboat Charter Agreement, dated August 3, 2012, between Cashman, as owner, and Volute, Inc. as charterer, Volute, Inc. chartered the DRAGLINE/SPUD BARGE JMC 5. Thereafter, at all relevant times, Volute, Inc. operated the DRAGLINE/SPUD BARGE JMC 5.

4.

Cashman used due diligence to make the DRAGLINE/SPUD BARGE JMC 5 seaworthy and it was, at the outset of the charter, tight, staunch, strong, equipped, manned, and supplied, and was in all respects seaworthy and fit for the service in which it was engaged.

5.

The DRAGLINE/SPUD BARGE JMC 5 is or will be, during the pendency of process herein, afloat upon navigable waters of the United States, and is likely to be within the jurisdiction of the United States District Court for the Eastern District of Louisiana.

6.

Venue is proper in the United States District Court for the Eastern District of Louisiana pursuant to Rule F(9) of the Supplementary Rules of Certain Admiralty and Maritime Claims.

7.

On or about August 12, 2012, the DRAGLINE/SPUD BARGE JMC 5 was conducting operations in navigable waters in Terrebonne Parish near Houma, Louisiana. Rod Cheramie was employed by an entity other than Cashman, working as a crane operator on the DRAGLINE/SPUD BARGE JMC 5.  This voyage concluded on May 2, 2013 at Morgan City, Louisiana.

8.

Rod Cheramie alleges that he sustained severe, serious, and permanent physical, mental, and emotional injuries on or about August 12, 2012, due to the negligence of Cashman and the unseaworthiness of the DRAGLINE/SPUD  BARGE JMC 5, when he

slipped and fell while changing a spool of cable.  Cashman denies the allegation that it was negligent or that its barge was unseaworthy at any material time.

9.

Cashman avers that in the event that it should be held responsible to any party or parties by reason of the matters aforesaid, which is denied, Cashman claims the benefit of limitation of liability as provided for in 46 U.S.C. § 30501, *et seq.* (formerly 46 U.S.C. § 181-96), and all laws supplementary thereto and amendatory thereof.

10.

All of the losses, damages, injuries, and destruction resulting from the aforesaid incident were done, occasioned, and incurred, without fault on the part of Cashman and without Cashman's privity or knowledge.

11.

In addition to Rod Cheramie, his wife, Kerry Orgeron Cheramie, also alleges to have sustained damages for loss of consortium.

12.

Rod and Kerry Orgeron Cheramie have filed suit in the 19th Judicial District for East Baton Rouge Parish, in the case styled, *Rod Cheramie, et al. v. Volute, Inc., et al.*, No. C623732, Sec. 23, as well as in the 32nd Judicial District for the Parish of Terrebonne, in the

case styled, *Rod Cheramie, et al. v. Volute, Inc., et al.*, No. 170233.  Cashman has been named as a defendant in both suits.

13.

Conrad Breit, marine surveyor, has executed an affidavit verifying that at the termination of the voyage herein above described and on the date of the incident sued upon, the market value of the DRAGLINE/SPUD BARGE JMC 5 was $750,000.  Pending freight at the termination of the voyage herein above described and on the date of the incident sued upon was $2,500, as per the affidavit of Jamie Guy.

14.

Petitioner has filed contemporaneously herewith an *Ad Interim Stipulation* in appropriate form, for the payment into the registry of the Court, security in the amount of Petitioner's interest, if any, in the DRAGLINE/SPUD BARGE JMC 5 and its pending freight, and Deposit for Costs.

15.

This *Complaint-in-Limitation* is filed within six (6) months of receipt of adequate written notice of claim against Petitioner sufficient to trigger the six (6) month period within which Limitation must be filed.

16.

Other than the potential claims and causes of action listed within Articles 8, 11, and 12, *supra*, Petitioner is unaware of any other demands, unsatisfied liens, or claims of liens, whether in contract or in tort, against the DRAGLINE/SPUD BARGE JMC 5 or any other suits pending therein, nor has said vessel been sued *in rem*, to Petitioner's knowledge. Rod and Kerry Orgeron Cheramie, the potential claimants herein, have made a demand for $5,000,000, which exceeds the amount of Petitioner's interest in the vessel and its pending freight.

17.

All and singular, the premises are true and correct and are within the admiralty and maritime jurisdiction of this Honorable Court, pursuant to Federal Rule of Civil Procedure 9(h) and Rule F of the Supplementary Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

**WHEREFORE**, Petitioner, Cashman Equipment Corporation, prays:

(a)     That upon depositing the sum of $250.00 into the Registry of the Court herein above described, this Honorable Court shall issue a notice to all persons, firms, corporations, or other legal entities asserting any claims for any and all alleged losses, damages or injuries, with respect to which Petitioner seeks exoneration from or limitation of liability, admonishing them to file their respective claims with the Clerk of Court and to serve on the attorneys for Petitioner, a copy thereof on or before the date specified in the Notice;

(b)     That this Court enter an Order accepting and approving the Ad Interim Stipulation of Value filed by Petitioner in the amount of $752,500.00 as adequate security;

(c)     That upon the filing of the *Ad Interim Stipulation* herein above described, the Court shall issue an injunction restraining the commencement or prosecution of any action or proceeding of any kind against Petitioner, its employees, its liability insurers, or any of their property, including but not limited to the DRAGLINE/SPUD BARGE JMC 5, whether *in personam*, by attachment, or *in rem*, for any losses, damages, and/or injuries allegedly arising out of the August 12, 2012 incident, or allegedly occurring during the subject voyage described in this Petition;

(d)    That if any claimant who files a claim also files an exception controverting the value of the DRAGLINE/SPUD BARGE JMC 5 and its pending freight, as alleged herein, this court shall cause due appraisement to be had of the value of said vessel and its pending freight during the relevant time period, and of the value of the Petitioner's interest, if any, after which this court may enter an Order for an Amended Ad Interim Stipulation or other appropriate security for the aggregate value, as so determined, of Petitioner's interest, if any, in the said vessel and its pending freight;

(e)    That this Court enter an Order accepting and approving the deposit for costs filed by Petitioner herein, in the amount of $250 cash pursuant to Local Rule 67.1 and Local Admiralty Rule 65.1.1;

(f)    That this Court adjudge that Petitioner and the DRAGLINE/SPUD BARGE JMC 5 are not liable to any extent whatsoever for any alleged losses, damages or injuries or for any claims in any way arising from or in consequence of the subject voyage or in consequence of or in connection with the matters and happenings referred to in this Complaint;

(g)    Or, in the alternative, if this Court should adjudge that Petitioner is liable in any amounts whatsoever, that said liability be limited to the value of the Petitioner's interest, if any, in the DRAGLINE/SPUD BARGE JMC 5, together with pending freight, and be divided *pro rata* to such claimants; and that a Judgment be entered discharging Petitioner and the said vessel of and from any and all further liability and forever enjoining and prohibiting the

filing and prosecution of any claims against Petitioner, its employees, its insurers, or any of its property, in any way arising from or in consequence of the subject voyage or in consequence of or in connection with the matters and happenings referred to in this Complaint;

(f)    That Petitioner has such other further relief as in law, justice and equity it may be entitled to receive.


**BERT M. CASS, JR. (BAR #3984)**
**PAUL D. HALE (BAR #30539)**
**DEUTSCH, KERRIGAN & STILES, L.L.P.**
755 Magazine Street
New Orleans, LA 70130
Telephone: (504) 581-5141
Telefax: (504) 566-1201
bcass@dkslaw.com
phale@dkslaw.com
**Attorneys for Petitioner**

## VERIFICATION

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

     **BEFORE ME**, the undersigned notary public, duly commissioned and qualified

within and for the State of Louisiana, Parish of Orleans, personally came and appeared:

### PAUL D. HALE

who, after being duly sworn, did depose and say:

    1.    That he is the attorney for Petitioner and that he has read the foregoing

Complaint for Exoneration from or Limitation of Liability, and that all and singularly, the

allegations therein are true and correct to the best of his knowledge, information and

belief; and

    2.    The source of his knowledge and the basis of his belief are the information

and documents furnished by Petitioner, as well as the investigation conducted on behalf

of Petitioner.

                             **PAUL D. HALE**

**SWORN TO AND SUBSCRIBED before**
**me this 5 day of December, 2013**

**NOTARY PUBLIC**

WALTER P. MAESTRI
Notary Public
La. Bar No. 25776, Notary Public ID: 57898
Parish of Orleans, State of Louisiana
My Commission Expires At Death

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION**

| | | |
|---|---|---|
| CASHMAN EQUIPMENT CORPORATION, | : | CIVIL ACTION NO.: 6:10-cv-1534 |
| Plaintiff, | : | |
| v. | | JUDGE: |
| | : | |
| OCEANOGRAFIA S.A. de C.V., | : | |
| Defendant. | | MAGISTRATE JUDGE: |

<u>**COMPLAINT IN ADMIRALTY**</u>

The complaint of Cashman Equipment Corporation against Oceanografia S.A. de C.V. in a cause of action civil and maritime, alleges as follows:

<u>**PARTIES, JURISDICTION AND VENUE**</u>

1.      The plaintiff, Cashman Equipment Corporation ("Cashman") is a corporation organized under the laws of the State of Massachusetts with offices located in Baton Rouge, Louisiana as well as shipyard/dock facilities located in Berwick and Amelia, Louisiana.

2.      Oceanografia, S.A. de C.V. ("Oceanografia") is, upon information and belief, a corporation organized under the laws of the country of Mexico.

3.      As more fully provided for below, on February 9, 2006, Cashman and Oceanografia entered into a Bareboat Charter Agreement ("the Charter") of the barge JMC 181 (hereafter "vessel") owned by Cashman, which vessel was delivered in Amelia, Louisiana in the Western District of Louisiana.

Complaint of Cashman Equipment Corp.
against Oceanografia S.A. de C.V.
Page 2

4.     The vessel's On-Charter and Condition Survey before the vessel was delivered to

Oceanografia as per the Charter was performed the Cashman Equipment Corporation Dock in

Berwick, Louisiana on or about February 9, 2006.

5.     Under the Charter, the vessel was to be re-delivered to Amelia, Louisiana.  The

vessel was ultimately returned to the Cashman Amelia facility and was surveyed in Berwick,

Louisiana by both parties for the Off-Charter Survey in April and May 2010.

6.     This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1333.  The

matter before the court is an admiralty and maritime claim within the meaning of Rule 9(h) of

the Federal Rules of Civil Procedure.

7.     This Court has personal jurisdiction over defendant, Oceanografia, as this action

arises out of or is related to defendant's specific and direct contacts with plaintiff herein in the

Western District of Louisiana regarding the chartering of the vessel and specifically contracting

for the delivery and re-delivery of the vessel in the Western District of Louisiana

8.     This Court has venue in the Western District of Louisiana as it is a judicial district

in which a substantial part of the events giving rise to the claim occurred, where the property that

is the subject of the action is situated and where the defendant may be served because of its

specific contacts within the judicial district regarding the vessel.


**FIRST CAUSE OF ACTION**
**(Breach of Charter Agreement)**

9.     The allegations of Paragraphs 1 through 8 are realleged and incorporated herein.

10.     On February 9, 2006, Cashman entered into a Bareboat Charter Agreement with

Oceanografia, whereby Oceanografia chartered the barge JMC 181 for the period commencing

3206073.1

Complaint of Cashman Equipment Corp.
against Oceanografia S.A. de C.V.
Page 3

February 9, 2006 and ending December 31, 2006.  The charter hire agreed upon for the stated period of the Charter was the sum of $1,000.00 USD per day.  A copy of the Charter is attached hereto and marked **Exhibit A.**

11.     Under the terms of the Charter, Oceanografia had the obligation at the end of the charter period to deliver the vessel to Cashman in like good order and condition as when received, ordinary wear and tear excepted, at Amelia, Louisiana.  Rather than return the vessel to Cashman at the end of the charter term, Oceanografia elected to continue chartering the vessel with Cashman's consent.

12.     On October 23, 2007, Cashman notified Oceanografia via electronic mail that the charter hire would increase to the rate of $1,500.00 USD per day effective November 1, 2007. After receipt of this notice of increase, Oceanografia retained possession of the vessel and elected to continue the Charter.

13.     The terms of the Charter provide that charter hire is payable monthly in advance. During the course of the Charter, Cashman had typically submitted invoices to Oceanografia twice each month, with each invoice representing a charge for a period of approximately 15 days in advance.

14.     Oceanografia has defaulted under the terms of the Charter by failing to pay charter hire when due.  On many occasions after Oceanografia ceased making payments for charter hire as scheduled, Cashman made demand seeking either payment, or return of the vessel, or both.  Pursuant to Part II, Section 7 of the Charter, Cashman had the right to withdraw and retake possession of the vessel without legal process.  Despite numerous demands made by

Complaint of Cashman Equipment Corp.
against Oceanografia S.A. de C.V.
Page 4

Cashman upon Oceanografia to pay the charter hire as scheduled or to return the vessel, Oceanografia did neither.

15.     The Charter provides in Part II, Section 4 that Cashman may terminate the Charter five (5) days after written notice if Oceanografia fails to make punctual and regular payments or fails to perform any of its obligations or duties.  After making numerous demands for payment and/or return of the vessel upon Oceanografia, Cashman provided written notice of termination of the Charter to Oceanografia on July 8, 2009, and Cashman terminated the Charter effective July 13, 2009.

16.     The Charter provides that, upon termination, the vessel shall be delivered to Cashman in like good order and condition as when received, ordinary wear and tear excepted, at Amelia, Louisiana and that charter hire shall continue until redelivery.  Cashman demanded return of the vessel in its notice of termination, and on many previous occasions, but Oceanografia failed and refused to return the vessel to Cashman.  Finally, in April 2010, Oceanografia allowed Cashman to retrieve its vessel from Mexico.  Cashman incurred substantial expenses in retrieving its vessel, and found, during the Off-Charter Surveys pursuant to Part II, Section 8 of the Charter, that the vessel was in a state of damage and disrepair far beyond the ordinary wear and tear allowed in the Charter.

17.     Oceanografia owes Cashman unpaid charter hire in the amount of $1,173,936.28.

18.     Pursuant to Part II, Section 7 of the Charter, Oceanografia owes Cashman the sum of $145,012.84 for costs and expenses incurred in returning the vessel to Louisiana due to the failure of Oceanografia to comply with the terms of the Charter and to return the vessel to Louisiana at Oceanografia's expense.

Complaint of Cashman Equipment Corp.
against Oceanografia S.A. de C.V.
Page 5

19.    Pursuant to Part II, Section 8 of the Charter, Cashman presented Oceanografia with the repair invoices in accordance with the damages listed the Off-Charter Survey and Oceanografia owes Cashman the sum of $441,000.00 representing the cost of repairing the vessel in order to return it to like good order and condition as it was in at the commencement of the Charter, ordinary wear and tear excepted.

20.    The Charter provides in Part I, Section G that all port fees shall be for the account of Oceanografia.  Oceanografia allowed port fees in the amount of $70,039.76 to accrue against the vessel.  Cashman also seeks recovery from Oceanografia of all port fees which have accrued against the vessel.

21.    The Charter further provides in Part II, Section 15, that Oceanografia shall pay all reasonable attorney's fees and costs incurred by Cashman arising out of any legal action resulting from Oceanografia's breach or default of any of the provisions of the Charter, such that Oceanografia owes all attorneys' fees and costs incurred by Cashman in this action.

22.    On June 30, 2010 and under oath, Oceanografia, through its representative, Hermilo Escobedo Obrador, acknowledged the debt owed to Cashman for damages due under the Charter Party.


## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

23.    The allegations of Paragraphs 1 through 22 are realleged and incorporated herein.

24.    Oceanografia was enriched by the use of Cashman's vessel without paying charter hire for its use of the vessel.

25.     Oceanografia's failure to pay the outstanding charter hire and related charges has damaged Cashman.

26.     Oceanografia has failed to pay Cashman the charter hire and related charges, and has thus deprived Cashman the use of its property and revenue, all to the benefit of Oceanografia and to the detriment of Cashman.

## THIRD CAUSE OF ACTION
### (Detrimental Reliance)

27.     The allegations of Paragraphs 1 through 26 are realleged and incorporated herein.

28.     Oceanografia represented that if Cashman allowed Oceanografia to charter Cashman's vessel, that Oceanografia would pay Cashman for the use of the vessel.

29.     Payment of the charter hire and related costs was not contingent upon the happening of any event or circumstance, and Cashman was justified in relying upon Oceanografia's assertions.

30.     The payments made by Oceanografia during certain periods of the Charter were additional justification for Cashman's reliance on Oceanografia's assertions.

31.     Contrary to its assertions, Oceanografia failed to pay the charter hire and related costs and expenses, to the detriment of Cashman.

32.     Cashman is entitled to recover the charter hire and related costs and charges on the basis of detrimental reliance.

WHEREFORE, the above premises considered, Cashman seeks judgment against Oceanografia, S.A. for the sum of $1,829,988.88, together with interest, costs and reasonable

Complaint of Cashman Equipment Corp.
against Oceanografia S.A. de C.V.
Page 7

attorney's fees; and Cashman seeks such other, further and different relief to which it may be

entitled.

Respectfully submitted,

ONEBANE LAW FIRM


BY: *s/ Douglas W. Truxillo*
     DOUGLAS W. TRUXILLO
     Texas Bar Number 00795146
     Federal I.D. Number 22078
     1200 Camellia Boulevard, Suite 300
     Lafayette, Louisiana 70508
     Post Office Box 3507
     Lafayette, LA  70502-3507
     Telephone:  (337) 237-2660
     Facsimile:  (337) 266-1232
     Email:  truxillod@onebane.com

     Attorney for Plaintiff Cashman Equipment
     Corporation


Defendant will be served via process server as follows:

Oceanografia, S.A. de C.V.
CD Del Carmen
Avenue 4 Oriente MZA, D Lote 5
Puerto Isla Del Carmen
Ocdigo Postal 24140
CD Del Carmen Campeche

3206073.1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CASHMAN EQUIPMENT | * | CIVIL ACTION NO.: |
| CORPORATION AND SERVICIO | * | |
| MARINA SUPERIOR, L.L.C. | * | |
| | * | |
| VERSUS | * | SECTION ___ (Judge_____) |
| | * | |
| OFFSHORE CONTRACTORS, LTD., OPI | * | DIVISION ___ (Mag. _____) |
| INTERNATIONAL CONTRACTORS, | * | |
| LTD., OPI INTERNATIONAL | * | |
| CONSTRUCTION, LTD., OPI | * | |
| INTERNATIONAL HOLDINGS, LTD., OPI | * | |
| INTERNATIONAL NIGERIA LIMITED, | * | |
| AND OFFSHORE CONTRACTORS, INC. | * | |

**PLAINTIFF'S VERIFIED COMPLAINT FOR DETERMINATION OF ALTER
EGO/SINGLE BUSINESS ENTERPRISE LIABILITY AND FOR ISSUANCE
OF WRIT OF MARITIME ATTACHMENT AND GARNISHMENT**

Plaintiffs, Cashman Equipment Corporation ("Cashman") and Servicio Marina Superior,

L.L.C. ("SMS"), file their verified complaint against defendants, Offshore Contractors, Ltd., OPI

International Contractors, Ltd., OPI International Construction, Ltd., OPI International Holdings,

Ltd., OPI International Nigeria Limited, and Offshore Contractors, Inc., and respectfully show as

follows:

1.      This is an admiralty and maritime claim within the jurisdiction of the United

States and this Honorable Court pursuant to 28 U.S.C. 1333, Rule B of the Supplemental Rules

for Admiralty or Maritime Claims and Asset Forfeiture Actions, and within the meaning of Rule

9(h) of the Federal Rules of Civil Procedure.

2.      Plaintiff Cashman is a corporation organized under the laws of the State of Massachusetts with offices located in Baton Rouge and Covington, Louisiana, as well as shipyard/dock facilities located in Berwick and Amelia, Louisiana.

3.      Plaintiff SMS is a Louisiana limited liability company authorized to do and doing business in this state with its domicile in Covington, Louisiana.

4.      Plaintiffs Cashman and SMS are related entities involved in the business of chartering tugs and barges to others involved primarily in the global oil and gas business.

5.      Defendant Offshore Contractors, Ltd., is a limited liability company organized under the laws of the country of Bermuda.

6.      Defendant OPI International Contractors, Ltd., is a limited liability company organized under the laws of the country of Bermuda.

7.      Defendant OPI International Holdings, Ltd., is a limited liability company organized under the laws of the country of Bermuda.

8.      Defendant OPI International Nigeria Limited is a limited liability company organized under the laws of the country of Nigeria.

9.      Defendant Offshore Contractors, Inc., is a corporation organized under the laws of the state of Texas.

10.     Defendant OPI International Construction, Ltd., is a limited liability company organized under the laws of the country of Bermuda, and is the parent company of all of the other defendants herein.

11.     None of defendants maintain an office, have operations in or may otherwise be found in this district.

12.     Personal jurisdiction over all defendants is proper in this Court because a vessel belonging to the single business enterprise comprised of defendants is located in this district. Personal jurisdiction also exists over all defendants because defendant OPI International Contractors, Ltd., has sufficient minimum contacts and has already been subject to personal jurisdiction in Louisiana in the two underlying actions resulting in the judgments which plaintiffs now seek to enforce, and its contacts are imputed to the other members of the single business enterprise described below.

13.     On June 16, 2014, the United States District Court for the Eastern District of Louisiana entered a Consent Judgment (herein after the "SMS Judgment") in favor of SMS and against defendant OPI International Contractors, Ltd., in that action entitled *Servicio Marina Superior, L.L.C. v. OPI International Contractors, Ltd., et al.*, bearing case number 12-cv-2847 (KDE-KWR).  A copy of that judgment is attached hereto as Exhibit "A".

14.     On October 21, 2014, the United States District Court for the Eastern District of Louisiana entered a Judgment (herein after the "Cashman Judgment") in favor of Cashman and against defendant OPI International Contractors, Ltd., in that action entitled *Cashman Equipment corporation v. OPI International Contractors, Ltd.,* bearing case number 12-cv-2846 (HGB-DEK).  A copy of that judgment is attached hereto as Exhibit "B".

15.     Pursuant to the SMS Judgment, OPI International Contractors, Ltd., is liable to plaintiff SMS in the principal amount of TWO MILLION ONE HUNDRED TEN THOUSAND FOUR HUNDRED TWO and 89/100 DOLLARS ($2,110,402.89), plus interest at the rate of $541.84 per day commencing on March 11, 2014 until paid, for a total of $2,294,086.65 through February 12, 2015.

16.    Pursuant to the Cashman Judgment, OPI International Contractors, Ltd., is liable to plaintiff Cashman in the principal amount of TWO MILLION SEVEN HUNDRED NINETY ONE THOUSAND FIVE HUNDRED FIFTY and 49/100 DOLLARS ($2,791,550.49), plus interest at the rate of $892.73 per day commencing on September 16, 2014, until paid, for a total of $2,925,459.99 through February 12, 2015.

17.    As of the filing of this Complaint, OPI International Contractors, Ltd., has not made any payment towards or otherwise satisfied either the SMS Judgment or the Cashman Judgment, and the full amounts thereof remains due.

18.    Defendant Offshore Contractors, Ltd., is the owner of that certain pipe layer/derrick barge designated *Global Iroquois*, which is now within the jurisdiction of the United States District Court for the Western District of Louisiana. *See* Certificate of Ownership and Encumbrance issued by the Republic of Vanuatu on February 4, 2015, attached hereto as Exhibit "C".

19.    As set forth in greater detail below, Offshore Contractors, Ltd., is an alter ego of and/or part of a single business enterprise with OPI International Contractors, Ltd., and is therefore liable for the debts of OPI International Contractors, Ltd.

20.    None of the defendants herein are registered to do business in Louisiana, have an agent for service of process in Louisiana, or are otherwise found in this district of this Court or in Louisiana within the meaning of Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

21.    As such, defendants' assets found within this district, including (without limitation) the pipe layer/derrick barge designated *Global Iroquois*, are subject to attachment

pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

22.     Accordingly, Cashman and SMS are entitled to Writs of Attachment or Garnishment in accordance with Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, as well as applicable state laws, executable against the *Global Iroquois* and all other goods and chattels of defendants found within this district and within Louisiana.

23.     The fact that plaintiffs' judgments are against "OPI International Contractors, Ltd.," while the vessel is titled in the name of "Offshore Contractors, Ltd.," does not prevent the issuance of Writs of Attachment or Garnishment in accordance with Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

24.     As the court in *Vitol, S.A. v. Primerose Shipping Co. Ltd.*, 11-1900 (4th Cir. 2/8/13), 708 F.3d 527, recognized, maritime attachment under Supplemental Rule B may be used to gain admiralty jurisdiction to enforce a judgment on an alter ego theory. The use of Supplemental Rule B for this purpose is entirely consistent with the rule's purpose: "to permit the attachments of assets wherever they can be found and not to require the plaintiff to scour the globe to find a proper forum for suit or property of the defendant sufficient to satisfy a judgment." 708 F.3d at 539.

25.     "It is well established that an admiralty court can review questions of…alter ego" and that attachment of a vessel belonging to a related entity under Supplemental Rule B is "thus clearly a prejudgment mechanism in the sense which establishes jurisdiction" over the owner "for adjudication of the alter ego dispute." 708 F.3d at 538.

26. Similarly, *Blue Whale Corp. v. Grand China Shipping Development Co., Ltd.*, 13-0192 (2d Cir. 7/16/13), 722 F.3d 488, involved the attachment of a vessel belonging to a related company that the plaintiff alleged was part of a single enterprise with the debtor.

27. In approving the use of Supplemental Rule B attachment for this purpose, the court noted that "[P]art of the reason we authorize maritime attachment is the 'peripatetic' nature of maritime parties, the 'transitory' status of their assets, and the need for parties to obtain security '[i]n a world of shifting assets, numerous thinly-capitalized subsidiaries, flags of convenience and flows of currencies.'" 722 F.3d at 499 (internal citation omitted).

28. In a Rule B action involving alter ego or single business enterprise claims, the district court "is charged only with determining whether [plaintiffs] state a prima facie valid alter-ego claim against [the vessel owner] in furtherance of its motion to attach [the vessel]." 722 F.3d at 499.

29. As set forth in detail below, the defendant entities constitute a single business enterprise and should be treated as such for purposes of plaintiffs' efforts to collect on their judgments. Defendants' assets, including the *Global Iroquois*, should be seized and sold to satisfy those judgments.

30. PLAINTIFFS AGREE TO RELEASE AND HOLD HARMLESS, AND INDEMNIFY THE UNITED STATES OF AMERICA, THE UNITED STATES MARSHAL, THEIR AGENTS, SERVANTS, EMPLOYEES, AND ALL OTHERS FOR WHOM THEY ARE RESPONSIBLE, FROM ANY AND ALL LIABILITY OR RESPONSIBILITY FOR CLAIMS ARISING FROM THE ARREST OR ATTACHMENT OF THE VESSEL.

## DEFENDANTS CONSTITUTE A SINGLE BUSINESS ENTERPRISE

31.     On or about October 15, 2010, OPI International Contractors, Ltd., executed separate charter agreements with SMS for the charter of an ocean-going tug boat and with Cashman for the charter of a barge. Both vessels were ostensibly to be used by OPI International Contractors, Ltd., in performance of certain contracts for oil and gas work in Nigerian waters.

32.     When OPI International Contractors, Ltd., failed to pay for charter hire and damage to the vessels, plaintiffs each filed their own suit to recover the past due amounts. Those underlying actions resulted in the SMS Judgment and Cashman Judgment.

33.     After obtaining judgments in the underlying suits, plaintiffs took the deposition of James K. Cole ("Cole") on January 29, 2015, in aid of execution of the judgments pursuant to the provisions of Rule 69(a)(2). A copy of Cole's deposition transcript is attached hereto as Exhibit "D".

34.     Cole identified himself as "the president and director of Offshore Contractors, Inc.," and "executive vice president and director of Offshore Contractors, Limited." *Id*. at p. 5.

35.     Although he holds no official title with OPI International Contractors, Ltd., he "function[s] in an officer role" for that entity and is authorized to speak on its behalf. *Id*. at pp. 5 and 7. Indeed, Cole testified that he "function[s] as executive vice president and general manager for several other companies in the OPI International Construction, Limited family of companies" and that "you could probably call me an employee of all of those entities." *Id*. at pp. 6-7.

36.     A review of Cole's testimony reveals that the various "OPI" and "Offshore" entities named as defendants herein are operated as a single business enterprise and should each be held liable for the SMS Judgment and the Cashman Judgment against OPI International Contractors, Ltd.

37.     Cole testified that OPI International Contractors, Ltd., never held the contracts for the Nigerian work on which plaintiffs' vessels were used. Unbeknownst to plaintiffs at the time, defendant OPI International Nigeria Limited, held those contracts and performed that work. *Id.* at p. 42.

38.     No written agreement existed between OPI International Contractors, Ltd., and OPI International Nigeria Limited, purporting to assign the charter agreements with plaintiffs or to otherwise allow OPI International Nigeria Limited, to use the vessels. Nor were any financial arrangements made between the two OPI entities for such use. *Id.* at pp. 43-44. Rather, OPI International Nigeria Limited, simply used the vessels chartered by OPI International, Ltd., as though it had contracted for them itself.

39.     This lack of formality by defendants is not surprising considering that Cole acknowledged that he always understood that the funds to pay for the vessel charters would ultimately come from OPI International Nigeria Limited, and its work off the coast of Nigeria. *Id.* at pp. 44-45. Indeed, OPI International Nigeria Limited is the only entity among defendants with any actual operations or outside revenue.

40.     OPI International Contractors, Ltd., the entity used by defendants to enter into the charter agreements with plaintiffs:

          a.  has no office (*id.* at p. 26);

          b.  does not have its own telephone, email, website or fax machine (*id.* at p. 49);

          c.  has no assets and does not own a single physical object of value (*id.* at p. 45);

          d.  does not write checks for anything (*id.* at p. 45);

          e.  does not maintain a bank account (*id.* at p. 41);

          f.  does not maintain financial statements (*id.* at p. 69);

g. receives no money except for funds provided to it by OPI International Nigeria Limited (*id*. at p. 41);

h. performs no services for any non-defendant entity (*id*. at pp. 41-42);

i. relies on personnel employed by other defendant entities to perform those services (*id*. at p. 47);

j. does not realize a profit for performing those services (*id*. at p. 46);

k. relies on personnel employed by other defendant entities for accounting services (*id*. at pp. 47-48);

l. relies on legal counsel employed by other defendant entities (*id*. at pp. 47-48);

m. relies on insurance purchased by other defendant entities (*id*. at pp. 48-49);

n. relies on persons employed by OPI International Nigeria Limited to make its corporate filings in Bermuda (*id*. at p. 51); and

o. is not the entity usually used to enter into contracts like the charter agreements with plaintiffs (*id*. at pp. 37-38).

41. According to Cole, OPI International Contractors, Ltd., is nothing more than a shell used by the defendant entities to employ the crews performing the work on OPI International Nigeria Limited's projects offshore Nigeria. (*Id*. at p. 29). However, in reality, OPI International Contractors, Ltd., does not even do that.

42. Defendant Offshore Contractors, Inc., operating from its office in Houston, finds employees for the Nigerian projects and hires them in the name of OPI International Contractors, Ltd. (*Id*. at pp. 29-30).

43. Although OPI International Contractors, Ltd., purports to have 65 to 70 employees (*id*. at p. 31) and an annual payroll of $11 to 12 million (*id*. at p. 46), it plays no role

in processing that payroll. Rather, an employee of Offshore Contractors, Inc., processes the payroll. (*Id.* at p.47). He then sends it to OPI International Nigeria Limited for approval, which then deposits the funds into an Offshore Contractors, Inc., bank account in Texas that is used to pay the third party payroll firm (ADP) which then issues the checks. (*Id.* at pp. 38-40).

44.     No money passes through the hands of OPI International Contractors, Ltd., and it realizes no profit from its purported role as the "employer" of the crews used on the OPI International Nigeria Limited jobs. (*Id.* at p. 46).

45.     The fact that OPI International Contractors, Ltd., does not even maintain a bank account, combined with the other facts described above establishes that it nothing more than a puppet of one or more of the other defendant entities.

46.     Thus, unbeknownst to plaintiffs, defendants used a shell company with no operations, no revenue and no assets to enter into the underlying charter agreements. Now that plaintiffs are trying to collect on their judgments, it has become apparent that defendants have fragmented what is truly one business into multiple entities in an effort to shield their assets from creditors.

47.     That one business is OPI International Nigeria Limited. It is the only defendant with any outside revenue, the entity which holds all of the contracts for the actual work offshore Nigeria, and the source of all funds used and relied upon the other nominal entities. The other defendant entities do nothing other than support the efforts of OPI International Nigeria Limited on its work offshore Nigeria.

48.     According to Cole, OPI International Nigeria Limited is a subsidiary of defendant OPI International Construction, Ltd. That entity is merely a holding company that serves as the parent of all of the other defendants:

a.   OPI International Nigeria, Limited

b.   OPI International Holdings, Ltd.

c.   OPI International Contractors, Ltd.

d.   Offshore Contractors, Inc.; and

e.   Offshore Contractors, Ltd.

OPI International Construction, Ltd., has no operations, office or employees. *Id*. at pp. 16-17.

49.   Not only are all five subsidiaries owned by the same entity, the ultimate decision makers for all five are the same two Nigerian citizens: Femi Edun and Tayo Oluwole. *Id*. at pp. 15, 18-19, 21, 24 and 28.

50.   Of the five defendant subsidiaries, the only one with any revenue from outside sources is OPI International Nigeria Limited. To the extent any of the other entities do anything at all, it is in support of OPI International Nigeria Limited's offshore projects in Nigeria. The very manner in which defendants carry out that work highlights the fact that these related entities operate as a single business enterprise.

51.   While the contracts for the Nigerian work are held by OPI International Nigeria Limited, the primary marine vessel used to carry out that work is owned by defendant OPI International Holdings, Ltd. The latter entity has no office or employees, and has no function other than to hold title to the derrick lay barge known as the DLB 332. *Id*. at pp. 18-19.

52.   However, the DLB 332 is staffed by a crew that is ostensibly hired by OPI International Contractors, Ltd., but in reality is hired by Offshore Contractors, Inc., and paid with funds that ultimately come from OPI International Nigeria Limited. *Id*. at p. 34.

53.     Similarly, when defendants decided to buy a second pipe lay/derrick barge (the *Global Iroquois*) during the pendency of plaintiffs' underlying actions against OPI International Contractors, Ltd., they used Offshore Contractors, Ltd., to make that purchase.

54.     Offshore Contractors, Ltd., has no operations or employees, and does not own anything else. *Id*. at pp. 25-26. To the extent it can be considered to have an office, it is the Houston office of Offshore Contractors, Inc. *Id*.

55.     Upon information and belief, the funds to buy the *Global Iroquois* were provided by OPI International Nigeria Limited.

56.     Upon information and belief, the decision makers for Offshore Contractors, Ltd., are Femi Edun and Tayo Oluwole.

57.     A brochure advertising the *Global Iroquois* can be found on the website "www.opi-holdings.com." Despite the fact that the vessel is purportedly owned by Offshore Contractors, Ltd., the brochure bears the OPI logo, lists the offices of OPI International Nigeria Limited and Offshore Contractors, Inc., and identifies employees of those entities as "sales contacts." A copy of the Global Iroquois brochure is attached hereto as Exhibit "E".

58.     Offshore Contractors, Ltd., is yet another puppet of OPI International Nigeria Limited and is part of the single business enterprise herein.

59.     Offshore Contractors, Inc., was formed in January 2013 (during the pendency of plaintiffs' underlying suits) to essentially perform the roles previously performed by OPI International Contractors, Ltd. Pursuant to the terms of an October 2012 buy/sell agreement whereby the Nigerians acquired the OPI defendants from a Texas company, the buyers agreed not to operate under the "OPI" name in Texas, and chose the "Offshore Contractors" name instead. Cole depo, Ex. D, at 22.

60.     Although Offshore Contractors, Inc., purports to do hiring and payroll services for OPI International Contractors, Ltd., there is no written agreement between the two. *Id*. at p. 23. Moreover, as noted above, although these employees are "hired" by Offshore Contractors, Inc. and/or OPI International Contractors, Ltd., they work on a vessel owned by OPI International Holdings, Ltd., and are ultimately paid by OPI International Nigeria Limited.

61.     All of the defendants operate out of the Houston office and two Nigerian offices.

62.     All of the defendants rely on centralized accounting provided by an employee in the Houston office and another in the Lagos, Nigeria office.

63.     Defendants constitute a single business enterprise for liability purposes for the following non-exclusive list of reasons:

1.     defendants have identical ownership;

2.     defendants have common directors or officers, Femi Edun and Tayo Oluwole, responsible for decision making for all entities;

3.     defendants have unified administrative control and their business functions are similar or supplementary;

4.     the directors and officers of one defendant entity do not act independently in the interest of that entity;

5.     OPI International Nigeria Limited finances all of the other entities;

6.     many of the entities, especially OPI International Contractors, Ltd., have inadequate capitalization ("thin incorporation");

7.     defendants caused the formation of Offshore Contractors, Inc., and Offshore Contractors, Ltd.;

8.      OPI International Nigeria Limited pays the salaries and other expenses or losses of all of the other defendants;

9.      other than OPI International Nigeria Limited, none of the defendants receives any business other than that given to it by its affiliated entities;

10.     defendants routinely use the property of another defendant as its own;

11.     defendants fail to comply with corporate formalities;

12.     defendants have common employees;

13.     services are rendered by the employees of one defendant on behalf of another defendant entity;

14.     defendants have common offices;

15.     defendants have centralized accounting;

16.     defendants engage in undocumented transfers of funds between the defendant entities;

17.     no effort is made to allocate profits and losses between the defendant entities and/or that allocation is unclear; and

18.     defendants have excessively fragmented what is in reality a single enterprise into separate entities.

WHEREFORE, plaintiffs, Cashman Equipment Company and Servicio Marina Superior, L.L.C., pray that: (1) the Court enter the attached form of order directing the Clerk of Court to issue a Writ of Maritime Garnishment and Attachment pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions; (2) that the *Global Iroquois* and her appurtenances, and any other property of defendants found within this district, be attached by the United States Marshal to satisfy the Cashman Judgment and the SMS

Judgment; (3) that the Court enter a judgment recognizing that Offshore Contractors, Ltd., OPI International Contractors, Ltd., and the other defendants are alter egos of one another and/or comprise a single business enterprise such that each is liable for the debts of the others; (4) that the Court recognize the Cashman Judgment granted by the United States District Court for the Eastern District of Louisiana in the amount of $2,791,550.49, plus post-judgment interest from October 21, 2014; (5) that the Court recognize the SMS Judgment granted by the United States District Court for the Eastern District of Louisiana in the amount of $2,110,402.89, plus post-judgment interest from June 16, 2014; (6) that any property attached in this proceeding be sold under the direction of this Court and that the proceeds be used to satisfy the amounts due and owing Cashman and SMS; (7) that, in the event the proceeds from the sale are insufficient to satisfy both judgments, plaintiffs share pro rata in what proceeds are realized; (8) that defendants be cited to appear and answer the Complaint; (9) for all costs of this proceeding and the attachment of the vessel; and (10) for such further and other relief, in law and equity, to which Cashman and SMS may be entitled.

Respectfully submitted,

**JACK M. CAPELLA (La. 14893)**
3421 N. Causeway Blvd., Suite 105
Metairie, Louisiana 70001
Telephone:      (504) 835-7377
Email: capellaj@bellsouth.net

and

/s/ Charles M. Pisano
Roedel Parsons Koch Blache
Balhoff & McCollister
**CHARLES M. PISANO (La. 19107), T.A.**
**ROSS A. DOOLEY (La. 24384)**
**DAVID C. FLESHMAN (La. 34382)**
1515 Poydras Street, Suite 2330
New Orleans, Louisiana 70112
Telephone:     (504) 525-7086
Facsimile:      (504) 525-4991
Email:  cpisano@roedelparsons.com
            rdooley@roedelparsons.com
            dfleshman@roedelparsons.com
**Attorneys for Plaintiffs,**
**Cashman Equipment Corporation**
**and Servicio Marina Superior, L.L.C.**

**PLEASE ISSUE A WRIT OF MARITIME ATTACHMENT AND GARNISHMENT AND ATTACH THE *GLOBAL IROQUOIS* AT ITS CURRENT LOCATION:**

> LEEVAC Shipyards Lake Charles, LLC
> 8200 Big Lake Road
> Lake Charles, LA 70605
> Phone: (337) 214-0531

**DEFENDANTS WILL BE SERVED AS FOLLOWS:**

Offshore Contractors, Ltd.
OPI International Contractors, Ltd.
OPI International Construction, Ltd.
OPI International Holdings, Ltd.
OPI International Nigeria Limited
Offshore Contractors, Inc.
through their authorized representative:

James K. Cole
2603 Augusta Drive, Suite 840
Houston, Texas 77057

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CASHMAN EQUIPMENT CORP.

                              *      C.A. NO: 13 cv-548

VERSUS                          *      JUDGE

                              *      MAG. __

PRIME COATINGS, INC.

### PLAINTIFF'S INITIAL COMPLAINT

Plaintiff Cashman Equipment Corp. ("Cashman") hereby files its Initial Complaint against Defendant Prime Coatings, Inc. ("PCI") and respectfully shows as follows:

**1.**

Cashman is a Massachusetts corporation, with its principal place of business located in Braintree, Massachusetts. It is licensed to do business in Louisiana and its principal establishment in Louisiana is located in Covington, within this District.

**2.**

PCI is a Louisiana corporation with its principal place of business at 166 Bayou Boeuf Road in Assumption Parish, Louisiana, within this District.

### JURISDICTION

**3.**

Jurisdiction is proper in this Court pursuant to 28 U.S.C. 1332, in that

there is complete diversity of citizenship between the parties and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

### 4.

Venue is proper before this Honorable Court pursuant to 28 U.S.C. §1391 because the defendant resides in this District, the property that is the subject of this action is located within this District and a substantial part of the events or omissions giving rise to the claims occurred within this District.

### 5.

In January of 2008, Cashman and Prime Coatings entered into a lease for a piece of commercial property located at 180 Bayou Boeuf Rd. in Amelia, Louisiana (the "Property").  Despite an Amelia mailing address, the property is within Assumption Parish.  A copy of the lease is attached hereto as Exhibit 1.

### 6.

The lease was drafted by PCI and included handwritten additions that were also provided by PCI.

### 7.

The lease was monthly; rent was $2,700.00 per month; and the specific use authorized by the lease was for the storage of trailers. (See Exhibit 1).

### 8.

2

Cashman took possession of the Property and utilized it, as permitted by the lease from January 2008 until October 2009. All rent was paid during this time period.

### 9.

In October 2009, Cashman considered the lease terminated and removed all of its movables from the property. Cashman was current on all of its obligations when it considered the lease to be terminated.

### 10.

Upon information and belief, in October or November of 2009, PCI leased the Property to a third party.

### 11.

Alternatively, upon information and belief, in October or November of 2009, PCI permitted a third party to take possession of and/or utilize the Property for that third party's own use.

### 12.

PCI never sought Cashman's permission (and Cashman never gave such permission) to lease the Property to the third party in October/November of 2009.

### 13.

Prior to the execution of the lease, PCI's point(s) of contact with Cashman were Cashman's employees in Amelia, Louisiana. However, after

the lease was executed, Cashman's headquarters in Massachusetts was at all times responsible for making the lease payments.

## 14.

From the inception of the lease until September 2012, Cashman's headquarters remitted monthly checks directly to PCI for $2,700.00, ostensibly for rent for the property.

## 15.

The payments remitted after October 2009 were made incorrectly, insofar as the accounts payable department in Boston was unaware that the lease had terminated.

## 16.

Additionally, because rent checks were routed directly to PCI, Cashman's employees in Louisiana had no knowledge that monthly rent payments improperly continued for three years after the lease terminated.

## 17.

PCI, was aware that Cashman had tendered the Property back to PCI in October 2009 and that Cashman never took any steps consistent with the intent to reoccupy the Property.

## 18.

However, PCI did tender the Property to a third party, yet continued to collect rent form Cashman during the occupancy by the third party and after the third party ceased using the Property.

**19.**

The funds paid to PCI after October 2009 constitute payment of a thing not owed pursuant to La.C.C. art. 2299, *et seq.* As a result, PCI is bound to return all monies paid by Cashman after October 2009 ($94,500.00).

**20.**

Alternatively, PCI was unjustly enriched at Cashman's expense and should be required to return the monies improperly received.

**21.**

In the further alternative, PCI breached its lease with Cashman by failing to provide uninterrupted and peaceable possession of the Property when it permitted a third party to occupy the Property in October/November 2009.

**22.**

Under each of these causes of action, Cashman should be entitled to recover all monies remitted to PCI after Cashman vacated the Property in October, 2009.

**26.**

Additionally, Cashman seeks recovery of attorney's fees pursuant to the original lease for the Property.

**27.**

Finally, Cashman seeks all pre- and/or post-judgment interest to which it is found to be entitled, as well as all other relief, whether at law or in equity, to which it may prove its entitlement at trial.

**28.**

Cashman hereby demands a jury trial in this matter.

**29.**

**WHEREFORE,** after due proceedings are held, plaintiff, Cashman Equipment Corp. prays that judgment be granted herein in its favor and against defendant Prime Coatings, Inc., affording to plaintiff all amounts owed and damages that result from the payment of a thing not owed and/or defendant's unjust enrichment and/or breaches of contract, plus costs, interest, and attorney's fees, as well as all other relief appropriate in law or equity.

Respectfully submitted:

*s/ Scott Brownell*

_____
Scott D. Brownell (Bar #26223)
Scott D. Brownell, APLC
527 E. Boston St., Suite 201
Covington, La 70433
Telephone: 985-801-0055
Telefax:    985-292-3501
scott@sbrownell.com

**PLEASE ISSUE SUMMONS TO:**

**PRIME COATINGS, INC.**
**VIA ITS REGISTERED AGENT**
**FOR SERVICE OF PROCESS:**
**RANDAL G. ANDRAS**
**160 BAYOU BOEUF RD.**
**AMELIA, LA  70340**