UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


HC&D, LLC,                              )
                                       )
          Plaintiff,                   )
                                       )
v.                                     )     CIVIL ACTION NO.
                                       )     22-10224-DPW
PRECISION NDT & CONSULTING, LLC,       )
and CASHMAN EQUIPMENT CORP.,           )
                                       )
          Defendants.                  )


MEMORANDUM AND ORDER
REGARDING
SEVERANCE AND TRANSFER
September 29, 2023

TABLE OF CONTENTS

I. FACTUAL BACKGROUND.......................................... 5

  A.   The Parties ............................................. 5

  B.   The Purchase Agreement ................................. 6

  C.   The Gauging Report ..................................... 7

II. PROCEDURAL BACKGROUND...................................... 9

III. ANALYSIS................................................. 11

  A.   Personal Jurisdiction ................................. 12

  B.   The Transfer Mechanism ................................ 19

  C.   Private and Public Transfer Interests ................. 24

  D.   Transfer and the Forum-Selection Clause ............... 28

    1.   Forum Selection Clause in Agreement Between HC&D and
       Cashman ............................................ 33

    2.   Private and Public Interests Relevant to Precision .... 33

    3.   Severance of Precision's Claims ....................... 34

    4.   Efficiency and Precision's Private Interests ......... 35

    5.   Conclusion ......................................... 36

IV. CONCLUSION............................................... 38

This dispute among three sophisticated commercial entities — HC&D, LLC ("HC&D"), Cashman Equipment Corp. ("Cashman"), and Precision NDT & Consulting, LLC ("Precision") — surfaces from turmoil caused by the sale of expensive maritime equipment: a freight barge (the "Barge").  Plaintiff HC&D and Defendant Cashman were the two signatories to the actual Purchase and Sale Agreement ("Purchase Agreement") for the Barge.  The Purchase Agreement contained a forum-selection clause requiring disputes "arising" under the agreement to be litigated in Massachusetts.

Precision, a company that performed work for Cashman prior to the execution of the Purchase Agreement, was also named by HC&D as a defendant in this case.  After Precision raised issues pertaining to this court's personal jurisdiction over it, HC&D reversed its initial strategic choice to file in the United States District Court for the District of Massachusetts and moved to transfer the case in its entirety to the United States District Court for the Western District of Louisiana.

When initiating this litigation, HC&D had available at least two alternatives.  First, HC&D could have, as it did, file a lawsuit in Massachusetts where it would be met, as it was, with a motion to dismiss based on this court's lack of personal jurisdiction over co-defendant Precision.

Alternatively, HC&D could have filed two separate, but very similar, lawsuits respectively against each of the co-defendants

— Cashman in Massachusetts and Precision in Louisiana — and pursued the two separate suits simultaneously, thus severing what was conceived as one dispute arising under the Purchase Agreement into two cases in two different districts.

In an electronic order on March 31, 2023, following the parties' supplemental memorandum regarding Precision's motion to transfer the entire case to the Western District of Louisiana, I granted Precision's motion to transfer and promised a Memorandum providing directions for the transfer procedure.  Meanwhile and well after the promised transfer Memorandum was expected to issue, I continued to reflect on the proper form transfer should take.[1]  This in turn has caused me to reconsider my electronic

---

[1] By the luck of the draw, I have over the past several years been called upon to rule on the question of transfer when the court does not have jurisdiction over all defendants.  My written opinions in such cases have resolved the transfer question by ordering transfer of the case to a district having jurisdiction over all parties.  *See Ferris* v. *Darrell*, No. 18-cv-10204-DPW, 2020 WL 4431763 (D. Mass. July 13, 2020); *TargetSmart Holdings, LLC* v. *GHP Advisors, LLC*, 366 F. Supp. 3d 195 (D. Mass. 2019).  As reported in *Lewis* v. *Hill*, No. 19-cv-12500-DPW, 2023 WL 4706575, at *23 n.15 (D. Mass. July 24, 2023), where the subsequent history of those cases is recounted, those transfers provided more manageable, expeditious and inexpensive means of proceeding in the face of reluctant and recalcitrant litigants and their counsel.  In *Lewis*, I followed a similar protocol, after full consideration of the implications of transfer for parties having disparate resources who "carefully and strategically avoided asking for transfer." *Lewis*, at *1.  By contrast, as will appear in this Memorandum, severance of the claims of defendants followed by transfer of only the defendant over whom this district does not have jurisdiction, appears the more manageable, expeditious and inexpensive course when confronted with the collection of reluctant and recalcitrant litigants in this case.

order that this case be transferred to the Western District of Louisiana in its entirety.

Having now reconsidered my earlier disposition toward keeping the claims against both defendants bundled together in a single jurisdiction, I have concluded that HC&D should not pursue this case, in its entirety, in Massachusetts. The salience of the forum-selection clause in a Purchase Agreement for a maritime vessel as a distinctive fact affecting my determination, counsels that I balance the competing interests by transferring only HC&D's claims against Precision to the Western District of Louisiana while maintaining jurisdiction over its claims against Cashman in Massachusetts. More fundamentally, the severance of the respective claims separately alleged against the two defendants would — as a pragmatic approach and in a practical manner — best promote the interests of justice by its prospect for making resolution of the two severed cases more manageable, expeditious and inexpensive.

## I. FACTUAL BACKGROUND
### A.   *The Parties*

Plaintiff **HC&D** is a limited liability company organized under the laws of the State of Hawaii with a principal place of business in Honolulu, Hawaii. All members of this limited liability company are citizens of Hawaii. HC&D represents that it is one of the main producers of concrete in Hawaii and

intended to purchase the Barge in order to transport concrete between the Hawaiian Islands.

Defendant **Cashman** is a marine construction corporation organized under the laws of Massachusetts with a principal place of business in Braintree, Massachusetts.  In addition, as discussed more fully below, HC&D asserts in its filings, and Cashman does not dispute, that Cashman conducts a meaningful amount of business in the state of Louisiana and has a business address there.

Defendant **Precision** is a limited liability company organized under the laws of Louisiana with an office in Patterson, Louisiana.  All members of this limited liability company are citizens of Louisiana.  Precision is an American Bureau of Shipping ("ABS") certified hull inspection company that conducts visual inspections of vessels like the barge at issue.

## B.   *The Purchase Agreement*

In September 2020, HC&D and Cashman entered into the Purchase Agreement under which Cashman sold the Barge to HC&D for $1,985,500.[2]  The Purchase Agreement has both a forum-selection clause and a choice of law clause pointed toward the

---

[2] HC&D alleges a purchase price of $1,985,500 [Dkt. No. 4 ¶ 7], though the Purchase Agreement, itself, lists a price of $1,900,000. [Dkt. No. 4-1 at ¶ 1]  The source of the $85,500 discrepancy is unclear but is, in any event, immaterial for purposes of this Memorandum.

use of a Massachusetts location and Massachusetts legal doctrine in the resolution of disputes; these clauses read respectively as follows:

> Paragraph 14 [forum-selection]:
>
> All disputes arising hereunder shall be submitted for resolution at Boston, Massachusetts before a court of competent jurisdiction.

[Dkt. No. 4-1 ¶ 14]

> Paragraph 13 [choice of law]:
>
> The validity and interpretation of this Agreement and the rights and obligations of the parties hereto shall be governed in all respects by the laws of the Commonwealth of Massachusetts without giving effect to the conflicts of law provisions thereof.

[*Id.* ¶ 13]

## C.   *The Gauging Report*

In April 2019, prior to the execution of the Purchase Agreement between HC&D and Cashman, Precision prepared a Hull Diminution Survey (also referred to as the "Gauging Report") for ABS pertaining to the Barge.  This is an industry standard report that tests the condition of the steel of a vessel.  HC&D claims Cashman knew HC&D would not purchase the Barge without a satisfactory Gauging Report demonstrating seaworthiness and, further, that HC&D relied on Precision's Gauging Report when executing the Purchase Agreement.  The Gauging Report, however, is not referenced in the Purchase Agreement.

HC&D had no direct dealings with Precision as part of the

sale of the Barge.  Instead, the Gauging Report was prepared by
Precision at the behest of Cashman over a year prior to the
execution of the Purchase Agreement and was later presented to
HC&D by Cashman, on Cashman letterhead, during their
negotiations.  HC&D alleges that it is a common and accepted
industry practice to use prior reports of a vessel's condition
as accurate representations when contemplating the purchase of a
vessel.

HC&D alleges more specifically that Precision's Gauging
Report was not, in fact, an accurate representation of the
Barge's condition and seaworthiness because it contained "false,
misleading, and inaccurate information regarding the thickness
and wastage of the Barge's steel."  HC&D contends both Cashman
and Precision either willfully or negligently misrepresented the
true condition of the Barge in connection with the sale.

**D.   *Subsequent Events***

After the execution of the Purchase Agreement between HC&D
and Cashman, HC&D towed the Barge from Amelia, Louisiana to
California.  Upon arrival in California, in February 2021,
visual inspection of the Barge revealed it to be "flooded and
holed out," an impossibility if Precision's Gauging Report was
an accurate representation of the Barge's condition and
seaworthiness.  HC&D claims to have spent $3,991,868.77 in
repairing the Barge.

## II. PROCEDURAL BACKGROUND

In its Amended (and operative) Complaint,[3] HC&D alleges the

following against Cashman alone:

    Count I: Fraud in the Inducement  [Dkt. No. 4 ¶¶ 92-110]
    Count II: Fraud  [*Id*. ¶¶ 111-119]
    Count III: Negligent Misrepresentation  [*Id*. ¶¶ 120-124]
    Count IV: Violations of Mass. Gen. Laws ch. 93A, §§ 2 and
    11  [*Id*. ¶¶ 125-135]

Against Precision alone, HC&D alleges:

    Count V: Fraud  [*Id*. ¶¶ 136-140]
    Count VI: Fraudulent Misrepresentation  [*Id*. ¶¶ 141-145]
    Count VII: Negligent Misrepresentation  [*Id*. ¶¶ 146-153]
    Count VIII: Violations of the Louisiana Unfair Trade
    Practices Act ("LUTPA") [*Id*. ¶¶ 154-163]

Cashman filed a Motion to Dismiss the Amended Complaint

pursuant to FED. R. CIV. P. 12(b)(6) contending that the Purchase

Agreement disclaims any representations as to the Barge's

condition or seaworthiness.  [Dkt. No. 9]  Consequently, argues

Cashman, HC&D's allegations stumble at the gangway before it can

set forth on successful litigation of the dispute regarding the

Purchase Agreement.  [*Id*. at 1]

For its part, Precision filed a Motion to Dismiss pursuant

to FED. R. CIV. P. 12(b)(2) contending that the claims in the

Amended Complaint against it must be dismissed based on this

Court's lack of personal jurisdiction.  As part of this motion,

---

[3] The Amended Complaint was filed shortly after this action was
commenced and before the defendants had answered or responded to
the initial complaint.

Precision asserts that it is organized and headquartered in Louisiana with a principal place of business there.  Precision further asserts that it does not operate in, provide goods or services in, advertise in, or employ any sales agents in Massachusetts.  During the relevant time frame, Precision did not derive any revenue from Massachusetts; nor did its corporate officers or directors live in Massachusetts.

Precision argues that HC&D's alleged injury did not arise out of Precision's acts or omissions in Massachusetts and that Precision does not engage in continuous and systematic business activity in Massachusetts.  Precision consequently contends this court lacks personal jurisdiction over it.

Confronted with Precision's 12(b)(2) motion, HC&D reversed course and filed a Motion to Transfer the case to Louisiana in its entirety.  In that motion, HC&D argued that venue is proper in both Massachusetts and Louisiana but has sidestepped the dispute whether this court has personal jurisdiction over Precision, instead specifically asking that the matter be sent to the Western District of Louisiana where personal jurisdiction over both Cashman and Precision would indisputably exist.

Precision and Cashman opposed HC&D's Motion to Transfer. Precision argued that HC&D's decision to file in Massachusetts was a benighted initial strategic choice that HC&D should be bound by after the parties have spent money to litigate in

Massachusetts.  Precision asks that I deny the Motion to
Transfer and, instead, grant its Motion to Dismiss.

Cashman offers a more complete argument and raises three
points: (1) there has been no change in circumstances since the
beginning of the litigation that would justify the change in
venue; (2) venue in Louisiana is not proper as to Cashman; and
(3) litigation in Louisiana violates the forum-selection clause
HC&D and Cashman agreed to in the Purchase Agreement.  [Dkt. No.
30 at 2-6]  I address all of these arguments below.

Although afforded the opportunity to do so, neither party
has addressed the propriety of transferring only HC&D's claims
against Precision to the Western District of Louisiana.

### III. ANALYSIS

As noted at the outset of this Memorandum, *see supra* note
1, I have reconsidered the form the appropriate transfer order
should take in this case.  I have done so following a more
refined analysis of the implications of several previous cases
in which I have dealt with issues involving disputed transfer
initiatives.  In conducting my further analysis of the issues in
this case, I have particularly reviewed the law in both the
First Circuit and the Fifth Circuit to ensure I am applying the
correct legal standards for questions of personal jurisdiction,
venue, and transfer within the two circuits at issue in this
case.  While I find that the legal standards of the two relevant

circuits are materially aligned in these heavily litigated procedural areas, I will note when they differ and how those differences might impact analysis.

## A.   *Personal Jurisdiction*

I find Massachusetts does have personal jurisdiction over Cashman, HC&D's second named defendant in the first amended complaint.  However, as Precision asserts, I find that a Massachusetts court lacks personal jurisdiction over it.

As part of my determination of whether transferring certain claims in this case to another district is appropriate, I will focus on whether the state of Louisiana might exercise personal jurisdiction over Precision, because HC&D has specifically asked me to transfer this case to the Western District of Louisiana.

In a diversity case, a federal court may exercise personal jurisdiction over a non-resident defendant if the forum state's long-arm statute confers personal jurisdiction and the exercise of personal jurisdiction over the defendant satisfies the requirements of the Due Process Clause of the U.S. Constitution.[4]

---

[4] The First Circuit has "suggested that Massachusetts's long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution." *Copia Commc'ns, LLC* v. *AMResorts L.P.,* 812 F.3d 1, 4 (1st Cir. 2016). The Louisiana Long-Arm Statute is said to be "co-extensive with the limits of due process under the Constitution" so "the jurisdictional analysis under the Louisiana Long-Arm Statute collapses into a single inquiry of whether the exercise of personal jurisdiction comports with due process." *Libersat* v. *Sundance Energy Inc.* 437 F. Supp. 3d 557, 565 (W.D. La. 2020)(Summerhays, J.)(citing *Petroleum Helicopoters, Inc.* v.

*See Astro-Med* v. *Nihon Kohden Am., Inc.,* 591 F.3d 1, 8 (1st Cir. 2009); *McFadin* v. *Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The plaintiff bears the burden of proving that a court has personal jurisdiction over the defendants in response to a 12(b)(2) motion but is only required to present prima facie evidence that personal jurisdiction exists.  *Daynard* v. *Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50-51 (1st Cir. 2002); *Frank v. PNK (Lake Charles) L.L.C.,* 947 F.3d 331, 336 (5th Cir. 2020).

As a matter of due process, personal jurisdiction can be based on either "general jurisdiction" or "specific jurisdiction."  *See Astro-Med,* 591 F.3d at 9; *Halliburton Energy Servs., Inc.* v. *Ironshore Specialty Ins. Co.,* 921 F.3d 522, 539 (5th Cir. 2019).  General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum state." *Daimler AG* v. *Bauman,* 571 U.S. 117, 138 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 919 (2011)).  In the Fifth Circuit, "[g]eneral jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed."  *Johnston* v. *Multidata Sys. Int'l Corp,* 523 F.3d 602,

---

*Avco Corp. et al.*, 513 So.2d 1188, 1192 (La. 1987); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.,* 753 F.3d 521, 546 (5th Cir. 2014)).

610 (5th Cir. 2008) (quoting *Access Telecom, Inc.* v. *MCI Telecomms. Corp.,* 197 F.3d 694, 717 (5th Cir. 1999)).

A court may exercise specific jurisdiction over a defendant if the plaintiff's particular claims "arise out of or relate to the defendant's contacts" with the forum state. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. ---, 141 S. Ct. 1017, 1025 (2021). Both the First Circuit and Fifth Circuit use a three-prong inquiry to determine whether specific jurisdiction exists.[5] To exercise specific jurisdiction over a defendant, a court must find that (1) the defendant has minimum contacts with the forum state, i.e. that the defendant purposely directed its activities toward the state or purposefully availed itself of the privileges of conducting activities there; (2) the plaintiff's claims arise out of or result from these forum-related contacts; and (3) the exercise of personal jurisdiction is fair and reasonable. *Seville* v. *Maersk Line, Ltd.,* 53 F.4th 890, 895 (5th Cir. 2022); *see Johnson* v. *TheHuffingtonPost.com, Inc.,* 21 F.4th 314, 317-318 (5th Cir. 2021); *accord Vapotherm, Inc.* v. *Santiago*, 38 F.4th 252, 258 (1st Cir. 2022).

The record does not support a finding that would subject Precision either to general or specific personal jurisdiction in

---

[5] While the First and Fifth Circuits word the tests slightly differently and in a different order of questions, I find the tests are effectively the same.

Massachusetts.[6]  As an entity with a principal place of business in Louisiana, Precision has demonstrated that it has had no contacts with Massachusetts that would make it at home for purposes of the work of Massachusetts courts.

Precision's contacts with Massachusetts in this case appear to be limited to its agreement to prepare the Gauging Report for, and delivery of the Gauging Report to, Cashman.  There does not appear to be a dispute that Precision's inspection of the Barge leading to the Gauging Report was conducted in Louisiana, where the Barge was registered.

Precision acknowledges that it is a limited liability company organized and headquartered in Louisiana with a principal place of business in Louisiana and, further, that its two individual members are citizens of and reside in Louisiana. Precision's inspection leading to the Gauging Report was either conducted — or represented as conducted — in Louisiana and the Gauging Report was presumably completed, or to be completed, in

---

[6] In this District, when applying the prima facie method to a 12(b)(2) motion, a court takes facts alleged by a plaintiff as true, views them in its favor, and "add[s] to the mix facts put forward by the defendants, to the extent that they are uncontradicted." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n.*, 142 F.3d 26, 34 (1st Cir. 1998). With that in mind, I have relied on HC&D's allegations in its Amended Complaint. Because HC&D does not dispute them, I will also consider the jurisdictional facts submitted by Precision.  [Dkt. Nos. 20-1, 41].

Louisiana.  This is sufficient[7] to subject Precision to both general and specific jurisdiction in Louisiana.[8]

Having found that Louisiana may exercise personal jurisdiction over Precision, but Massachusetts may not, I am of the view that the fact Massachusetts may exercise personal jurisdiction over Cashman becomes immaterial to the discussion of where this case may proceed against Precision.  I move on to the question of which judicial districts would provide an appropriate venue for this case.  "[T]he general purpose of statutorily specified venue. . .is 'to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial."  *Uffner* v. *La Reunion Francaise, S.A.,* 244 F.3d 38, 43 (1st Cir. 2001) (quoting *Leroy* v. *Great W. United Corp.,* 443 U.S. 173, 183–84 (1979)).  28 U.S.C. § 1391

_____

[7] In the Western District of Louisiana, a plaintiff need only demonstrate a prima facie basis for personal jurisdiction through the allegations in the complaint.  If the defendant does dispute the factual grounds for personal jurisdiction, a court "may consider the record before it, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."  *Libersat,* 437 F. Supp. 3d at 565 (quoting *Quick Technologies, Inc.* v. *Sage Group PLC,* 313 F.3d 338, 344 (5th Cir. 2002)).  I have therefore relied on HC&D's allegations in its Amended Complaint, as well as the affidavit HC&D's attorney submitted and the affidavits that Precision's attorney submitted in determining whether HC&D has established the prima facie basis to find Cashman and Precision are subject to jurisdiction in Louisiana.

[8] Personal jurisdiction over Cashman in this District is not meaningfully disputed, given Cashman is a corporation organized under Massachusetts law.  [Dkt. No. 34-2 at 11, 19]  That is the paradigm for an entity to be at home as a resident of the Commonwealth.

governs the question of whether venue is "wrong" or "improper."
*Atl. Marine Const. Co.* v. *U.S. Dist. Court for W. Dist. Of Tex.,*
571 U.S. 49, 55 (2013).

28 U.S.C. § 1391(b) states:

A civil action may be brought in-

(1)  a judicial district in which any defendant resides,
     if all defendants are residents of the State in
     which the district is located;
(2)  a judicial district in which a substantial part of
     the events or omissions giving rise to the claim
     occurred, or a substantial part of property that is
     the subject of the action is situated; or
(3)  if there is no district in which an action may
     otherwise be brought as provided in this section,
     any judicial district in which any defendant is
     subject to the court's personal jurisdiction with
     respect to such action.

28 U.S.C. § 1391(b).

These three categories are interpreted such that venue may
be proper in more than one district. *Astro-Med,* 591 F.3d at 12;
*CAM Logistics, L.L.C.* v. *Pratt Indus., Inc.*, No. 1:20-CV-00445,
2021 WL 4485890, at *15 (W.D. La. Aug. 11, 2021) (Perez-Montes,
M.J.) (citing *Zurich Am. Ins. Co.* v. *Tejas Concrete & Materials
Inc.,* 982 F. Supp. 2d 714, 722-23 (W.D. Tex. 2013)), *amended
report and recommendation adopted*, 2021 WL 4483853 (W.D. La.
Sept. 29, 2021) (Drell, J.)). In cases such as this, in which
there is more than one claim and defendant, the plaintiff "bears
the burden of demonstrating that venue is proper with respect to
each claim and each defendant." *Get In Shape Franchise, Inc.* v.
*TFL Fishers, LLC*, 167 F. Supp. 3d 173, 195 (D. Mass. 2016)

(Saris, C.J.) (citing *Stars for Art Prod. FZ, LLC* v. *Dandana, LLC,* 806 F. Supp. 2d 437, 447-48 (D. Mass. 2011)).

I find Cashman's efforts to parse the exact location of various alleged acts, omissions, or misrepresentations not in keeping with "holistic" view I am required to take in assessing venue.  HC&D structured its complaint in such a way that the Gauging Report, presumably completed in Louisiana based upon an apparent inspection of the Barge there, is a central issue.  While other relevant events might have occurred elsewhere, I accord significant weight to the Gauging Report and find that it was a substantial part of the series of events giving rise to HC&D's claim.  The substance of the Gauging Report is important enough to its theory of the litigation as a whole that HC&D included Precision, the creator of the report, as a co-defendant in its suit even though HC&D and Precision had no direct dealings.  While Cashman might have adopted the Gauging Report in Massachusetts during the negotiation of the Purchase Agreement, I find the core events at the center of HC&D's complaint occurred in the Western District of Louisiana.[9]  Thus

---

[9] I note that Patterson, Louisiana, the location of Precision's post office box; Morgan City, Louisiana, the location of Electra Shipyard; and Amelia, Louisiana, the location of Cashman's dock, are within St. Mary's Parish and thus the territory of the Western District of Louisiana, Lafayette Division.  Neither Cashman nor Precision proposes an alternative venue in Louisiana.

venue is proper in the Western District of Louisiana as to Precision under § 1391(b)(2).

Finally, I observe § 1391(b)(3) acts as a catch-all, in which if a particular judicial district cannot be identified under the first two sections of § 1391, venue is deemed proper in any district in which a defendant is subject to the court's personal jurisdiction.  Although perhaps superfluous, I will note that even if I had not determined venue in the Western District of Louisiana to be proper pursuant to §§ 1391(b)(1) and (2), § 1391(b)(3) would apply and venue would separately be found appropriate in the Western District under that provision.

For these reasons, I find that the Western District of Louisiana could act as an appropriate venue to hear this case as to both defendants named by HC&D.

**B.    *The Transfer Mechanism***

Three statutes provide a federal district court the discretion to transfer a civil case to another federal district court:  28 U.S.C. § 1404(a), § 1406(a), and § 1631.  At this point, a further brief exploration of these three statutes may be useful.

The transfer provision proposed by HC&D, **28 U.S.C. § 1404(a),** states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought. . . ."  28 U.S.C. § 1404(a).

Although other circuits have explicitly broadened the

availability of § 1404(a)[10] so that it would be available in such

a case as this, where personal jurisdiction over the defendant

to be transferred is lacking, I find the First Circuit has taken

the opposite approach and instead has restricted the use of §

1404(a), requiring the transferring district court to have

personal jurisdiction over the parties to be transferred.

*Albion* v. *YMCA Camp Letts*, 171 F.3d 1, 2 (1st Cir. 1999)

("Section 1404(a) is a codification of the doctrine of forum non

conveniens.  As the Supreme Court has stated, 'the doctrine of

forum non conveniens can never apply if there is absence of

jurisdiction or mistake of venue.'  Given that [the plaintiff]

conceded the lack of personal jurisdiction over the defendant at

oral argument, transfer under § 1404(a) is clearly

inappropriate.") (quoting *Gulf Oil Corp.* v. *Gilbert.*, 330 U.S.

501, 504 (1947)); *see also Ayasli* v. *Korkmaz*, 559 F. Supp. 3d 1,

4 (D.N.H. 2020) ("[T]ransfer under § 1404(a) is clearly

---

[10] *See, e.g., United States* v. *Berkowitz*, 328 F.2d 358, 361 (3d
Cir. 1964)("The district court believed that it was without
power to transfer this case under § 1404(a) in the absence of
jurisdiction over the person of the defendant).  But *Goldlawr,
Inc.* v. *Heiman* [369 U.S. 463 (1962)] conclusively settled that
question.  It is true that *Goldlawr* involved an interpretation
of § 1406(a).  Nevertheless, we think that its rationale applies
equally to § 1404(a), for these are companion sections, remedial
in nature, enacted at the same time, and both dealing with the
expeditious transfer of an action, from one district or division
to another.").

inappropriate when the court lacks jurisdiction over the party to be transferred." (citation and quotations omitted)).

I read First Circuit caselaw as instructing use of § 1404(a) only when the transferor court has personal jurisdiction over every party in the dispute. *See TargetSmart Holdings, LLC* v. *GHP Advisor, LLC*, 366 F. Supp. 3d 195, 218-19 (D. Mass. 2019); *Ferris* v. *Darrell*, No. CV 18-10204-DPW, 2020 WL 4431763 at *10 n.20 (D. Mass. July 31, 2020) ("I interpret 28 U.S.C. § 1404(a) to allow transfer of a case only if the District of Massachusetts has jurisdiction over the case in the first instance. Because I conclude this court lacks personal jurisdiction over [a co-defendant], transfer under § 1404(a) is not available") (internal citation omitted)). I acknowledge, however, this might be a minority understanding of § 1404(a) that other First Circuit colleagues of mine do not share. *See Thomas* v. *Spaulding*, No. 19-11982-NMG, 2021 WL 1186042, at *2 (D. Mass. Mar. 30, 2021) (Gorton, J.) (transferring a case pursuant to § 1404(a) after determining the District of Massachusetts lacks personal jurisdiction over several of the defendants).

The second potential transfer mechanism, **28 U.S.C. § 1406(a),** reads: "[t]he district court of a district in which is filed a case laying *venue in the wrong division or district* shall dismiss, or if it be in the interest of justice, transfer

such case to any district or division in which it could have
been brought."  28 U.S.C. § 1406(a) (emphasis added).  No party
in the present case alleges that venue in the District of
Massachusetts is improper.  Certain interpretations of § 1406,
nevertheless, provide helpful guidance on the application of
this statute and other transfer provisions.

First, the Supreme Court has explicitly found that
§ 1406(a) may be used even when the district court in which a
case is originally filed lacks personal jurisdiction over the
defendant.  *Goldlawr*, *Inc.*, 369 U.S. at 465-66 ("Nothing in [the
§ 1406(a)] language indicates that the operation of the section
was intended to be limited to actions in which the transferring
court has personal jurisdiction over the defendants . . .  The
language of § 1406(a) is amply broad enough to authorize the
transfer of cases, however wrong the plaintiff may have been in
filing his case as to venue, whether the court in which it was
filed had personal jurisdiction over the defendant or not.").

Second, certain appellate courts have interpreted § 1406(a)
broadly in order to transfer cases that present *any* additional
obstacle to adjudication, including, but not limited to, a lack
of personal jurisdiction.  *Mayo Clinic* v. *Kaiser*, 383 F.2d 653,
655 (8th Cir. 1967); *Dubin* v. *United States*, 380 F.2d 813, 815
(5th Cir. 1967) ("We conclude that a district is 'wrong' within

the meaning of § 1406 whenever there exists an 'obstacle (to). . . an expeditious and orderly adjudication' on the merits.")

A third mechanism by which jurisdictional deficiencies can be cured is provided by **28 U.S.C. § 1631** which states that "whenever a civil action is filed . . . and [the] court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed . . . ." 28 U.S.C. § 1631.

Both the First Circuit and Fifth Circuit have found that § 1631 is a transfer mechanism appropriate when a District Court lacks personal jurisdiction over one of the parties.  *Fed. Home Loan Bank of Bos*. v. *Moody's Corp.,* 821 F.3d 102, 114 (1st Cir. 2016) ("we conclude that 'want of jurisdiction' encompasses both personal and subject matter jurisdiction"), *abrogated on other grounds by Lightfoot* v. *Cendant Mortg. Corp.*, --- U.S. ---, 137 S. Ct. 553 (2017)); *Franco* v. *Mabe Trucking Co.*, Inc., 3 F.4th 788, 793 (5th Cir. 2021) ("the plain text of § 1631 indicates that it may apply when a district court finds that it lacks subject-matter jurisdiction, personal jurisdiction, or both").

At a December 15, 2022 motions hearing, I raised the question of whether § 1404(a) was available as the transfer mechanism and asked the parties to submit supplemental briefing

on the application of § 1631 to our current posture.  [*See* Dkt. No. 38]  The parties thereupon filed supplemental briefing. [*See* Dkt. Nos. 42, 43]

In its supplemental briefing, HC&D belatedly argued that in addition to transfer pursuant to § 1404(a), "§ 1631 provides a proper vehicle and straightforward path for this transfer if [the Court] determines it does not have personal jurisdiction over Precision."  [Dkt. No. 43 at 6]

## C.   *Private and Public Transfer Interests*

Typically, when determining whether transfer is in the "interest of justice" under § 1404(a) I would evaluate both the private factors[11] and the public interest considerations articulated by the Supreme Court in *Piper Aircraft Co.* v. *Reyno*, 454 U.S. 235, 241 n.6 (1981), to "decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'"  *Atl.Marine*, 571 U.S. at 62-63 & n.6 (quoting 28 U.S.C. § 1404(a)).

A balancing of public and private interests is inflected here, however, by the presence of a presumptively valid[12] forum-

---

[11] Private party interests include, the "[1] relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; [3] possibility of view of premises, if view would be appropriate to the action; and [4] all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Atlantic Marine*, 571 U.S. at 62 n.6 (quoting *Piper Aircraft,* 454 U.S. at 241 n.6).
[12] In both the First Circuit and the Fifth Circuit, forum-

selection clause directly between Cashman and HC&D, which is
seen to "'represent[] th[ose] parties' agreement as to the most
proper forum.'"[13]  *Atl. Marine*, 571 U.S. at 63 (quoting *Stewart
Org., Inc.* v. *Ricoh Corp.* 487 U.S. 22, 31 (1988)).  Particularly
when there is a valid forum-selection clause between the parties
to the dispute, I am directed no longer to consider private

---

selection clauses are prima facie valid and should be enforced
barring the following: (1) the clause was the product of fraud
or overreaching; (2) enforcement would be unreasonable or
unjust; (3) proceedings in the selected forum will so difficult
and inconvenient that the party seeking to escape enforcement of
the forum-selection clause will be deprived of his day in court;
and (4) enforcement would contravene a strong public policy of
the forum in which suit is brought. *Rafael Rodriguez Barril,
Inc. v. Conbraco Indus., Inc.*, 619 F.3d 90, 93 (1st Cir. 2010)
(citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 18
(1972)); *see also Haynsworth* v. *The Corporation,* 121 F.3d 956,
963 (5th Cir. 1997). The Fifth Circuit adds to the
"unreasonableness" inquiry whether the "fundamental unfairness
of the chosen law will deprive the plaintiff of a remedy,"
*Haynsworth,* 121 F.3d at 963, a factor which I find to fit within
the second prong articulated by the First Circuit. I note that
HC&D appears to be arguing primarily that the forum-selection
clause should be set aside in the interest of justice, not that
the clause was the product of fraud or overreaching.  [Dkt. No.
26 at 7-9; Dkt. No. 33 at 9-10]
[13] The Supreme Court has listed three ways in which the
traditional transfer analysis changes with the presence of a
valid forum-selection clause. "First, the plaintiff's choice of
forum merits no weight. Rather, as the party defying the forum-
selection clause, the plaintiff bears the burden of establishing
that transfer to the forum for which the parties bargained is
unwarranted." *Atl. Marine*, 571 U.S. at 63. "Second, a court
evaluating a defendant's § 1404(a) motion to transfer based on a
forum-selection clause should not consider arguments about the
parties' private interests." *Id.* at 64. "Third, when a party
bound by a forum-selection clause flouts its contractual
obligation and files suit in a different forum, a § 1404(a)
transfer of venue will not carry with it the original venue's
choice-of-law rules . . . ." *Id.*

party interest but rather to base my decision on the public
interest factors.  These public interest factors include, "[1]
the administrative difficulties flowing from court congestion;
[2] the local interest in having localized controversies decided
at home; [and] [3] the interest in having the trial of a
diversity case in a forum that is at home with the law."  *Atl.
Marine*, 571 U.S. at 62 n.6 (quoting *Piper Aircraft,* 454 U.S. at
241 n.6).[14]

The Supreme Court's *Atlantic Marine* holding provides
important guidance on the weight that should be placed on
contractually agreed-upon forum-selection clauses.  "When the
parties have agreed to a valid forum-selection clause," that
predetermined forum should be honored and "only under
extraordinary circumstances unrelated to the convenience of the
parties" should the litigation occur elsewhere.  *Atl. Marine*,
571 U.S. at 62.  The Court reasoned that the "'enforcement of
valid forum-selection clauses, bargained for by the parties,
protects their legitimate expectations and furthers vital
interests of the justice system.'"  *Id.* (quoting *Stewart,* 487
U.S. at 33 (Kennedy, J., concurring)).  It is for these reasons

---

[14] The other *Piper Aircraft* public interest factors, not listed
in *Atlantic Marine*, are: "[4] the avoidance of unnecessary
problems in conflict of laws, or in the application of foreign
law; and [5] the unfairness of burdening citizens in an
unrelated forum with jury duty." *Piper Aircraft,* 454 U.S. at 241
n.6.

that the party seeking to disregard the forum-selection clause bears the burden of establishing why it should not be enforced. *Id.* at 63.

*Atlantic Marine* instructs me to put significant weight on the forum-selection clause, recognizing the existence of a forum-selection clause as an almost dispositive consideration in determining the appropriate venue.  571 U.S. at 64 ("Because [the public-interest factors] will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."); *see also Astro-Med,* 591 F.3d at 12-13 (the forum-selection clause is a "significant factor that figures centrally" when evaluating whether to transfer a case to another district).

Some courts, however, have cautioned that "the presence of a forum-selection clause should not receive dispositive weight," although the relevance of such caution is up for debate in the wake of *Atlantic Marine*.  *Campanini* v. *Studsvik, Inc.*, Civil Action No. 08-5910, 2009 WL 926975, at *6 (E.D. Pa. April 6, 2009) (Schiller, J.) (citation and quotations omitted); *see also Budget Blinds, Inc.* v. *Mahmood*, No. CV10-0552-PSG, 2010 WL 3001629, at *5 (C.D. Cal. July 29, 2010) (Gutierrez, J.) ("The presence of a forum-selection clause, however, is not dispositive on a motion to transfer, and the other § 1404(a)

factors must be considered alongside the forum selection
clause.").

### D.   *Transfer and the Forum-Selection Clause*

Having reviewed the issues of personal jurisdiction and
venue, and explored the available transfer mechanisms, I now
turn to the central issue with respect to the motions I
confronted — whether to transfer all or a portion of this case
to the Western District of Louisiana, notwithstanding the forum-
selection clause in the Purchase Agreement between HC&D and
Cashman, and if so, under which transfer statute.[15]

Since *Atlantic Marine*, various courts have considered its
impact in matters where some, but not all, parties have entered
into an agreement governed by a forum selection clause.  *See,
e.g., Amyndas Pharms., S.A.* v. *Zealand Pharma A/S*, 48 F.4th 18,
35 (1st Cir. 2022) (Selya, J.); *In re Ryze Claims Sols., LLC*,
968 F.3d 701, 711-12 (7th Cir. 2020) (Ripple, J.); *In re Rolls*

---

[15] The forum-selection clause plainly applies to HC&D's claims
against Cashman.  HC&D — in a short, undeveloped footnote in its
memorandum supporting its motion to transfer — nevertheless
elliptically suggests that the forum-selection clause does not
apply because "its claims against Cashman sound in tort and the
Barge Contract is not implicated in determining questions of
Cashman's fraud vis a vis the sale of the Barge."  I find HC&D
did not develop this argument sufficiently for me to consider it
on the merits under these circumstances.  *See Rivera-Gomez* v. *de
Castro*, 843 F.2d 631, 635 (1st Cir. 1988) ("Judges are not
expected to be mindreaders.  Consequently, a litigant has an
obligation to spell out its arguments squarely and distinctly,
or else forever hold its peace." (citation and quotations
omitted)).

*Royce Corp.*, 775 F.3d 671, 683 (5th Cir. 2014) (Higginbotham, J.); *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 397 (3d Cir. 2017) (Krause, J.).  These cases, although not directly analogous, provide helpful perspective with respect to the matter now before me.

In *Amyndas Pharmaceuticals*, the First Circuit held that, despite claims against certain defendants continuing in the District of Massachusetts, claims against another defendant had to be dismissed and litigated in Denmark pursuant to an agreement containing a forum selection clause between two parties.  *See* 48 F.4th at 33–36.  The Court of Appeals rejected plaintiff's argument "that the public interest in judicial economy warrants keeping all parties in the district court action because it would be inefficient and, thus, unreasonable to require [plaintiff] to litigate in Denmark while allowing its litigation against [other defendants] . . . to proceed in the district court."  *Id.* at 35.  Citing "*Atlantic Marine's* injunction that 'forum-selection clauses should control except in unusual cases,'" *id.* (quoting *Atl. Marine*, 571 U.S. at 64), the First Circuit discerned "no principled basis" for keeping the entirety of the action in Massachusetts district court, *id.*

Other Circuits have developed frameworks for addressing the competing interests at play when only some parties in a case have entered into an agreement governed by a forum selection

clause.  *See In re: Howmedica Osteonics Corp*, 867 F.3d at 404–06; *In re Rolls Royce Corp.*, 775 F.3d at 681.

The Third Circuit's analysis in *In re: Howmedica Osteonics Corp* is instructive.  *See* 867 F.3d at 404–06.  There, the Third Circuit issued a writ of mandamus in response to a district court's decision to transfer a case in its entirety, despite a forum-selection clause applicable to certain defendants that would have kept part of the case in its District.  *See id.* at 397.  After concluding that *Atlantic Marine* provided guidance but could not answer the central question of transfer in a case involving an only partially applicable forum selection clause, the court adopted a four-step analysis. [16]  *See id.*

First, the Third Circuit directs judges to "assume[] that *Atlantic Marine* applies to parties who agreed to forum-selection clauses," *id.* at 404, such that claims covered by the forum-selection clause should be litigated in the contracted-to venue. Next, a judge must "perform[] an independent analysis of private and public interests relevant to non-contracting parties," *id.*, which, under these circumstances, requires me to consider the factors I have outlined *supra* subsection III.C as to Precision. If after Steps One and Two the judge is pointed to the same forum, the analysis may stop; however, "if the Step One and Step

---

[16] The Third Circuit's analysis builds upon that of the Fifth Circuit in *In re Rolls Royce Corp.*, 775 F.3d 671 (5th Cir. 2014).

Two analyses point different ways, then the court considers severance." *Id.* The Third Circuit directs that "[i]n some cases, severance clearly will be warranted . . . to cure personal jurisdiction." *Id.* Under those circumstances, "the court should sever and transfer claims as appropriate to remedy jurisdictional . . . defects." *Id.* In other cases, however, severance may be "clearly disallowed, such as when a party is indispensable under Federal Rule of Civil Procedure 19(b)." *Id.* Because severance is not available in that circumstance, "the case must continue with all parties present in a forum where jurisdiction and venue are proper as to the indispensable party." *Id.* Finally, severance may be "neither clearly warranted nor clearly disallowed and is therefore committed to the court's discretion." *Id.* at 405.

If, after Step Three, a specific outcome is not required, a court must exercise its considerable discretion, measuring its decision against two key sets of interests. *Id.* This entails consideration of efficiency interests in avoiding duplicative litigation "as well as any other public interests that may weigh against enforcing a forum-selection clause," *id.*, against "the non-contracting parties' private interests and any prejudice that a particular transfer decision would cause with respect to those interests," *id.* "Only if," after weighing the various interests, the court determines "that the strong public interest

31

in upholding the contracting parties' settled expectations is 'overwhelmingly' outweighed by the countervailing interests" may the court decline to enforce a valid forum-selection clause. *Id.* (citation omitted).

I read *Amyndas Pharmaceuticals* to represent the First Circuit's post-*Atlantic Marine* view that forum-selection clauses should control in most circumstances. *See Amyndas Pharms., S.A.*, 48 F.4th at 35. Such a view aligns with the Third Circuit's analysis in *In re: Howmedica Osteonics Corp* and without more specific direction from the First Circuit, I will refract the asserted facts through the Third Circuit's test to guide my analysis.[17]

---

[17] I note one area where First Circuit caselaw appears not to align fully with the Third Circuit test.  The Third Circuit directs that in the early steps of my analysis I "should suspend concerns about . . . threshold issues such as . . . personal jurisdiction," because I "ha[ve] discretion to address convenience-based venue issues first."  *In re: Howmedica Osteonics Corp*, 867 F.3d at 404 n.8.  Such an approach suggests to me that the Third Circuit would permit transfer under § 1404(a) even under circumstances where I do not have personal jurisdiction over the transferred party.  As I explained *supra* Section III.C., I do not view § 1404(a) as providing that permission.  *See, e.g., TargetSmart Holdings, LLC*, 366 F. Supp. 3d at 217 (D. Mass. 2019) ("I read 28 U.S.C. § 1404(a) to allow transfer of a case only if the District of Massachusetts has jurisdiction over the case in the first instance.").  However, the three transfer statutes available to me use similar language and appear to advance similar purposes — efficiency, convenience, and, most critically, the "interest[s] of justice."  Under these circumstances and where there is little First Circuit precedent to guide me, I find that the analysis outlined by the Third Circuit also applies to the other transfer statutes possibly available in the matter now before me, §§ 1406(a) and 1631.

1.   Forum Selection Clause in Agreement Between HC&D and
     Cashman

At the first step, I assume that claims governed by the
forum-selection clause between Cashman and HC&D should be
litigated in Massachusetts.  *See In re: Howmedica Osteonics
Corp*, 867 F.3d at 404; Dkt. No. 4-1 ¶ 14.  No such clause
applies to claims between Precision and HC&D.

2.   Private and Public Interests Relevant to Precision

I next consider Precision's private and public interests.
*See In re: Howmedica Osteonics Corp*, 867 F.3d at 408.  Briefly
stated, Precision is organized under the laws of Louisiana and
has its headquarters in Louisiana.[18]   These circumstances

---

[18] I will not explore fully — because the parties have not
invited me to do so — whether registering to do business in
Louisiana might be relevant in this case.  I do note the
relevance of registration is a deeply divisive issue as to which
the Supreme Court spoke with multiple voices at the end of its
term in June after the parties briefed this case to me.  Writing
for the Court, Justice Gorsuch held that a Pennsylvania
registration statute that gave rise to personal jurisdiction
over out-of-state corporations would not violate the Due Process
clause of the United States Constitution.  *Mallory* v. *Norfolk
Southern Railway Co.*, 143 S. Ct. 2028 (2023).  Justice Jackson
concurred on grounds joined by Justices Thomas and Sotomayor.
*Id*. at 2045.  Justice Alito, who concurred in part and concurred
in the judgment, observed in his separate opinion that "there is
a good prospect that Pennsylvania's assertion of jurisdiction
over an out-of-state company in a suit by an out-of-state
plaintiff on claims unrelated to Pennsylvania violates the
Commerce Clause," *id*. at *2053, although the issue was not
adequately raised in the case.  Justice Barrett, writing in
dissent and joined by Chief Justice Roberts, Justice Kagan and
Justice Kavanaugh, contended that as a result of the Court's
decision "[b]y relabeling their long-arm statute, states may now
manufacture 'consent' to personal jurisdiction."  *Id*. at *2055.
The diverse voices make clear that more is likely to be heard in

implicate interests — whether characterized as private or public — that weigh in favor of Louisiana as to claims against Precision.

### 3.   Severance of Precision's Claims

Because there is a dispute regarding the proper court to resolve HC&D's claims separately stated in Counts respectively against Cashman and Precision, I turn to whether severance is appropriate under the circumstances.  In doing so, I "consider threshold issues such as the presence of indispensable parties and defects in . . . personal jurisdiction."  *In re: Howmedica Osteonics Corp*, 867 F.3d at 408.

This court does not have personal jurisdiction over Precision in this case.  Such a "defect[]" cuts in favor of severing claims.  *In re: Howmedica Osteonics Corp*, 867 F.3d at 408.

I do not find Precision to be an indispensable party for litigation in this district such that the case should either be dismissed or transferred in its entirety to Louisiana, despite the forum-selection clause.  *Id.* at 408.  To qualify as "indispensable," "a party must also be a 'required' party under Rule 19(a)."  *In re: Howmedica Osteonics Corp*, 867 F.3d at 408.  A party is "required" if, *inter alia*, I "cannot 'accord complete

---

the future as the Supreme Court itself further explores what it means to consent to jurisdiction.

relief among existing parties' without" their presence.
*Delgado-Caraballo* v. *Hosp. Pavía Hato Rey, Inc.*, 889 F.3d 30, 37
(1st Cir. 2018) (quoting FED. R. CIV. P. 19(a)(1)(A)).  Complete
relief regarding the claims against Cashman can, if proven, be
provided in this district without Precision's presence as a
party.

HC&D's Amended Complaint includes eight counts, but none of
these counts are jointly alleged as to both Defendants.  Factual
overlap among counts does not mandate that the various claims be
litigated in the same district.  *Cf. Covidien LP* v. *Esch*, 264 F.
Supp. 3d 325, 328 (D. Mass. 2017) ("Although [an entity] might
be affected by the outcome of this case, it does not follow that
it is a 'required' party.").  FED. R. CIV. P. 19 "calls for courts
to make pragmatic, practical judgments that are heavily
influenced by the facts of each case."  *Bacardí Int'l Ltd.* v. *V.
Suárez & Co.*, 719 F.3d 1, 9 (1st Cir. 2013).  As a pragmatic
approach in this case, the facts point me toward severing
Precision's claims and transferring them to Louisiana.

4.   <u>Efficiency and Precision's Private Interests</u>

I finally turn to the appropriate outcome, which is "guided
by considerations of efficiency, the non-contracting parties'
[here, Precision's] private interests, and *Atlantic Marine*'s
directive that 'courts should not ... disrupt the parties'
settled expectations' embodied in forum-selection clauses except

when other factors 'overwhelmingly' weigh against enforcing the clauses." *In re: Howmedica Osteonics Corp*, 867 F.3d at 409 (alteration in original) (quoting *Atl. Marine*, 134 S. Ct. at 583).

The lack of personal jurisdiction in Massachusetts as to Precision mandates transfer or dismissal of at least the claims as to Precision. And under *Atlantic Marine*, the forum-selection clause between HC&D and Cashman essentially mandates litigation of such claims in Massachusetts, because I cannot discern any circumstances weighing "overwhelmingly . . . against enforcing the clause." *Id.* (citation and quotations omitted). To the extent the severance of HC&D's claims may "create a risk of duplicative litigation," *id.*, such a risk may be mitigated or eliminated via "procedural mechanisms . . . such as common pre-trial procedures, video depositions, stipulations, etc.," *In re Rolls Royce Corp.*, 775 F.3d at 681 (explaining that these "procedural mechanisms" may "echo those used by judges in cases managed pursuant to multidistrict litigation statutes").[19]

5.   <u>Conclusion</u>

I find that the severance and transfer of all the claims

_____

[19] In this connection, once the transferred case against Precision has been drawn to a presiding judge in the Western District of Louisiana, I will consult with that judge whether particular parallel procedural mechanisms and parallel scheduling orders seem appropriate as the two severed cases proceed in their respective jurisdictions.

HC&D makes against Precision "satisfies *Atlantic Marine*'s prescription that forum-selection clauses should be enforced . . . , accounts for private and public interests relevant to non-contracting parties, resolves the personal jurisdiction defect as to [Precision] in [Massachusetts], and promotes efficient resolution of [HC&D]'s claims without unduly prejudicing non-contracting parties' private interests."  *In re: Howmedica Osteonics Corp*, 867 F.3d at 411.

I pause briefly to address Precision's contention that dismissal, rather than transfer, is appropriate here.  I disagree.  Section 1631, the relevant transfer statute for circumstances like this where I lack personal jurisdiction, but not venue, over certain claims, "support[s] transfer over dismissal in the interests of justice and to promote judicial economy."  *Tomas* v. *Buckley*, No. 19-CV-12079-ADB, 2020 WL 2616304, at *5 (D. Mass. May 22, 2020) (Burroughs, J.).  The legislative history of § 1631 presumes transfer, rather than dismissal, "because such a presumption furthers the salutary policy favoring the resolution of cases on the merits."  *Britell* v. *United States*, 318 F.3d 70, 74 (1st Cir. 2003) (Selya, J.).  In the matter now before me, where transfer is feasible, it is preferred to dismissal to ensure HC&D's claims are fully and fairly litigated without further interruption.

#### IV.  CONCLUSION

For the foregoing reasons,

I conclude that all HC&D's claims against Precision must be severed and transferred to the Western District of Louisiana. Accordingly, I GRANT in part and DENY in part HC&D's motion [Dkt. No. 25] and transfer a portion of this matter — the claims against Precision — to the Western District of Louisiana, pursuant to 28 U.S.C. § 1631.  Having determined to transfer HC&D's claims against Precision, I decline to address the merits of Precision's motion to dismiss.  Resolution of the merits of that motion is reserved for the transferee district judge in the Western District of Louisiana.[20]

I DENY, without prejudice, Cashman's motion to dismiss for failure to state a claim [Dkt. No. 9], which concerns the portion of this case that will remain in this District.  The parties shall meet and confer with a view toward preparing and submitting on or before October 13, 2023, a proposed Scheduling Plan for steps to resolve this portion of the case.  The Scheduling Plan may include a proposal for renewal and/or recalibration of a motion to dismiss I herewith DENY, reframed

---

[20] I employed this type of reservation in a similar situation to provide the transferee judge with a "clean slate" on which to create appropriate scheduling orders.  *Ferris*, 2020 WL 4431763.

in light of this Memorandum and Order and the current state of
the underlying dispute among the parties to this case as filed.


                                        **_/s/ Douglas P. Woodlock_**
                                        DOUGLAS P. WOODLOCK
                                        United States District Judge