UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| HC&D, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 22-cv-10224-ADB |
| | * | |
| PRECISION NDT & CONSULTING LLC., | * | |
| and CASHMAN EQUIPMENT CORP., | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Plaintiff HC&D, LLC ("Plaintiff" or "HC&D") brought this action against Cashman Equipment Corp. ("Cashman" or "Defendant") alleging Fraudulent Inducement (Count I), Fraud (Count II), Negligent Misrepresentation (Count III), and violations of Massachusetts General Laws Chapter 93A (Count IV).[1] [ECF No. 4 ("Amended Complaint" or "Am. Compl.")]. Pending before this Court is Defendant's renewed motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. [ECF No. 52]. For the reasons articulated below, the motion is GRANTED in part and DENIED in part.

---

[1] As detailed in Section I.B., this action was originally brought against two defendants, but the case as to the second defendant (Precision NDT & Consulting LLC.) was subsequently transferred to the Western District of Louisiana.

I.      BACKGROUND

The following facts are taken from the Amended Complaint, the factual allegations of which are assumed to be true when considering a motion to dismiss. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014). As it may on a motion to dismiss, the Court has also considered "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)).

### A.      Factual Background

#### 1.      The Barge

On September 28, 2020, HC&D and Cashman, a sophisticated marine construction corporation knowledgeable in vessel and barge maintenance, entered into a Purchase and Sale Agreement ("P&S") agreement for the Barge KAWIKA H f/k/a JMC 254 (O.N. 1078866) (the "Barge" or "Vessel") pursuant to which HC&D agreed to purchase the Barge for $1,985,500. [Am. Compl. ¶¶ 7, 10]. During the purchase negotiations, Cashman provided HC&D with certain documentation and information regarding the Barge, including an April 2019 "Hull Diminution Survey" prepared by Precision NDT & Consulting LLC ("Precision"), a certified hull inspection company, (the "Precision Gauging Report") for the American Bureau of Shipping ("ABS"). [Id. ¶¶ 12–13]. The Precision Gauging Report, prepared and conducted by Precision at the behest of Cashman, was presented to HC&D on Cashman's letterhead. [Id. ¶ 21]. As relevant here, a gauging report is an industry standard report that tests the condition of a steel vessel, like the Barge, and it is common and accepted maritime industry practice for a potential vessel purchaser, like HC&D, to accept a prior report of a vessel's condition as an accurate

representation of the condition of the vessel. [Id. ¶¶ 16, 18]. HC&D made it clear to Cashman that it would not purchase the Barge without a satisfactory gauging report that showed the Barge was seaworthy. [Id. ¶ 17]. Based on the Precision Gauging Report, ABS recommended that the Barge "be retained as classed" and other subsequent qualitative assessments of the Barge to similarly conclude that the Barge was in "good condition." [Id. ¶ 64].

Prior to purchasing the Barge, HC&D also expressed concern to a Cashman agent about a surveyor's report that noted water in many of the compartments of the Barge. [Am. Compl. ¶ 23]. In response, the agent stated that it was just rainwater from a tank inspection. [Id. ¶ 24]. A Cashman agent,[2] at some point prior to sale, also represented to HC&D that it would "have a barge with a fresh 5-year load line and very minimal associated costs for the next 20 years with regular maintenance" and that "[a]ll recommendations were cropped and replaced as of May 2020 on a 5 year renewal." [Id. ¶ 68 (alteration in original)].

Based on and in reliance on the representations made in the Precision Gauging Report and Cashman's agents, HC&D purchased the Barge. [Am. Compl. ¶ 25]. After purchasing the Barge, HC&D had it towed from Amelia, Louisiana to Long Beach, California at considerable expense. [Id. ¶ 26]. In February 2021, upon arrival in Long Beach, the Barge underwent a mandatory inspection, [id. ¶ 27], which revealed that Cashman had made material misrepresentations about the condition of the Barge in the Precision Gauging Report and in their oral representations, [id. ¶ 28]. For example, upon visual inspection, the Barge was flooded and "holed out" on arrival, a condition that would not be possible if the Precision Gauging Report was accurate. [Id. ¶ 29]. The post arrival survey also revealed extensive steel wastage (or,

---

[2] The Amended Complaint is unclear as to whether this is the same agent or a different one. See [Am. Compl. ¶¶ 24, 68].

reduction in steel thickness)[3] throughout the Barge consistent with coating breakdown being left unaddressed for multiple years which was worse than represented in the Precision Gauging Report.  [Id. ¶¶ 20, 75–76].  A series of surveys conducted by ABS on the Barge from March 2, 2021 to June 16, 2021 revealed similar steel wastage issues, [id. ¶¶ 77–85], and an ABS preliminary report provided over two hundred recommendations required for the Barge to maintain class certification, [id. ¶ 78].  One 2021 inspection[4] also revealed inconsistencies based on the actual wasting patterns for the starboard and port longitudinal bulkheads which were not described in the Precision Gauging Report.  [Id. ¶¶ 35–38].

Although the timing is not clear from the Amended Complaint, at some point after the purchase of the Barge, HC&D learned that the Precision Gauging Report's "thickness measurements" for the Barge were contradicted by other ABS reports dating back to 2014, see [Am. Compl. ¶¶ 30–31, 33–34, 40–51, 59–62], that the Barge did not have a fresh 5-year load line, and that the recommendations were not cropped and replaced as of May 2020 on 5-year renewal, [id. ¶ 69].

### 2.   The P&S

The P&S contains several clauses relevant to this action.  First, Section 3 of the Contract provides:

> The Buyer represents it has reviewed the inspection and classification records of the Vessel. The sale is not subject to any other inspection of the Vessel or its records.

[Am. Compl., Ex. A at 1].  Section 4 provides:

---

[3] According to the Amended Complaint, "[a]llowable wastage in a vessel's steel is defined by ABS as a percentage of what the original steel thickness was when the vessel was built.  If the amount of steel thickness reduction, i.e., wastage, exceeds levels allowed by ABS, the wastage has to be addressed, often by replacing the steel entirely, before the ship can be considered seaworthy." [Am. Compl. ¶ 20].
[4] It is not clear from the Amended Complaint whether this was an ABS inspection.

> The said Vessel is being sold and purchased, in its absolute current condition, AS IS-WHERE IS, without any warranties, or representations, express or implied, as to its condition, merchantability, fitness for any particular purpose, seaworthiness, or qualification for classifications or certification. Other than the warranty of title contained in Paragraph 5 below, any warranties and/or representations (as the case may be) either express of [sic] implied are explicitly disclaimed by the Buyer and disavowed by the Seller.

[Id. at 1–2]. Finally, Section 13 provides that "the validity and interpretation" of the P&S "shall be governed in all respects by the laws of the Commonwealth of Massachusetts." [Id. at 4]. The P&S does not include an integration clause. [Am. Compl. ¶ 8]; see [Am. Compl., Ex. A].

### B.     Procedural History

Plaintiff filed the operative amended complaint in this Court on April 5, 2022, alleging counts against both Cashman and Precision. [ECF No. 4]. On May 13, 2022, Cashman moved to dismiss for failure to state a claim, which Plaintiff opposed. [ECF Nos. 9, 13]. On August 11, 2022, Precision moved to dismiss for lack of personal jurisdiction. [ECF No. 20]. On September 21, 2022, Plaintiff moved to stay Precision's motion to dismiss and to transfer the case to the Western District of Louisiana. [ECF No. 25, 27]. Precision and Cashman both opposed the motion to transfer. [ECF No. 29. 30]. After a motions hearing and several supplemental filings, [ECF Nos. 38-43], the Court ultimately severed the claims against Precision and transferred those claims to the Western District of Louisiana, but it retained jurisdiction over the claims against Cashman. [ECF Nos. 45, 46].

On November 14, 2023, Cashman renewed its motion to dismiss for failure to state a claim. [ECF No. 52]. Plaintiff opposed the motion on November 29, 2023, [ECF No. 55], and Cashman filed a reply on January 5, 2024. [ECF No. 58].

5

II.    STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze them in the light most favorable to the plaintiff, and draw all reasonable inferences from those facts in favor of the plaintiff. United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). Additionally, "a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice." MIT Fed. Credit Union v. Cordisco, 470 F. Supp. 3d 81, 84 (D. Mass. 2020) (citing Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011)). "[A] complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief[,]'" Cardigan Mt. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)), and set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Pitta v. Medeiros, 90 F.4th 11, 17 (1st Cir. 2024) (quoting Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)). Although detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

III.    DISCUSSION

    A.    **Fraudulent Inducement (Count I) and Fraud (Count II)**

Plaintiff has alleged separate counts for fraudulent inducement and fraud. [Am. Compl. at 14–17]. Both claims are premised upon Defendant's alleged misrepresentations about the

6

Barge's condition, orally through its agents and within the Precision Consulting Report. Id. "Because plaintiff[] must establish the same elements to satisfy both claims, both will be treated together." Armstrong v. Rohm & Haas Co., 349 F. Supp. 2d 71, 81 (D. Mass. 2004); see also Focused Impressions, Inc. v. Sourcing Grp., LLC, No. 19-cv-11307, 2020 WL 1235366, at *7 (D. Mass. Mar. 13, 2020) ("In Massachusetts, 'the standards for common law fraud and fraudulent inducement are the same[.]'") (quoting United States v. President & Fellows of Harvard Coll., 323 F.Supp. 2d 151, 199 (D. Mass. 2004)).

To state a claim for fraud based on an alleged misstatement, Plaintiff "must establish that: '(1) the statement was knowingly false, (2) defendants made the statement with the intent to deceive, (3) the statement was material, (4) plaintiff reasonably relied on the statement, and (5) plaintiff was injured as a result of its reliance.'" Katz v. Belveron Real Est. Partners, LLC, 28 F.4th 300, 310 (1st Cir. 2022) (quoting United States v. President & Fellows of Harvard Coll., 323 F. Supp. 2d 151, 199 (D. Mass. 2004)); see also Nash v. Trs. of Bos. Univ., 946 F.2d 960, 962–63 (1st Cir. 1991) (plaintiff must "establish a false representation material to the negotiations, upon which [it] reasonably relied in entering into the agreement."); Wollaston Indust., LLC v. Ciccone, No. 19-cv-10678, 2019 WL 6841987, at *2 (D. Mass. Dec. 16, 2019) (same); Singh v. Singh, 50 N.E.3d 219 (Table), 2016 WL 2771964, at *2 (Mass. App. Ct. May 13, 2016) ("To establish fraud in the inducement, and thereby be relieved of the effect of [the agreement, the defendant] was required to establish the elements of common deceit, ... which include misrepresentation of a material fact, made to induce action, and reasonable reliance on the false statement to the detriment of the person relying." (internal quotations and citations omitted)).

"A claim of fraud must also satisfy the particularity requirements set forth in Fed. R. Civ. P. 9(b), mandating 'specifics about the time, place, and content of the alleged false representations.'" Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 358 (1st Cir. 2013) (quoting Juárez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 279–80 (1st Cir. 2013)).  Put another way, a plaintiff must "specify the who, what, where, and when of the allegedly false or fraudulent representation." Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004).

Here, interpreting the Amended Complaint in the light most favorable to Plaintiff, Hutcheson, 647 F.3d at 383, Plaintiff has alleged that Defendant, through both its agents and the Precision Gauging Report, misrepresented various facts about the Barge's condition during negotiations for its sale, including that water observed in the hull was from a tank inspection, [Am. Compl. ¶ 24], that the Barge had a fresh 5-year load line and very minimal associated costs for the next twenty years, [id. ¶ 68], and that various thickness and wastage measurements were within industry standards, [id. ¶¶ 30–31, 33–34, 40–51, 59–62].  Plaintiff has further alleged that Defendant knew that those statements were false when made, citing, among other evidence, that Defendant knew that (1) the thickness wastage measurements in the Precision Gauging Report had been contradicted by prior ABS reports, [id. ¶¶ 30–31, 34, 40, 71], (2) the Precision Gauging Report's longitudinal thickness readings could not be accurate, see [id. ¶¶ 35, 39, 45, 50], (3) Defendant, having been in possession of the Barge for twenty years, would have known the amount of maintenance (or lack thereof) that had been performed on the Barge and would have been able to see all the flaws that were visually apparent upon inspection, [id. ¶¶ 72, 80–82], and, as an experienced player in the industry, Defendant would have noticed such issues, [id. ¶¶ 10, 39, 45, 50, 66, 80].  Plaintiff has also pled that (1) Defendant made these statements for the

8

purpose of inducing it to buy the Barge, [id. ¶¶ 22, 50, 66], (2) Plaintiff would not have bought the Barge without these statements, [id. ¶¶ 17, 25, 32, 44, 66], and (3) Plaintiff bought the Barge to its detriment, [id. ¶ 86]. In other words, Plaintiff has pled the who, what, where, and when of the Defendant's misstatements, thereby satisfying the pleading expectations for their two fraud claims. Alt. Sys. Concepts, Inc., 374 F.3d at 29. As such, the key issue is whether Plaintiff has pled that its reliance on these misstatements was reasonable.

Defendant argues that Plaintiff's reliance upon any alleged misrepresentations is per se unreasonable, relying primarily on a First Circuit case for the proposition that "[a] long-standing rule in Massachusetts declares that reliance upon supposed misrepresentations that contradict the terms of the parties' agreement is unreasonable as a matter of law." [ECF No. 54 at 3 (emphasis removed) (citing HSBC Realty Credit Corp. (USA) v. O'Neill, 745 F.3d 564, 571 (1st Cir. 2014))]. Specifically, Defendant argues that Section 4 of the P&S "specifically disclaims any representations as to the [B]arge's condition, seaworthiness or ability to be classed" and, as such, "Plaintiff's very specific complaints were very specifically waived and/or barred" by the P&S. [Id. at 2 (emphasis removed)]. Plaintiff responds that an "as is" clause, like Section 4, does not bar its fraudulent inducement claim as a matter of law, drawing support from a line of Massachusetts case law which states that a party cannot use fraudulently induced contractual contrivances as a defense to fraud. [ECF No. 55 at 13–14; see also id. at 11 ("It must also be noted that Massachusetts courts have specifically rejected 'the application of general or boilerplate disclaimers as an automatic defense to fraud or deceit.'" (quoting DiMarco v.

9

Guardian Life Ins. Co. of Am., 87 N.E.3d 113 (Table), 2017 WL 2871404, at *3 (Mass. App. Ct. July 6, 2017))].[5]

Defendant's reliance on HSBC is ultimately unavailing. As the Court there made clear, another "Massachusetts rule holds that one cannot induce a contract by fraud and then use contractual contrivances to duck liability." HSBC, 745 F.3d at 571; see also Bates v. Southgate, 31 N.E.2d 551, 558 (Mass. 1941) ("[C]ontracts or clauses attempting to protect a party against the consequences of his own fraud are against public policy and void where fraud inducing the contract is shown, whether that fraud was 'antecedent' to the contract or 'entered into the making' of it." (quoting Connelly v. Fellsway Motor Mart, 170 N.E. 467, 468 (1930))). Although "specific disclaimers that plainly contradict alleged prior oral assurances are enforceable[,]" as was the case in HSBC, Massachusetts law "rejects the application of general or boilerplate disclaimers 'as an automatic defense to allegations of fraud or deceit.'" DiMarco v. Guardian Life Ins. Co. of Am., 87 N.E.3d 113 (Table), 2017 WL 2871404, at *3 (Mass. App.

---

[5] In addition to the contractual contrivances argument, Plaintiff also makes several confusing arguments regarding the interplay of Sections 3 and 4 of the P&S. [ECF No. 55 at 5–10]. Specifically, Plaintiff asserts 1) that Section 4 of the P&S is superseded by Section 3, arguing that "[b]y stating the sale is not subject to 'any other' inspection of the Vessel or its records, the Contract clearly provides that the sale is subject to the inspection and records." [id. at 8]; 2) that, under Section 3, the Precision Gauging Report is an exception to Section 4, [id. at 7]; and, 3) that the P&S's "enforceability is 'subject' to or contingent upon the accuracy or truthfulness of the inspection and classification records provided by" Defendant, [id. at 2]. First off, Plaintiff has not brought a claim for breach of contract. Further, none of these arguments find support in the plain language of the P&S, which provides only that Plaintiff reviewed inspections and classification reports for the Barge and was not conditioning the sale on any other inspections. Moreover, reading Section 3 to exempt the inspection and classification reports Defendant provided or somehow condition the sale of the Barge on those reports would render Section 4 meaningless, which, as discussed supra and infra, purports to disclaim any representations Defendant made prior to the time of sale. It defies common sense that the parties would condition a sale on statements while also specifically disclaiming those statements Farmers Ins. Exch. V. RNK, Inc., 632 F.3d 777, 785 (1st Cir. 2011) ("In interpreting contractual language, we consider the contract as a whole. Its meaning cannot be delineated by isolating words [here, "any other"] and interpreting them as though they stood alone.").

10

Ct. July 6, 2017) (quoting Sheehy v. Lipton Indus., Inc., 24 Mass. App. Ct. 188, 193 (1987)) (citing HSBC as an instance of the former); Greenleaf Arms Realty Tr. I, LLC v. New Bos. Fund, Inc., 962 N.E.2d 221, 228 (Mass App. Ct. 2012) ("A party to a contract with another cannot claim shelter by a contractual device, such as an exculpatory or merger provision, against claims of deceit."). These "general or boilerplate disclaimers" include, among other things, as-is clauses. See Bates, 31 N.E.2d at 557 (stating "the issue of fraud has been held to be open" in cases involving as-is clauses); Sheehy v. Lipton Indus., Inc., 507 N.E.2d 781, 784 (Mass. App. Ct. 1987) ("Massachusetts case law rejects the assertion of 'as is' and like clauses as an automatic defense to allegations of fraud or deceit."); see also Damon v. Sun Co., 87 F.3d 1467, 1479 (1st Cir. 1996) ("Massachusetts case law unequivocally rejects assertion of an 'as is' clause as an automatic defense against allegations of fraud.") (quoting V.S.H. Realty, Inc. v. Texaco, Inc., 757 F.2d 411, 418 (1st Cir. 1985)).

Section 4 of the P&S does not shield Defendant from liability. The as-is clause is, at most, a general disclaimer of any representations about the Barge, including its "condition, merchantability, fitness for any particular purpose, seaworthiness, or qualification for classification or certification." [Am. Compl., Ex. A at 1–2 (emphasis removed)]. These generalized terms in no way contradict the many specific representations made about the Barge by Defendant. See e.g., [Am. Compl. ¶ 24 (water in compartments was rainwater from tank inspection); ¶ 31 (thickness measurements contradicting ABS surveys); ¶ 37 (identical wasting patterns between old and new longitudinal bulkhead longitudinal at frame) ¶ 68 (barge had a fresh 5-year load line)]. Therefore, as a matter of law, an "as is" clause, such as the one at issue here, does not necessarily preclude Plaintiff's reliance on representations made by Defendant. See e.g., Sheehy, 507 N.E.2d at 784 (provisions in purchase and sale agreement including "that

11

the plaintiff accepted the conveyance 'as is,' that he 'recognize[d] that [s]eller makes no warranties whatsoever,' and that he 'has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth in this agreement or previously made in writing'" were insufficient to establish a defense to fraud as a matter of law (alterations in original)); Greenleaf, 962 N.E.2d at 226 (merger clause that stated buyers "acknowledge and agree that the [defendants] have made no promises, representations, or guarantees with respect to the performance, value or any matters" did not bar fraudulent inducement claim, even where buyer had also "acknowledge[d] and agree[d] that they w[ould] bear all legal, financial and tax costs and risks," and that "in connection with the foregoing transfer, they [] relied on the advice of their own legal and tax experts and not upon any representations made by the [defendants] or their agents, representatives or attorneys." ); see also Hill v. Samuel Cabot, Inc., No. 910514E, 1994 WL 878954, at *3 (Mass. Super. Oct. 27, 1994) ("as is" provision that stated buyer acquired property "with all due diligence," "undert[ook] to remove or neutralize any existing hazardous wastes," and "ha[d] not been influenced to enter into this transaction nor [] relied upon any warranties or representations not set forth or incorporated in this agreement[,]" and that seller made "no representation or warranty as to the condition" did not bar fraudulent inducement claim).

      Here, Plaintiff has pled facts sufficient to support that it was reasonable for it to rely on Defendant's representations relative to the purchase of the Barge.  These include, among others, that Precision "prides itself in providing the highest quality of work" and is an ABS certified Hull Inspection company, [Am. Compl. ¶¶ 13, 14], that a gauging report is an industry standard, [id. ¶ 16], that it is common and accepted marine industry practice for potential vessel purchasers to accept prior reports of a vessel's condition as accurate representations of the condition, [id.

12

¶ 18], and that Defendant is a sophisticated marine construction corporation, knowledgeable in vessel and barge maintenance, [id. ¶ 10]. In light of these allegations, Defendant's motion to dismiss Counts I and II is DENIED.

### B. Negligent Misrepresentation (Count III)

While Section 4 does not shield Defendant from liability for the reasons articulated supra, Massachusetts courts have declined to extend that rationale to claims for negligent misrepresentation and have instead held that exculpatory clauses, such as "as is" clauses, are enforceable against such claims, reasoning that "it is intentional misconduct that justifies judicial intrusion upon contractual relationships in order to prevent the wrongdoer from securing contractual benefits for which he had not bargained." Sound Techniques, Inc. v. Hoffman, 737 N.E.2d 920, 926 (Mass. App. Ct. 2000);[6] Bookstein v. Kohn, No. 0502800, 2007 WL 738475, at *3 (Mass. Super. Feb. 9, 2007) ("as is" clause barred claim for negligent misrepresentation); Russell v. Sullivan, No. 20062295D, 2008 WL 5505493, at *4–5 (Mass. Super. Dec. 9, 2008) (integration clause barred claim for negligent misrepresentation); see also Rockland Tr. Co. v. Computer Assocs. Int'l, Inc., No. CIV A 95-11683-DPW, 2007 WL 2746804, at *12 (D. Mass. Aug. 31, 2007) ("This policy exception is limited in scope and only extends to intentional misrepresentations, not negligent ones."). As such, Defendants' motion to dismiss Count III is GRANTED.

---

[6] The Court notes that the Massachusetts Appeals Court limited its holding in Sound Techniques to the circumstances of that claim for negligent misrepresentation, stating that "it [left] for another day those situations involving, among others, consumers, a gross disparity in the bargaining position of the parties, or unconscionable contract clauses." 737 N.E.2d at 927 n.1. Such circumstances have not been alleged here, and the parties did not brief negligent misrepresentation. See generally [ECF Nos. 54–55]. As such, the Court declines to depart from the guidance in Sound Techniques, which bars Plaintiff's claim for negligent misrepresentation.

### C.     Massachusetts General Laws Chapter 93A (Count IV)

Plaintiff alleges in Count IV that Defendant violated Mass. Gen. Laws ch. 93A through its "willful and knowing disbursement of false information to induce [Plaintiff] to purchase the Barge[.]" [Am. Compl. ¶ 126]; see also [id. ¶¶ 127–135]. Defendant argues that, because "[t]he center[s] of gravity of the circumstances in this case are Louisiana, California, or Hawai'i, not the Commonwealth[,]" Plaintiff's 93A claims should be dismissed. [ECF No. 54 at 12].

Under 93A "the unfair or deceptive conduct must 'occur primarily and substantially within [Massachusetts]' to be actionable." Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 57, 52 (1st Cir. 1998) (quoting Mass. Gen. Laws ch. 93A, § 11). Conduct occurs "primarily and substantially" within Massachusetts when "the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." Sonoran Scanners, Inc. v. PerkinElmer, Inc., 585 F.3d 535, 546 (1st Cir. 2009) (first quoting Mass. Gen. Laws ch. 93A, § 11 (emphasis removed), then quoting Kuwaiti Danish Comput. Co. v. Digital Equip. Corp., 781 N.E.2d 787, 799 (Mass. 2003)). "The center of gravity inquiry examines the actionable conduct as opposed to conduct that is neither unfair nor deceptive." Pine Polly, Inc. v. Integrated Packaging Films IPF, Inc., No. 13-cv-11302, 2014 WL 1203106, at *8 (D. Mass. Mar. 19, 2014). Determining whether the conduct at issue occurred primarily and substantially within Massachusetts is "fact-intensive," Evergreen Partnering Grp., Inc. v. Pactiv Corp., No. 11-cv-10807, 2014 WL 304070, at *5 (D. Mass. Jan. 28, 2014), but is nevertheless "a question of law," In re Pharm. Indus. Average Wholesale Price Litig., 582 F.3d 156, 194 (1st Cir. 2009).

The center of gravity analysis is not based on a formula "identified by any particular factor or factors" because a significant factor that exists in one case may not exist in another. Kuwaiti, 781 N.E.2d at 798–99. That said, courts may consider "where the defendant committed

14

the deceptive acts and practices," "where the plaintiff received and acted upon the deceptive or unfair statements," and "the situs of the plaintiff's losses due to the unfair or deceptive acts or practices." Reicher v. Berkshire Life Ins. Co. of Am., No. 02-cv-10868, 2002 WL 31426758, at *2 (D. Mass. Oct. 29, 2002) (quoting Arthur D. Little, 928 F. Supp. at 1208), aff'd, 360 F.3d 1 (1st Cir. 2004).  "[A]ttempts, however, to single out particular factors that might control the functional inquiry and then to place these factors in some order of importance, are necessarily not fully satisfactory." Kuwaiti, 781 N.E.2d at 799 (quoting Sonesta Int'l Hotels Corp. v. Cent. Fla. Invs., Inc., 712 N.E.2d 607, 611 (Mass. App. Ct. 1999)).  Accordingly, courts differ as to which factor should carry the most weight in the analysis.  Compare, e.g., Reicher, 2002 WL 31426758, at *2 (noting that where the recipient of a misrepresentation received and relied on the information is "of particular import"), with Spring Inv'r Servs., Inc. v. Carrington Capital Mgmt., LLC, No. 10-cv-10166, 2013 WL 1703890, at *12 (D. Mass. Apr. 18, 2013) (explaining that the inquiry focuses on "conduct said to give rise to the violation; other conduct ... may not be considered on the question." (citing Kuwaiti, 781 N.E.2d at 787)).  "In all events, however, the focus of the inquiry should be on 'the purpose and scope' of Chapter 93A." In re Pharm. Indus. Average Wholesale Price Litig., 582 F.3d at 194 (quoting Kuwaiti, 781 N.E.2d at 799).

 Here, the only allegations in the Amended Complaint that tie this case to Massachusetts are that Defendant is headquartered and incorporated in the state, [Am. Compl. ¶ 2] and that the P&S was to be governed by the laws of Massachusetts, [id. ¶ 9].  Plaintiff has not pled where the misstatements were made, including where the Precision Gauging Report, which contains the vast majority of the alleged misstatements, was drafted or where Defendant's agents were located when they made the relevant oral misrepresentations.  See [id. ¶¶ 24, 68].  Further, Plaintiff acknowledges it was "deceived and acted upon [Defendant's] deception from

[Plaintiff's] headquarters in Hawai'i," [ECF No. 55 at 18], "purchased the Barge from [Defendant]… while the Barge was in Louisiana[,]" [id. at 19], and, as such, "arguably, [] suffered its loss in Louisiana," [id.]. Thus, even drawing all inferences in Plaintiff's favor and assuming that Defendant "made fraudulent statements and provided the fraudulent Precision Gauging Report . . . from Massachusetts," [ECF No. 55 at 17], Plaintiff's allegations are not enough for the Court to find that "the center of gravity of the circumstances that give rise to the claim is primarily and substantially within [Massachusetts]." Sonoran Scanners, 585 F.3d at 546 (quoting Kuwaiti, 781 N.E.2d at 799). As such, Defendant's motion to dismiss Count IV is GRANTED.

## IV.     CONCLUSION

Accordingly, for the reasons articulated herein, Defendant's motion as to Counts I and II is DENIED. Defendant's motion as to Counts III and IV is GRANTED without prejudice.

**SO ORDERED.**

October 30, 2024                                                              /s/ Allison D. Burroughs
                                                                              ALLISON D. BURROUGHS
                                                                              U.S. DISTRICT JUDGE