UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| HC&D, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 22-cv-10224-ADB |
| | * | |
| CASHMAN EQUIPMENT CORP., | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Before the Court are Plaintiff's motions to exclude or limit the expert testimony of

Defendant's experts, William Bartlett, [ECF No. 118], and George Wittich, [ECF No. 119].

Both of Plaintiff's motions are opposed by Defendant.  [ECF No. 134 (Bartlett)]; [ECF No. 133

(Wittich)].  For the following reasons, the motion concerning Bartlett, [ECF No. 118], is

**DENIED**.  The motion concerning Wittich, [ECF No. 119], is **GRANTED IN PART** and

**DENIED IN PART**.

I.      **LEGAL STANDARD**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if the proponent
> demonstrates to the court that it is more likely than not that:
>> (a) the expert's scientific, technical, or other specialized knowledge will
>> help the trier of fact to understand the evidence or to determine a fact in
>> issue;
>> (b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and
(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Daubert requires the Court to "act as gatekeeper to 'insur[e] that the fact-finding process does not become distorted by "expertise that is fausse and science that is junky."'" Neural Magic, Inc. v. Meta Platforms, Inc., 659 F. Supp. 3d 138, 152 (D. Mass. 2023) (alterations in original) (quoting Fed. Ins. Co. v. Pentair Residential Filtration, LLC, No. 12-cv-10853, 2013 WL 6145531, at *3 (D. Mass. Nov. 21, 2013)).  First, the Court "determine[s] whether the witness is sufficiently qualified by 'knowledge, skill, experience, training, or education' to give his proffered opinion." Id. (quoting Fed. Ins. Co., 2013 WL 6145531, at *3). Then, "[i]f the witness is deemed qualified, the judge must next determine whether the specific testimony offered in the case 'both rests on a reliable foundation and is relevant to the task at hand.'" Id. (quoting In re Nexium (Esomeprazole) Antitrust Litig., 842 F.3d 34, 52 (1st Cir. 2016)).  This determination requires "an inquiry into the methodology and the basis for an expert's opinion," id. (quoting Samaan v. St. Joseph Hosp., 670 F.3d 21, 31 (1st Cir. 2012)), and there must be "an adequate fit between the expert's methods and his conclusions." Id. (quoting Samaan, 670 F.3d at 32).  "[A] court may exclude an expert's opinion when it is based upon conjecture or speculation deriving from an insufficient evidentiary source." E.E.O.C. v. Tex. Roadhouse, Inc., 215 F. Supp. 3d 140, 158 (D. Mass. 2016).

## II.       BARTLETT

Plaintiff seeks to exclude Bartlett's anticipated testimony (1) on steel corrosion rates, on the basis that Bartlett took a directly contradictory position in his expert report in a related matter, [ECF No. 118 at 3]; (2) on the meaning of a chart included in Bartlett's report, on the basis that Bartlett could not explain the chart at his deposition, [id. at 6]; and (3) on the

2

methodology employed in the 2021 steel gauging report conducted by International Inspection, on the basis that Bartlett's proposed testimony would amount to inadmissible speculation, [id. at 8].

### A.    Steel Corrosion

Plaintiff seeks exclusion of Bartlett's anticipated testimony concerning the reliability of mathematical predictions of the corrosion rate of steel because in a report filed in related litigation, Bartlett treated the rate of steel corrosion in certain waters as consistent and predictable, whereas his report in this matter casts doubt on whether steel corrosion can be forecasted reliably.  [ECF No. 118 at 4].  Though Plaintiff identifies cases in which experts were barred from adopting positions at odds with their own published, peer-reviewed research or industry-standard methods, see [id. at 5–6], neither of those circumstances exists here.  While Bartlett's arguable "disavowal," [id. at 6], of his prior approach is no doubt relevant to whether his present testimony is "based on the methods and procedures of science," In re TMI Litigation, 193 F.3d 613, 704 (3d Cir. 1999), it is not dispositive for purposes of Rule 702.  Cf. United States v. Vesey, 338 F.3d 913, 917 (8th Cir. 2003) (concluding that "possible contradiction" in testimony "may have given the trier of fact cause to doubt [the expert's] credibility or to accord less weight to his testimony, but it does not render that testimony inadmissible").  Notwithstanding the arguable contradiction with his prior position, the Court is satisfied that Bartlett's methodology is sufficient for purposes of Rule 702.

### B.    Chart

Plaintiff next seeks to exclude Bartlett's anticipated testimony on a graph about which he was questioned at his deposition.  [ECF No. 118 at 6].  Plaintiff argues that because Bartlett, after being asked to explain the chart, stated that "I don't know what is going on at the top," his

3

use of the graph will not aid the trier of fact in understanding any relevant evidence or issue.  [Id. at 7].[1]  Bartlett's inability to explain that chart at his deposition goes to the weight, rather than the admissibility, of the evidence.

### C.    International Inspection Gauging Methodology

Plaintiff challenges Bartlett's anticipated testimony that International Inspection "appears to have been looking for the worst spots on the barge frames" on the basis that it lacks adequate factual or methodological basis.  [ECF No. 118 at 8–9].  Defendant's opposition suggests that Bartlett's testimony will be limited to "'what' International Inspections did," as opposed to "'why' International did what it did."  [ECF No. 134 at 4].  Provided that his testimony is so limited, and that an adequate foundation is laid, the Court will not exclude the testimony.  If the testimony crosses into speculation as to the underlying motivations of the gauging report, Plaintiff may renew its objection.

## III.    WITTICH

Plaintiff seeks to exclude Wittich's anticipated testimony on the following topics, for the following reasons: (1) that HC&D could have personally inspected the barge despite COVID restrictions, on the basis that the DHS report on which Wittich relies does not establish that conclusion, [ECF No. 119 at 3–5]; (2) that HC&D was experienced with barge purchasing, on the basis that it lacks sufficient factual or methodological support, [id. at 5–6]; (3) that "prudent" buyers of barges lease the barge prior to purchasing it, on the basis that the standard at issue in

---

[1] Bartlett subsequently altered that statement by submitting an errata sheet, which replaced "I don't know what is going on at the top" with "the test varied humidity with time so the upper x-axis shows the point in time where the humidity was the value shown on the lower axis."  [ECF No. 124-1 at 1]; see [ECF No. 134 at 3 (arguing that this was a proper supplement to the deposition testimony)].  Plaintiff's motion to strike that portion of the errata, [ECF No. 124], will be denied in a separate order.

this case is reasonableness rather than prudence, [id. at 6]; (4) that Cashman would not have offered HC&D a lease-to-purchase option if it knew that the barge was in poor condition, on the basis that it amounts to speculation, [id. at 7]; (5) that an experienced ABS inspector visually surveyed and inspected the barge at a particular point in time, on the basis that it lacks an adequate basis in fact, [id. at 8–10]; (6) that International Inspection's steel gauging focused on "the worst possible readings of steel wastage in support of HC&D's pending lawsuit," on the basis that it is inadmissible speculation, [id. at 10–12]; (7) that barges can be damaged as a result of being towed by tugs, on the basis that it insinuates an improperly speculative cause of damage to the barge at issue in this case, [id. at 12–13]; and (8) that HC&D could have mitigated its damages by undertaking other projects on the West Cost using the barge, [id. at 13–14].

A.    COVID

Plaintiff seeks to exclude Wittich's anticipated testimony that the COVID pandemic would not have prevented HC&D from personally inspecting the barge. [ECF No. 119 at 3–5]. Wittich specifically seeks to testify that the Cybersecurity and Infrastructure Security Agency of the United States Department of Homeland Security "designated marine transportation as an essential critical infrastructure industry," a status that "allowed the marine transportation sector to continue operations and travel, while many other businesses were forced to shut down." [ECF No. 119-1 at 5]. Wittich may testify about the existence of exemptions for the marine transportation industry and the applicability of those exemptions to travel for purposes of a barge purchase such as the one at issue in this case. Plaintiff can challenge his conclusions on cross examination.

### B.    HC&D's Experience with Barge Purchasing

Plaintiff seeks to exclude Wittich's anticipated testimony that Plaintiff was an experienced barge purchaser, arguing that it is unsupported and unreliable.  [ECF No. 119 at 5–6].  That conclusion relies solely on statements by employees of a third party, Sause Brothers.  [ECF No. 119-1 at 6].  Those statements do not provide a sufficient basis for Wittich to conclude that Plaintiff had experience with barge purchasing.  This testimony will be excluded.

### C.    The Behavior of "Prudent" Buyers

Plaintiff seeks to exclude Wittich's anticipated testimony concerning the behavior of "prudent" barge purchasers, both because the legal standard at issue in this case is whether Plaintiff's reliance was reasonable, not whether Plaintiff's conduct was that of a prudent buyer, and because the testimony amounts to a speculative judgment about reasonableness that should be made by the jury.  [ECF No. 119 at 6].  Typical conduct within the industry, and the behavior of cautious, sophisticated, or experienced actors, is a matter properly within Wittich's expertise and is probative of the question of reasonableness.  This testimony will be allowed.  Cf. Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue.").

### D.    Whether Cashman Would Have Offered a Lease-to-Purchase Option

Plaintiff seeks to exclude Wittich's anticipated testimony that if Defendant had been aware that the barge was in poor condition, it would not have offered Plaintiff a lease-to-purchase option because it would amount to improper speculation.  [ECF No. 119 at 7].  Wittich's general experience with maritime transactions and general inferences about the consequences of offering a lease-to-purchase option on a deficient vessel, see [ECF No. 119-1 at 9], do not furnish an adequate basis for him to opine on how Defendant would have conducted itself in a hypothetical situation.  The testimony will be excluded.

### E. Whether and When the Barge Was Visually Inspected

Plaintiff challenges Wittich's anticipated testimony that the barge was surveyed and inspected by an experienced ABS inspector, on the basis that at deposition, he initially identified Frank Qiu as the particular inspector who inspected the barge, a conclusion that was contradicted by Qiu's own deposition testimony. [ECF No. 119 at 8–10]. Wittich's proposed testimony, however, simply elaborates on the "rigorous, comprehensive inspection" that an ABS survey generally entails, and explains that in order to receive a five-year certification, the barge must have been "visually surveyed and inspected" by a qualified inspector. [ECF No. 119-1 at 7–8]. His inability to precisely identify which inspector did the survey and inspection goes to the weight, not the admissibility, of his testimony.

### F. International Inspection Gauging Methodology

Plaintiff challenges Wittich's anticipated testimony concerning the International Inspection gauging report for the same reasons as Bartlett's anticipated testimony on the same topic. [ECF No. 119 at 10–12]. As explained above, Wittich may testify to what he believes International Inspection did, provided he articulates an adequate methodological foundation, but not <u>why</u> it did so.

### G. Damage From Tugs

Plaintiff seeks to exclude Wittich's anticipated testimony that barges can be damaged as a result of being towed by tugs because, Plaintiff argues, it implies that the barge at issue in this case may have been damaged while being towed. [ECF No. 119 at 12–13]. Wittich's proposed testimony, however, is based on his own extensive experience with barge transportation, from which he has learned that "it is not atypical" for barges that are towed long distances in open ocean to develop certain kinds of damage, and that certain kinds of damages "can result" from

contact between the tug and the barge.  This is an adequate foundation for the opinions offered in his report, and that testimony will be allowed.

### H.    Mitigation of Damages

Finally, Plaintiff seeks to exclude Wittich's anticipated testimony that HC&D could have mitigated its damages by using the barge for other projects on the West Cost because he did not adequately investigate the particular requirements of the jobs that he concludes were available for the barge.  [ECF No. 119 at 13–14].  The Court is satisfied that Wittich's sample of companies on the West Coast that might have been willing to hire the at-issue barge was sufficiently reliable to support Wittich's expert testimony.  The challenges that Plaintiffs raise to that sample are properly the subject of cross-examination rather than a basis to exclude the testimony altogether.

### IV.    CONCLUSION

For the reasons described above, Plaintiff's motion to exclude or limit the anticipated testimony of Bartlett, [ECF No. 118], is **DENIED**, and Plaintiff's motion to exclude or limit the anticipated testimony of Wittich, [ECF No. 119], is **GRANTED IN PART** and **DENIED IN PART**.

SO ORDERED.

May 5, 2026                                              /s/ Allison D. Burroughs
                                                        ALLISON D. BURROUGHS
                                                        U.S. DISTRICT JUDGE

8