UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  | | |
|---|---|---|
| HC&D, LLC, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 22-cv-10224-ADB |
| CASHMAN EQUIPMENT CORP., | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

The Court issues this memorandum to set forth more fully in writing the basis for two rulings delivered from the bench, informed by briefing and argument from the parties, see [ECF Nos. 141, 143, 149, 150, 152], on the topics of replacement-barge damages and Plaintiff's duty to mitigate. As stated at trial, Plaintiff may not seek to recover replacement-barge damages, whether under a theory of cover or consequential damages, and Defendant may introduce evidence related to Plaintiff's failure to mitigate damages.

I.    REPLACEMENT-BARGE DAMAGES

Pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure, Defendant seeks to preclude Plaintiff from introducing evidence related to the costs of leasing a replacement barge as part of its damages recovery because Plaintiff did not adequately disclose its intent to seek those damages as part of its mandatory disclosures pursuant to Rule 26(a)(1)(A)(iii) or later supplement its disclosures to encompass those damages pursuant to Rule 26(e)(1)(A). See [ECF No. 143 at 1]. Plaintiff responds that it disclosed the damages at issue from the outset and that

any lack of disclosure was remedied by subsequent filings, see Fed. R. Civ. P. 26(e)(1)(A) (requiring supplementation "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing"). [ECF No. 141 at 5–11]; [ECF No. 150 at 3]. In the alternative, Plaintiff claims that even if it failed to adequately disclose the damages it sought, any failure was "substantially justified or harmless," Fed. R. Civ. P. 37(c)(1), and exclusion is therefore not warranted. [ECF No. 141 at 11–12]. For the following reasons, the Court agrees with Defendant.

A.   **Discovery History**

The Court relies on Plaintiff's account of its disclosures throughout discovery, the completeness of which Defendant does not contest.[1] See [ECF No. 141 at 5–10]; [ECF No. 143 at 1]. Plaintiff's initial disclosures, made in February 2022 pursuant to Rule 26(a)(1)(A)(iii), "identified total damages of $5,977,368.77" broken down into "the purchase price of $1,985,500 plus $3,991,868.77 in additional damages." [ECF No. 141 at 5]. As Plaintiff "candidly acknowledges[,] these disclosures stated a lump sum without separately itemizing each damages category." [Id.]. Three years later, in February 2025, Plaintiff produced an email in which Rick Volner ("Volner"), Plaintiff's 30(b)(6) corporate designee and one of Plaintiff's trial witnesses, discussed the possibility of Plaintiff leasing a replacement barge, including the "price per day for a charter that would meet HC&D's requirements" and a "note[] that rentals would need to be in one-to-two-year increments." [Id. at 5–6]. Five months after that, in July 2025, Plaintiff

---

[1] Plaintiff also suggests that the parties have been engaged in settlement or compromise discussions throughout the litigation in which Plaintiff stated its intent to seek replacement-barge damages. [ECF No. 141 at 5 n.2]. The Court takes no view on this argument as a vague reference to settlement negotiations cannot cure any deficiencies in the disclosures and productions required by the rules of discovery.

produced a presentation prepared for it by a third-party advisor, which surveyed "specific barges, specific daily rates, [and] specific due diligence protocols [for each barge]" that might be available to help Plaintiff "meet[] its ongoing customer commitments in Hawaii." [Id. at 8]. Shortly thereafter, Defendant's counsel discussed the presentation while deposing Mr. Volner. During that deposition, Volner disclosed that Plaintiff had already "had to charter a barge through American Marine" to meet certain commitments and had considered leasing other barges discussed in the presentation, but did not provide further detail. [Id. at 9–10].

In April 2026, with trial approaching, the parties submitted their joint pretrial memorandum, in which Plaintiff specifically stated that it was seeking "the cost of replacement rental barges." [ECF No. 141 at 10 (quoting [ECF No. 111 at 16])]. Therein, the parties disputed whether equitable rescission or the UCC should supply the governing damages framework, and supplemental briefing followed. See [ECF Nos. 121, 122]. On May 1, 2026, once briefing was completed and less than a week before trial, the Court issued an order resolving the dispute over the applicable framework for damages. [ECF No. 141 at 6 (citing [ECF No. 125])].

### B.    Legal Standard

Rule 37(c)(1) sets forth a straightforward inquiry. First, the Court asks whether "a party fail[ed] to provide information . . . as required by Rule 26(a) or (e)." Fed. R. Civ. P. 37(c)(1). If so, the Court next determines whether "the failure was substantially justified or is harmless." Id. If a party fails to make a mandatory disclosure of certain information and its failure is neither substantially justified nor harmless, "the party is not allowed to use that information . . . [as] evidence . . . at a trial," id., although the Court may also order an alternative sanction, including

"inform[ing] the jury of the party's failure," Fed. R. Civ. P. 37(c)(1)(B), and "other appropriate sanctions," Fed. R. Civ. P. 37(c)(1)(C).

Rule 26(a) requires disclosure of "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection as under Rule 34 the documents or other evidentiary material . . . on which each computation is based." Fed. R. Civ. P. 26(a)(1)(A)(iii). If that disclosure "in some material respect . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing," the disclosing party "must supplement or correct [the] disclosure." Fed. R. Civ. P. 26(e)(1).

### C. Analysis

#### 1. Whether Plaintiff Failed to Make a Required Disclosure or Supplementation

Plaintiff failed to comply with the requirements of subsections (a) and (e) of Rule 26. Plaintiff's initial disclosures, which by its own admission did not distinguish any categories of damages claimed apart from the original purchase price, plainly did not satisfy the requirements of Rule 26(a)(1)(A)(iii). The issue is thus whether Plaintiff was required to supplement those disclosures; that is, whether information related to the replacement-barge damages it sought "had . . . otherwise been made known to [Defendant]." Fed. R. Civ. P. 26(e)(1). The disclosures that Plaintiff made in discovery did not make known to Defendant the replacement-barge damages Plaintiff would be seeking with sufficient detail. See Fed. R. Civ. P. 26(a)(1)(A)(iii) (requiring "a computation" and production of "the documents or other evidentiary material . . . on which each computation is based"). At most, Plaintiff's disclosures notified Cashman that Plaintiff had chartered the barge referenced in Volner's deposition and that Plaintiff had considered leasing one of the barges discussed in the presentation; they did not give

4

Defendant any reference for Plaintiff's damages calculation or formally alert Defendant that Plaintiff intended to seek those damages at trial. "[E]ven assuming arguendo that [Defendant] could have inferred" from Plaintiff's discovery production that Plaintiff incurred replacement barge costs, Defendant "had no obligation to initiate discovery requests or presumptively calculate [Plaintiff's] damages." Hudson-RPM Distribs., LLC v. Bowditch & Dewey, LLP, No. 19-cv-40095, 2022 WL 22902243, at *4 (D. Mass. Mar. 29, 2022). "When a party does not disclose required information, its counterparty cannot be 'reasonably expected' to pursue discovery regarding that information, let alone deduce it on its own." Id. (citing Burnett v. Ocean Props. Ltd., 987 F.3d 57, 74 (1st Cir. 2021)); accord Allscripts Healthcare, LLC v. DR/Decision Resources, LLC, 521 F. Supp. 3d 112, 125 (D. Mass. 2021).

### 2.    Whether the Failure Was Substantially Justified or Harmless

The Court has "broad discretion" in fashioning sanctions for Rule 26 violations pursuant to Rule 37(c). Laplace-Bayard v. Batlle, 295 F.3d 157, 161–62 (1st Cir. 2002). Factors to be considered when deciding an appropriate remedy for a Rule 26 violation include "(1) the history of the litigation; (2) the sanctioned party's need for the precluded evidence; (3) the sanctioned party's justification (or lack of one) for its late disclosure; (4) the opponent-party's ability to overcome the late disclosure's adverse effects—e.g., the surprise and prejudice associated with the late disclosure; and (5) the late disclosure's impact on the district court's docket." Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 78 (1st Cir. 2009) (first citing Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003); and then citing Santiago-Diaz v. Laboratorio Clinico Y De Referencia Del Este, 456 F.3d 272, 276–77 (1st Cir. 2006)). These factors incorporate the two exceptions, substantial justification and harmlessness, that are set forth by Rule 37(c)(1), while reflecting that preclusion "is not a strictly mechanical exercise." Id. at 77 (quoting Santiago-

Diaz, 456 F.3d at 276); see also Paulino v. JF Realty, LLC, 830 F.3d 8, 13 (1st Cir. 2016) (discussing Esposito in connection with the 37(c)(1) exceptions).  Though the issue is a close call, the Court concludes that these factors require preclusion.

Here, although Plaintiff's failure to supplement was not part of a larger pattern of noncompliance with discovery obligations, see Esposito, 590 F.3d at 79, the justification given by Plaintiff for its deficient disclosures does not carry the day.  Plaintiff inadvertently overlooked its obligation to categorize and quantify its claimed damages because it believed it was entitled to rescission and concluded that it could generally state its "costs incurred as a result of the fraudulent transaction." [Id. at 6].  Even under a rescission theory, however, the Rules of Civil Procedure would have required Plaintiff to disclose a computation of each category of damages and any documents on which that calculation was based.  Accordingly, Plaintiff's belief about the governing damages framework does not offer a "legitimate reason for [its] late disclosure." Esposito, 590 F.3d at 79.[2]

Further, while Defendant was aware by the time of Volner's deposition that Plaintiff had already chartered a barge and that Plaintiff was potentially considering other options, Defendant had not been informed of the amount of damages that Plaintiff intended to seek for replacement-barge costs or the basis for Plaintiff's calculation, including when and for how long it had rented a replacement barge or at what cost.  Defendant only learned these details on the eve of trial, when it was too late to research or meaningfully challenge the disclosure, including whether the expenditures were necessary or reasonably priced.  The Court recognizes that replacement-barge

---

[2] Plaintiff's position is also undermined by the fact that the total amount of damages it sought, even at the outset of discovery, was "nearly $4 million above the purchase price" of the barge, thus indicating that it was aware of multiple categories of damages from early on.  [ECF No. 141 at 5].

costs are a big chunk of the damages sought by Plaintiff but the importance of the cost to Plaintiff does not offset the fact of the prejudice to Defendant and the Court's inability to remediate that prejudice.  The Court thus concludes that Plaintiff may not pursue cover damages for the cost of a replacement barge or barges.

## II.      SPOLIATION

Plaintiff seeks to preclude introduction of evidence concerning its alleged failure to mitigate damages, arguing that it did not "s[ell], scrap, or charter" the barge because it had an "obligation to preserve the Barge and avoid spoliation." [ECF No. 149 at 1].  The cases identified by Plaintiffs involve instances where courts rejected the duty to mitigate damages as a basis for avoiding spoliation sanctions.  See [id. at 1–3 (collecting cases)].  Those cases, however, have nothing to say about the reverse situation, in which a party fails to mitigate and cites its duty to preserve evidence as an excuse.  The Court is not aware of any case in which a duty to preserve evidence provided a valid excuse for a failure to mitigate; nor does it think such a position can be justified, given that the duty to preserve evidence in prolonged litigation is not as rigid as Plaintiff understands it to be.

Sharp v. Hylas Yachts, LLC, 872 F.3d 31, 42 (1st Cir. 2017), provides a useful example. In that case, the plaintiffs had commissioned a yacht from the defendant for roughly two million dollars. Id. at 36.  Shortly after they took possession of it, a number of problems presented themselves. Id. at 37.  The plaintiffs commenced an action on the basis of breach of contract and breach of warranty in October 2011, and they prevailed at trial in July 2015. Id. at 38.  In June 2012 (a year after the litigation began and several years before trial), the plaintiffs told the defendant that they were going to replace the boom, id. at 41, which was one of the components that had failed initially, id. at 37.  Before the defendant could conduct a sea trial of the vessel, the

plaintiffs made the replacement, and the defendant moved for sanctions on the basis that the plaintiffs "precluded by their conduct the [d]efendants from adequately and fairly testing the components while the Yacht is under sail." Id. at 41.  On appeal, the First Circuit affirmed the district court's decision to award neither an adverse-inference instruction nor dismissal of the action:

> [An adverse-inference] instruction "usually makes sense only where the evidence permits a finding of bad faith destruction." United States v. Laurent, 607 F.3d 895, 902 (1st Cir. 2010).  The record in this case supports a contrary conclusion: Three months in advance, plaintiffs proactively informed [Defendant] that they intended to replace the boom . . . .  As best the briefs reflect, [Defendant] never insisted that the replacement be put off until after sea trials were completed.  Plaintiffs sent scores of pictures and measurements to [Defendant] to allow [Defendant] to prepare for trial.  Moreover, . . . during the two years that passed from the time the yacht was commissioned to the date the [component] was replaced, [Defendant] had a number of other opportunities to examine the [component], inspect the yacht, and conduct sea trials. . . .  [Defendant] is unable to explain what it thinks it might have discovered upon inspection of the boom that it could not learn from the materials and information plaintiffs provided, or why the time it was given to make accommodations in light of the impending boom replacement was insufficient. In sum, the district court did not abuse its discretion in concluding, in effect, that "no adverse-inference instruction would make sense here." Laurent, 607 F.3d at 903.

Id. at 42.  As Sharp makes clear, the duty to preserve evidence is not absolute; rather, it is motivated by fundamental concerns of fairness in discovery, and it simply requires affording an opposing party fair access to evidence in one party's control.  See, e.g., 7 Moore's Federal Practice § 37.120 (2026) ("The obligation to preserve evidence does not continue indefinitely, and may be extinguished by providing the opposing party with an adequate and meaningful opportunity to inspect.").  While Plaintiff was correct to preserve the barge beginning when litigation was reasonably foreseeable, thereafter it had numerous opportunities to cure, or at least attempt to cure, any asymmetries of access that would have prejudiced Defendant if Plaintiff had initially put the barge to another use.  The Court will not bar Defendant from introducing evidence of Plaintiff's failure to mitigate.

9

**SO ORDERED.**

May 13, 2026                                                    */s/ Allison D. Burroughs*
                                                               ALLISON D. BURROUGHS
                                                               U.S. DISTRICT JUDGE